UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| In re: Hopeman Brothers, Inc.<br>Debtor. | Case No. 24-32428-KLP<br>Chapter 11 |

## MEMORANDUM OPINION AND ORDER

Before the Court is the motion of Huntington Ingalls Industries, Inc. ("HII") for the imposition of a stay pending its appeal (the "Stay Motion") of this Court's order approving a settlement between Debtor Hopeman Brothers, Inc. ("Hopeman" or the "Debtor") and certain of its insurers. The Stay Motion has been joined by eight individuals asserting claims against the Debtor.[1]

## JURISDICTION

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(1).

## BACKGROUND

The Debtor operated as a "ship joiner" subcontractor. "In that line of work, Hopeman contracted with shipbuilders to outfit the interior of ships." Declaration of Christopher Lascell, ECF 8 (the "Lascell Declaration"). Although it ceased operations in the 1980's, the Debtor has maintained its corporate existence for the purpose of addressing a considerable number of personal injury claims asserted against it (collectively, the "Asbestos-Related Claims"). Those claims allegedly arose out of the asbestos-containing products used in its role as a ship joiner. The Debtor asserts that

---

[1] These eight individuals are referred to in this memorandum as the Roussel Claimants. *See* note 5, *infra*, and accompanying text.

1

of the over 126,000 Asbestos-Related Claims asserted against it, only 2,700 remained unresolved as of June 23, 2024. Lascell Declaration, ¶ 28.

Over the years, the Debtor purchased asbestos-related insurance from various insurers (the "Insurers"). The primary policies were purchased from Liberty Mutual Insurance Company ("LMIC"), and the excess policies were purchased from LMIC and other insurers. The coverage periods under all policies ended in 1984.

Over the years, as the Asbestos-Related Claims were resolved, the Insurers reimbursed the Debtor for a portion of its defense costs and also for liability payments Debtor made to the holders of the Asbestos-Related Claims. In June 1985, the Debtor and some of its insurers entered into an agreement pursuant to which those insurers shared pro-rata the obligations for Asbestos-Related Claims asserted against the policies that those insurers had issued. This agreement is referred to as the Wellington Agreement. Other Insurers entered into a separate set of coverage-in-place agreements (the "CIP Agreements") that were substantially similar to the Wellington Agreement. It is undisputed that after the execution of and performance under the CIP and Wellington Agreements, all the LMIC policies were exhausted, and only insurance from other non-LMIC Insurers was available to pay the remaining unresolved Asbestos-Related Claims.

In July 2024, the Debtor filed a motion (the "Settlement Motion") requesting the Court to approve a settlement (the "Settlement Agreement") it had negotiated with certain insurers (the "Certain Settling Insurers" or the "Settling Insurers").[2]

---

[2] The Settlement Agreement is attached as Exhibit A to the Settlement Motion.

2

ECF 53. In the Settlement Motion, the Debtor pled that it "no longer has sufficient liquidity to funds its share of the claims reconciliation process pertaining to the Asbestos-Related Claims." ¶ 1. The terms of the Settlement Agreement were, briefly, the Settling Insurers would pay the Debtor a sum certain, and the Debtor would use that money to establish a liquidation trust (the "Liquidation Trust") for the purpose of distributing those funds to the holders of the Asbestos-Related Claims. Once the Settling Insurers made the payment to the Debtor, they would be released and discharged from all claims related to the policies that they had issued to the Debtor. In addition, upon the payment to the Debtor, it would be deemed that those policies had been sold back to the Debtor under the provisions of § 363 of the Bankruptcy Code, 11 U.S.C. § 363,[3] and it would be as if the policies had never been issued to the Debtor. Settlement Agreement §¶ II. Further, the Settlement Agreement provided for an injunction that:

> would operate to prevent all persons who hold or assert, or may in the future hold or assert, any claim against the Debtor or the Certain Settling Insurers arising out of or in connection with the activities covered by the Policies, or in connection with the Debtor's activities giving rise to claims made or to be made under the Policies, or any other person who may claim to be an insured, additional insured, or otherwise entitled to any benefit under the Policies, from asserting any claim or right to entitlement, or taking any other action against the Certain Settling Insurers, for the purpose of obtaining any recovery or other relief from the Certain Settling Insurers in connection with the Debtor's activities giving rise to Claims made or to be made under the Policies or under or in connection with the Policies.

Settlement Motion ¶ 41.

---

[3] All references to § 363 or any part thereof are to 11 U.S.C. § 363.

3

The Settlement Motion was opposed by the Office of the United States Trustee (the "U.S. Trustee"), certain individuals who joined the objection of the U.S. Trustee,[4] and HII. After an evidentiary hearing held December 16, 2024, on the Settlement Motion, the Court overruled the objections and granted the Settlement Motion. At the hearing, the Court found that the Settlement Motion had been properly noticed and made detailed specific evidentiary findings in determining that the Debtor had satisfied the requirements of Bankruptcy Rule 9019 governing compromises and settlements[5] and had satisfied the *Austin* factors, *see infra* note 8, which govern Rule 9019 motions. *See* ECF 441, pp. 192-197. The Court further made detailed findings at the hearing regarding the Debtor's satisfaction of the sale provisions of § 363.

An order granting the Settlement Motion (the "Settlement Order") was entered on December 19, 2024. ECF 442. On December 31, 2024, HHI filed its notice of appeal of the Settlement Order. ECF 454. Simultaneously, HHI filed the Stay Motion currently before the Court. ECF 456. On January 7, 2025, the Roussel Claimants also filed their notice of appeal of the Settlement Order and filed a joinder to the Stay Motion. ECF 475, 485.

## DISCUSSION

Bankruptcy Rule 8007 permits a court to stay a judgment pending appeal. The standard for obtaining a stay is set forth in *Long v. Robinson*, 432 F.2d 977, 979

---

[4] The individual objecting parties are in two groups and will be referred to as the "Roussell Claimants," ECF 406, and the "Landry Claimants," ECF 409.
[5] Fed. R. Bankr. P. 9019. All references to bankruptcy rules are to the Federal Rules of Bankruptcy Procedure.

4

(4th Cir. 1970). To satisfy its burden, a party must show "(1) that he will likely prevail on the merits of the appeal, (2) that he will suffer irreparable injury if the stay is denied, (3) that other parties will not be substantially harmed by the stay, and (4) that the public interest will be served by granting the stay." *Id.*; *see also Hoekstra v. Oak Cluster Comm. Council (In re Hoekstra)*, 268 B.R. 904, 906 (Bankr. E.D. Va. 2000). All four of these requirements must be met for an appellant to obtain a stay. *Schelin v. Malloy (In re Malloy)*, Adv. Pro. No. 23-03043-KRH, 2024 WL 169172, at *2 (Bankr. E.D. Va. Jan. 12, 2024). Even if the four elements are established, the granting of a stay is discretionary. *See In re Retail Grp., Inc.*, Case No. 20-33113-KRH, 2021 WL 2188929, at *6 (Bankr. E.D. Va. May 28, 2021).

Addressing the first element, that it will likely prevail on appeal, HII places great significance on the Supreme Court's recent decision in *Harrington v. Purdue Pharma, L.P.*, 603 U.S. 204, 144 S. Ct. 2071 (2024), arguing that the limitations on third-party injunctions imposed in that case also apply to § 363 sales.[6] HII maintains that after *Purdue*, the propriety of granting an injunction against third parties or a release to the seller in connection with a sale pursuant to § 363 is an issue of first impression in this circuit and argues that therefore this Court's ruling should be stayed until it can be reviewed by a higher court.[7]

---

[7] Despite the purported importance of this issue and lack of controlling precedent, HII has not sought a direct appeal to the Fourth Circuit Court of Appeals pursuant to Rule 8006 of the Federal Rules of Bankruptcy Procedure. *See also* 28 U.S.C. § 158(d)(2)(A)(i)-(iii), describing the certifications that must accompany a request for a direct appeal, including that the judgment involves a question of law for which there is no controlling decision, involves a matter of public importance, or would materially advance the case.

5

HII's position is novel, considering that injunctions and releases have long accompanied "free and clear" sales in bankruptcy.

> Courts have long recognized that inherent within the authority to sell estate property free and clear of liens is the power to enjoin creditors from pursuing the purchaser of such property. *See Whitehead & Kales Co. v. Dempster (In re Wiltse Bros. Corp.)*, 361 F.2d 295, 299 (6th Cir. 1966). Nevertheless, more explicit protection is often needed to effectuate this important aspect of a § 363 sale. In other words, an actual injunction barring creditors from suing a purchaser of estate assets is sometimes necessary and appropriate to give the "free and clear" aspect of § 363(f) meaning. When this is the case, a court has the power to "issue an [ ] order ... necessary or appropriate to carry out [§ 363(f), one of] the provisions of the [Bankruptcy Code]." 11 U.S.C. § 105(a).

*In re Dow Corning Corp.*, 198 B.R. 214, 245 (Bankr. E.D. Mich. 1996). Courts agree that a debtor owns its liability insurance contracts. *See, e.g., First Fid. Bank v. McAteer*, 985 F.2d 114, 117 (3d Cir.1993). Since insurance policies are property of a debtor's estate, they may be sold with court approval under § 363. *See, e.g., MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 837 F.2d 89, 92-93 (2d Cir. 1988) (court authorized settlement of debtor's insurance coverage claims pursuant to the court's authority to approve the sale of the debtor's property).

Insurers and their insureds who have filed chapter 11 cases because of mass tort claims often enter into settlement agreements characterized as "buyback" transactions to obtain funds to pay claimants. In a buyback, the transaction is considered a "sale" of the policy by the debtor back to the insurer, accompanied by the termination of the policy. Chapter 11 debtors seek approval of insurance buyback agreements pursuant to § 363(b) and (f), as sales free and clear of other

6

interests, and/or pursuant to Bankruptcy Rule 9019,[8] as settlements. *See, e.g., In re Chemtura Corp.*, No. 09-11233 (REG), 2009 WL 10806754 (Bankr. S.D.N.Y. Oct. 29, 2009). Buybacks have been approved in recent mass tort cases including *Boy Scouts of Am. and Delaware BSA, LLC*, 642 B.R. 504, 569-70 (Bankr. D. Del. 2022) (supplemented by Case No. 20-10343 (LSS), 2022 WL 20541782 (Bankr. D. Del. Sept. 8, 2022)), and *In re USA Gymnastics*, No. 18-09108-RLM-11, Doc. No. 1776 at 16 (Bankr. S.D. Ind. Dec. 16, 2021) (plan confirmation order).

Here, the Settlement Agreement was approved after an evidentiary hearing at which the Debtor presented uncontroverted evidence that established grounds for approval of a § 363 sale and a settlement pursuant to Rule 9019. The Settlement Agreement was entered into to facilitate an orderly distribution of funds to asbestos-related claimants while avoiding extensive litigation costs associated with resolving disputes over coverage issues. The Court found that the Settlement Agreement is fair and equitable and in the best interests of the bankruptcy estate. The Court approved the sale of the insurance policies after finding that the Debtor had a sound business purpose for doing so and that the proposed sale met the requirements of § 363(f)(2), (4) or (5). In particular, the Court found that because the asbestos claimants could be compelled to accept a money satisfaction for their interests, § 363(f)(5) was applicable. The Court also found that the Debtor had met the requirements for approval of a settlement pursuant to Rule 9019 after

---

[8] Fed. R. Bankr. P. 9019.

considering the *Austin* factors[9] and determining that the proposed settlement is fair and equitable and in the best interests of the bankruptcy estate. The Court pointed to the testimony of the Debtor's insurance consultant, who described in detail the complexity of insurance coverage issues between and among the numerous policies owned by the Debtor, the various defenses, the extensive litigation that would be required should the settlement not be approved, and the associated costs and delays. The Court determined that the Debtor had exercised sound business judgment in seeking approval of the settlement.

In *Munford v. Munford (In re Munford, Inc.)*, 97 F.3d 449 (11th Cir. 1996), the Eleventh Circuit Court of Appeals approved an insurance buyback, entering an order that included a non-debtor bar and a channeling injunction pursuant to Bankruptcy Code §§ 105, 11 U.S.C. § 105, § 363, and Rule 9019. Subsequently, in an unpublished opinion, *Markland v. Davis* (*In re Centro Grp., LLC)*, No. 21-11364, 2021 WL 5158001 (11th Cir. Nov. 5, 2021), the Eleventh Circuit discussed the differences between bar orders that are a necessary part of a settlement agreement, as provided for in *Munford*, and the types of non-consensual, third-party releases disallowed by *Purdue*.

This distinction was cited in the recent case of *In re Bird Global, Inc.*, Case No. 23-20514-CLC (Bankr. S.D. Fla.) in which the court acknowledged that *Purdue*

---

[9] *See In re Austin*, 186 B.R. 397, 400 (Bankr. E.D. Va. 1995). In that case, the court found that "the rulings establish a fairly uniform and liberal standard. In summary, the court is to consider the probability of the trustee's success in any ensuing litigation, any collection difficulties, the complexity, time and expense of the litigation, and the interests of creditors with proper deference to their reasonable views. . . In essence, the court must determine whether the settlement falls below the lowest point in the range of reasonableness." *Id*. (citation omitted).

8

did not call into question negotiated settlements governed by Bankruptcy Rule 9019 or the sale of the Debtors' insurance policies under § 363. In that case, the Debtor had filed an emergency motion to stay a confirmation order that contained an insurance settlement provision similar to the one proposed in this case. The bankruptcy court denied the motion to stay the appeal. In the court's view, *Purdue* does not alter the standard for settlement bar orders under *Munford*. The decision was appealed, and the district court affirmed. *Wright v. Bird Global*, Case No. 24-CV-23086-RAR (S.D. Fla. Aug. 21, 2024).[10]

This Court concurs with the analysis of *Bird Global*. A decision that would permit a creditor to independently pursue its claim against property of the debtor after it been sold in bankruptcy would have a chilling effect on the sale of assets in bankruptcy. *Purdue* was not intended to thwart that process. Perhaps, this is why the Court has not found, and has not been pointed to, any decision extending *Purdue's* decision to § 363 sales.

As the Supreme Court stated, its decision in *Purdue* is limited to the issue before it, i.e., whether non-consensual non-debtor releases may be included in chapter 11 plans.[11] Nothing in its opinion suggests that the protections afforded a buyer pursuant to § 363, including the ability of the purchaser to obtain the asset free of the claims of the debtor's creditors, were intended to be abrogated. Instead,

---

[10] Both the bankruptcy court and the district court emphasized that the issue in *Purdue* was not the approval of a Rule 9019 settlement motion but rather a confirmation issue.

[11] The *Purdue* opinion does not mention bankruptcy sales under § 363. "[W]e hold only that the [B]ankruptcy [C]ode does not authorize a release and injunction that, as part of a plan of reorganization under Chapter 11, effectively seeks to discharge claims against a nondebtor without the consent of affected claimants." 603 U.S. at 206, 144 S. Ct. at 2088.

9

creditor claims transfer to the proceeds of the sale, just as has occurred here with the Insurance Settlement and the establishment of the Liquidation Trust.

It is undisputed the insurance policies at issue are owned by the Debtor. While some, but not all, creditors may have the ability to pursue claims directly against the policies under state law, the policies are intended to benefit all asbestos claimants. Allowing some creditors to access coverage while others are prohibited from doing so directly contravenes the fundamental principle that a bankruptcy filing terminates the "race to the courthouse" that would exist outside of bankruptcy.[12] The injunction prohibiting third parties from pursuing claims against the Settling Insurers[13] "is limited in scope and serves only to preserve the value of the policies for the benefit of all the creditors whose claims are covered under the policies. It protects the purchasers of the insurance policies (the insurers) from defending future claims against policies that have been liquidated; without such protections, the insurance companies would have little incentive to settle, purchase, or otherwise monetize the policies. And because all the asbestos claims attach to the

---

[12] "The differences in direct action rights among the Debtor's creditors causes inequities the Debtor is actively trying to prevent through the monetization of the Policies pursuant to the Settlement Agreements and the creation of the Liquidation Trust. The Debtor's overarching goal in this chapter 11 case is to put all its asbestos creditors on equal footing with respect to their Asbestos-Related Claims to maximize recoveries on account of all Allowed Asbestos-Related Claims, not simply those with direct action claims. This is precisely why the Certain Settling Insurers Settlement Agreement is in the best interests of all the Debtor's creditors and should be approved." Debtor's Omnibus Reply, ECF 426, p.15, ¶ 29.

[13] The order approving the settlement agreement provides that "for the avoidance of doubt, the injunction set forth in this paragraph 8 shall only enjoin Claims seeking coverage under the Policies or Claims alleged against Hopeman Persons or Settling Insurer Persons seeking, or that could give rise to, coverage under the Policies." ECF 442, p.4,¶ 8

10

sales proceeds via being placed in the Liquidation Trust, all claimants' rights are preserved.

The two cases cited by HII that have addressed *Purdue's* impact on § 363 sale injunctions have rejected HII's position. In the first, *In re Bird Global, Inc.*, discussed above, the bankruptcy court denied a motion for stay pending appeal, finding that "[n]othing in the stay motion makes the court question its interpretation of *Purdue* and its lack of an effect on this case . . . ." This decision was affirmed by the district court. In the second, *Roman Cath. Diocese of Rockville Centre*, 665 B.R. 71 (Bankr. S.D.NY. 2024), the bankruptcy court approved, over objections, a settlement agreement containing releases and injunctions. The court was not persuaded by the argument urged by the United States Trustee that *Purdue* is applicable in the context of a § 363 sale in addition to the context of plan confirmation.

Presenting a legal position that no other court has accepted but no court in the presiding court's jurisdiction has rejected may remotely create an issue of first impression. However, if the position has little merit, there is no "likelihood of prevailing." Here, based on the law, the language of *Purdue,* and current precedent, HII has failed to establish that it is likely to succeed on appeal, and it has therefore failed to satisfy the first requirement for a stay.

With respect to the second factor, HII failed to present any evidence that it will suffer irreparable harm absent a stay. To date, there is no evidence that HII, as a codefendant in any asbestos litigation, has obtained a judgment or pursued a

contribution claim against the Debtor. Although HII may have future potential contribution claims against the Debtor under state law, it has failed to demonstrate how the bar order "strips HII of important and valuable state law claims," particularly when its claims will attach to the settlement proceeds.[14] The insurance companies are not required to transfer the settlement proceeds to the Debtor absent a final order and, even if one or more of the insurance companies were to consummate the settlement, the Court must approve the disbursement of any settlement proceeds before any proceeds may be released. *See* Settlement Order, ¶ 14. Therefore, even without a stay, the settlement proceeds have been preserved. For these reasons, HII has failed to show that it will suffer irreparable harm absent a stay and therefore has not met the burden of establishing the second factor for a stay pending appeal.

The Debtor, by contrast, contends that it would be substantially harmed by the issuance of a stay, citing the potential unwinding of the settlement by one or more insurance companies. Were the settlement to be discarded, the complex factual issues concerning the extent and priorities of coverage under the various policies along with the attendant litigation would continue, resulting in a diminished pool of funds available to all the asbestos claimants. Given HII's failure to present any evidence of potential harm it may incur without the stay, the balance of harm favors the Debtor. Thus, the third factor favors denial of the stay.

---

[14] The Court found that HII and other asbestos claimants are "adequately protected under § 363 (e) by having such claims attach to the net cash proceed of the sale of the policy against or in which it asserts a claim with the same validity and to the same extent as existed before the sale." Settlement Order at ¶ 14.

12

Finally, HII maintains that the public interest would be served by granting the stay and allowing the appellate court to address this "matter of first impression." Having already rejected the "issue of first impression" argument, and HII failing to identify any other public policy favoring granting a stay, the Court finds nothing in the record to support a determination that the public would be served by granting the stay. The Insurance Settlement was not opposed by the Official Committee of Unsecured Creditors, which is tasked with protecting the interests of the asbestos claimants. It was opposed by only HII, the Roussel and Landry claimants, and the Office of the U.S. Trustee. The Debtor contends that public policy would be better served by denying the stay because doing so would recognize and maintain "the 'strong policy of finality of bankruptcy sales.'" ECF 477 ¶ 36, quoting *Compak Cos., LLC v. Johnson,* 415 B.R. 334, 344 (N.D. Ill. 2009). The Court agrees that public policy is best served by preserving the finality of sales in bankruptcy. For that reason, public policy supports denying the stay.

Inasmuch as HII has failed to carry its burden of establishing the four factors required under *Robinson* for imposition of a stay pending appeal, or any of them,[15] in the Court's discretion and for the reasons set forth above,

IT IS ORDERED that that the Stay Motions of HII and the Roussel Claimants are DENIED.

Signed January 24, 2025

      /s/ Keith L. Phillips
United States Bankruptcy Judge
Entered on Docket: January 24, 2025

---

[15] As the Roussel Claimants relied solely on the argument of HII, and HII has failed to carry its burden, the Roussel Claimants' joinder motion must be denied as well.

13

Copies to:

HUNTON ANDREWS KURTH LLP
Joseph P. Rovira
Catherine A. Rankin
600 Travis Street, Suite 4200

HUNTON ANDREWS KURTH LLP
Tyler P. Brown
Henry P. (Toby) Long, III
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219

Peter J. Barrett
Kutak Rock LLP
1021 East Cary Street
Ste 810
Richmond, VA 23219

Kathryn R. Montgomery
Office of the United States Trustee
701 East Broad Street, Ste. 4303
Richmond, VA 23219

Dion W. Hayes
K. Elizabeth Sieg
Sarah B. Boehm
Connor W. Symons
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219

Gerolyn P. Roussel
Jonathan B. Clement
Benjamin P. Dinehart
ROUSSEL & CLEMENT
1550 West Causeway Approach
Mandeville, LA 70471

Robert S. Westerman
Kollin G. Bender
HIRSCHLER FLEISCHER, P.C.
The Edgeworth Building
2100 East Cary Street
Richmond, Virginia 23223
P.O. Box 500
Richmond, Virginia 23218-0500