IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

In re:

Civil Action No. 3:26cv16 (DJN)

HOPEMAN BROTHERS, INC.,
Debtor.

**ORDER CONFIRMING THE AMENDED PLAN OF REORGANIZATION OF HOPEMAN BROTHERS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND APPROVING ADEQUACY OF THE DISCLOSURE STATEMENT**

This matter comes before the Court upon Hopeman Brothers, Inc. ("Hopeman" or the "Debtor"), the debtor and debtor-in-possession in the above-captioned Chapter 11 Case, and the Official Committee of Unsecured Creditors' (the "Committee", and collectively with Hopeman, the "Plan Proponents") proposal of the *Amended Plan of Reorganization of Hopeman Brothers, Inc. under Chapter 11 of the Bankruptcy Code*, dated May 21, 2025, *In re: Hopeman Brothers, Inc.*, Case No. 24-32428-KLP (Bankr. E.D. Va. May 21, 2025) (the "Bankruptcy Case" or "Hopeman Bankr."), ECF No. 766 (as modified by the *Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code*, dated August 21, 2025 (*id.*, ECF No. 1141) (the "Modified Plan"), the Second Modified Plan (defined below), and the Third Modified Plan (defined below), and as may be further amended, modified, or supplemented from time to time, the "Plan").[1]

---

1 Capitalized terms used, but not otherwise defined herein, have the meanings given to them in the Plan and the Disclosure Statement. The rules of interpretation set forth in Article I.B of the Plan apply to this Order (the "Confirmation Order"). In addition, in accordance with Article I.A of the Plan, any term used in the Plan or this Confirmation Order that is not defined in the Plan, the Disclosure Statement, or this Confirmation Order, but that is used in the

On May 21, 2025, the Bankruptcy Court entered an Order (*id.*, ECF No. 782 (the "Solicitation Procedures Order")) (a) conditionally approving the *Disclosure Statement with Respect to the Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* (*id.*, ECF No. 767) (as may be modified from time to time, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code, (b) approving the solicitation procedures annexed as Exhibit 1 to the Solicitation Procedures Order (such procedures, the "Solicitation Procedures"), (c) approving the solicitation materials and notices to be distributed in connection with the solicitation of the Plan, (d) authorizing Hopeman to solicit votes on the Plan, and (e) scheduling a hearing for July 1, 2025 at 10:00 a.m. (as adjourned to August 25, 2025, at 10:00 a.m., the "Combined Hearing") to consider Confirmation of the Plan and final approval of the adequacy of the Disclosure Statement. An affidavit of service was executed by Kurtzman Carson Consultants, LLC d/b/a Verita Global, the Bankruptcy Court-appointed claims and noticing agent (the "Solicitation Agent"), with respect to the mailing of notice of the Combined Hearing and solicitation materials in respect of the Plan in accordance with the Solicitation Procedures Order (the "Affidavit of Service") and was filed with the Bankruptcy Court on June 12, 2025. (*Id.*, ECF No. 864.)

On June 5, 2025, Hopeman filed the *Affidavit of Publication of the Notice of Combined Hearing for Approval of Disclosure Statement and Confirmation of Plan.* (*Id.*, ECF No. 844 (the "Publication Affidavit").) On July 25, 2025, Hopeman filed the *Declaration of Jeffrey R. Miller with Respect to the Tabulation of Votes on the Amended Plan of Reorganization of Hopeman*

---

Bankruptcy Code or the Bankruptcy Rules, has the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

A copy of the Plan (without the Exhibits thereto) is attached to this Confirmation Order as Exhibit A and is incorporated herein by reference.

*Brothers, Inc. Under Chapter 11 of the Bankruptcy Code,* (*id.*, ECF No. 1077 (the "Voting Certification")), attesting to the results of the tabulation of the properly executed and timely received Ballots for the Plan as follows:

> **Class 3 Claimants**. The Plan Proponents received 1 acceptance out of 1 vote from holders of Class 3 General Unsecured Claims, with Class 3 claimants who voted in favor of the Plan holding Claims in the amount of $7,005.44 for voting purposes only, such acceptances being 100 percent in number and 100 percent in amount of all ballots received from holders of Class 3 General Unsecured Claims entitled to vote on the Plan;
>
> **Class 4 Claimants**. The Plan Proponents received 2,409 acceptances out of 2,416 votes from holders of Class 4 Channeled Asbestos Claims, with Class 4 claimants who voted in favor of the Plan holding Claims in the amount of $2,409.00 for voting purposes only, such acceptances being 99.71 percent in number and 99.71 percent in amount of all ballots received from holders of Class 4 Channeled Asbestos Claims.

The only opposition to the Plan came from certain of the Debtor's historical insurers: Century Indemnity Company ("Century"),[2] Westchester Fire Insurance Company ("Westchester" and together with Century, the "Chubb Insurers"), Liberty Mutual Insurance Company ("LMIC"), The Travelers Indemnity Company ("Travelers Indemnity"), Travelers Casualty and Surety Company ("Travelers Casualty"), St. Paul Fire and Marine Insurance Company ("St. Paul" and together with Travelers Indemnity and Travelers Casualty, collectively, "Travelers"), and Hartford Accident and Indemnity Company and First State Insurance Company ("Hartford" and together with the Chubb Insurers, LMIC, and Travelers, collectively, the "Objecting Insurers").[3]

---

2 In its capacity as the successor to CCI Insurance Company, as successor to Insurance Company of North America.

3 The following are the objections to the Plan that were filed by the Objecting Insurers: (i) *Hartford's Limited Objection to Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* (Hopeman Bankr., ECF No. 942) (as supplemented by *Hartford's Joinder to Objections to Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* (*id.*, ECF No. 965 (the "Hartford Plan Objection")); (ii) the *Objections of the Travelers Indemnity Company, Travelers Casualty and*

The Plan Proponents filed a memorandum of law in support of Confirmation of the Plan and final approval of the Disclosure Statement, and in reply to the Plan Objections. (*Id.*, ECF No. 1076 (the "Confirmation Brief").) The Plan Proponents filed a supplemental memorandum of law in support of Confirmation of the Plan and final approval of the Disclosure Statement, and in reply to the Plan Objections. (*Id.*, ECF No. 1119 (the "Supplemental Confirmation Brief").)

On September 5, 2025, the Plan Proponents filed the *Second Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code*, (*id.*, ECF No. 1185 (the "Second Modified Plan")), that modified the Plan to address, *inter alia*, the resolution of the Hartford Plan Objection.

Section 524(g)(3)(A) of the Bankruptcy Code requires "the order confirming the plan of reorganization [pursuant to 524(g)] [to be] issued or affirmed by the district court that has jurisdiction over the reorganization case." 11 U.S.C. § 524(g)(3)(A). The Bankruptcy Court entered the *Proposed Findings of Fact and Conclusions of Law Regarding Confirmation of the Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code and Approving Adequacy of the Disclosure Statement* (Hopeman Bankr., ECF

---

*Surety Company, and St. Paul Fire and Marine Insurance Company to (I) Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code and (II) the Disclosure Statement With Respect to the Amended Plan of Reorganization of Hopeman Brothers, Inc.* filed under seal at ECF No. 949 and publicly-available, with redactions, at ECF No. 944 (the "Travelers Plan Objection"); (iii) *Liberty Mutual Insurance Company's Objection to the Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* filed under seal at ECF No. 954 and publicly-available, with redactions, at ECF No. 953 (the "LMIC Plan Objection"); and (iv) *Chubb Insurers' Objection to (1) Final Approval of Disclosure Statement and (2) Confirmation of Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* filed under seal at ECF Nos. 959–960 and publicly available, with redactions, at ECF No. 958 (the "Chubb Insurers Plan Objection" and together with the Hartford Objection, the Travelers Objection, and the LMIC Objection, collectively, the "Plan Objections").

No. 1267 (the "Proposed Findings and Conclusions")), including the proposed findings that (a) the Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, (b) Hopeman was and is qualified to be a "debtor" under section 109 of the Bankruptcy Code, (c) venue of the Chapter 11 Case is proper pursuant to 28 U.S.C. § 1408 and continues to be proper, and (d) the evidence admitted in support of the Plan and Disclosure Statement at the Combined Hearing is persuasive and credible. In its Proposed Findings and Conclusions, the Bankruptcy Court (a) found that the Disclosure Statement contained adequate information as required by section 1125 of the Bankruptcy Code and thus determined that the Disclosure Statement should be approved on a final basis, and (b) recommended entry of an Order by this Court confirming the Plan, subject to limited revisions to the Plan and Asbestos Trust Agreement as set forth therein.

On November 20, 2025, the Plan Proponents filed the *Joint Statement of the Plan Proponents in Response to the Proposed Findings of Fact and Conclusions of Law Regarding Confirmation of the Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code and Approving Adequacy of the Disclosure Statement* (*id.*, ECF No. 1309 (the "Joint Statement")) that proposed modifications to the Plan, the Asbestos Trust Agreement, and a proposed Confirmation Order to conform with the Proposed Findings and Conclusions. Following the filing of objections by certain parties to the Proposed Findings and Conclusions of Law and a response by the Plan Proponents to such objections, the Clerk of the Bankruptcy Court transmitted the record to this Court to review the Proposed Findings of Fact and Conclusions and decide whether to approve the Plan under section 524(g) of the Bankruptcy Code. (*Id.*, ECF Nos. 1353, 1407, 1457.)

On August 10, 2026, this Court approved and entered the *Findings of Fact and Conclusions of Law Regarding Confirmation of the Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code and Approving Adequacy of the Disclosure Statement* (ECF No. 14 (the "Findings and Conclusions")), including the findings that (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, (b) Hopeman was and remains qualified to be a "debtor" under section 109 of the Bankruptcy Code, and (c) venue of the Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409. In the Findings and Conclusions, this Court declared its intention to confirm the Plan and approve the adequacy of the Disclosure Statement subject to limited revisions to the Plan and Asbestos Trust Distribution Procedures as set forth therein, and directed the Plan Proponents to (i) submit a joint statement no later than seven (7) days from entry of the Findings and Conclusions indicating their position regarding the Court's proposed modifications, and (ii), if the Plan Proponents accept the Court's requests, to attach to the joint statement (a) a modified Plan and attachments that comport with the Court's directives, as well as redlined versions highlighting all revisions, and (b) a revised Confirmation Order, along with a redline.

On August 17, 2026, the Plan Proponents filed the *Joint Statement of the Plan Proponents in Response to the Findings and Conclusions* (ECF No. 15 (the "Plan Proponents' Statement")) that comported with the Court's directives, including attaching the following documents to conform with the Findings and Conclusions: (i) the *Third Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code* (the "Third Modified Plan"), along with a redline to the Second Modified Plan, (ii) modified Asbestos Trust Distribution Procedures, along with a redline to the version filed with the Plan Supplement on August 21, 2025 (Hopeman Bankr., ECF No. 1143), and (iii) a modified

Confirmation Order, along with a redline to the version filed with the Joint Statement on November 20, 2025 (*id.*, ECF No. 1309).

This Court has reviewed the Plan, the Disclosure Statement, the Solicitation Procedures Order, the Voting Certification, the Affidavit of Service, the Publication Affidavit, the Confirmation Brief, the Supplemental Confirmation Brief, the Proposed Findings and Conclusions, the Joint Statement, the Plan Proponents' Statement and the other pleadings before the Court in connection with the Confirmation of the Plan and approval of the Adequacy of the Disclosure Statement, on a final basis, including the Plan Objections. The Disclosure Statement contains summaries, descriptions and information (as applicable) concerning: (i) the nature and history of Hopeman's business and liabilities; (ii) events leading up to the filing of the Chapter 11 Case; (iii) the terms of the Plan, including the treatment of holders of Claims and Equity Interests under the Plan; (iv) the terms of the Asbestos Trust Documents, including the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures; (v) financial information and projections; (vi) an overview of the requirements for confirmation of the Plan; (vii) effect of confirmation of the Plan, including the channeling of the Asbestos Claims to the Asbestos Trust pursuant to the Asbestos Permanent Channeling Injunction; (viii) a discussion of risk factors affecting the implementation of the Plan; (ix) certain federal income tax consequences of the Plan; and (x) solicitation of holders of General Unsecured Claims and Asbestos Claims. The Disclosure Statement further provides sufficient notice of the injunction, exculpation, and release provisions in the Plan, including the Asbestos Permanent Channeling Injunction.

This Court has considered the arguments of counsel made on the record at the Combined Hearing. This Court has also considered all evidence admitted into the record at the Combined Hearing and has taken judicial notice of the papers and pleadings on file in the Chapter 11 Case,

including any related adversary proceedings. The Court has made a *de novo* review of the record, including the Bankruptcy Court's Proposed Findings and Conclusions submitted in this matter. Accordingly, the Court finds that the Findings and Conclusions establish just cause for the relief granted herein.

For all of these reasons, the Court hereby ORDERS the following:

## I. GENERAL PROVISIONS REGARDING CONFIRMATION OF THE PLAN AND APPROVAL OF PLAN-RELATED DOCUMENTS.

### A. MODIFICATIONS TO THE PLAN

1. Subsequent to solicitation, the Plan Proponents made certain modifications to the Plan and the Plan Documents, including those set forth in the Plan Proponents' Statement to conform to the Findings and Conclusions (the "Plan Modifications"). Pursuant to section 1127 of the Bankruptcy Code, the Plan Modifications, including any such modifications set forth in this Confirmation Order, constitute technical or clarifying changes or modifications that do not otherwise materially and adversely affect or change the treatment of any other Claim or Interest under the Plan. The filing with the Court of the Plan and Plan Documents as modified by the Plan Modifications that were made prior to the Combined Hearing, and the disclosure of the Plan Modifications on the record at the Combined Hearing and in the Joint Statement, constitute due and sufficient notice thereof.

2. Pursuant to section 1127(a) of the Bankruptcy Code and Rule 3019(a) of the Bankruptcy Rules, the Plan Modifications are authorized and approved in all respects.

### B. CONFIRMATION OF THE PLAN.

3. The Plan, including all Exhibits thereto and the Plan Supplement, is CONFIRMED in each and every respect, pursuant to section 1129 of the Bankruptcy Code; provided, however, that if there is any direct conflict between the terms of the Plan or any

Exhibit thereto and the terms of this Confirmation Order, the terms of this Confirmation Order shall control. All objections to the Plan, other than those withdrawn with prejudice in their entirety prior to, or on the record at, the Combined Hearing, are either resolved on the terms set forth herein or overruled in their entirety. The Findings and Conclusions are hereby incorporated by reference in their entirety, as if they were fully set forth herein.

**C. SATISFACTION OF THE REQUIREMENTS OF SECTION 524(G)**

4. For the reasons set forth in the Findings and Conclusions, the Plan satisfies each of the requirements of section 524(g) of the Bankruptcy Code.

**D. CONDITIONS TO CONFIRMATION AND CONSUMMATION OF THE PLAN.**

5. Nothing in this Confirmation Order or in the Findings and Conclusions shall in any way affect the provisions of Article XI of the Plan, which includes provisions regarding (i) the conditions precedent to confirmation of the Plan and to the occurrence of the Effective Date of the Plan, (ii) the Plan Proponents' ability to waive such conditions, and (iii) the effect that the nonoccurrence of such conditions may have with regard to the Plan and this Confirmation Order. Upon the satisfaction or waiver of the conditions contained in Section 11.2 of the Plan and the occurrence of the Effective Date, substantial consummation of the Plan, within the meaning of section 1127 of the Bankruptcy Code, shall be deemed to occur.

**E. EFFECTS OF CONFIRMATION.**

6. Subject to Section I.D of this Confirmation Order, notwithstanding any otherwise applicable law, immediately upon the entry of this Confirmation Order, the terms of the Plan and this Confirmation Order shall be binding upon all Entities, including Hopeman, Reorganized Hopeman, any and all holders of Claims, Demands, or Interests (irrespective of whether such Claims or Interests are Impaired under the Plan or whether the holders of such Claims or

Interests accepted, rejected or are deemed to have accepted or rejected the Plan), any and all nondebtor parties in interest, including nondebtor parties to Executory Contracts and Unexpired Leases with Hopeman and any and all Entities who are parties to or are subject to the settlements, compromises, releases, waivers, discharges and injunctions described herein and in the Findings and Conclusions and the respective heirs, executors, administrators, trustees, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, guardians, successors or assigns, if any, of any of the foregoing.

**F. APPROVAL, MODIFICATION AND EXECUTION OF PLAN-RELATED DOCUMENTS.**

7. The Plan and all Exhibits thereto, substantially in the form as they exist at the time of the entry of this Confirmation Order, including the documents relating to the Asbestos Trust, are approved in all respects.

8. All relevant parties, including Hopeman, Reorganized Hopeman, the Asbestos Trust, and the Trustees of the Asbestos Trust, shall be authorized, without further action by this Court or the Bankruptcy Court, to execute the applicable Plan Documents and make modifications to such documents in accordance with the Plan's terms, including Section 12.3 of the Plan, and the terms of the Plan Documents, if applicable, between the time of entry of this Confirmation Order and the Effective Date of the Plan.

9. The Plan Proponents are hereby authorized to amend or modify the Plan at any time prior to the substantial consummation of the Plan, but only in accordance with section 1127 of the Bankruptcy Code, Section 12.3 of the Plan, and this Confirmation Order. In addition, without the need for further order or authorization of this Court or the Bankruptcy Court, or further notice to any Entities, but subject to the express provisions of this Confirmation Order and Section 12.3 of the Plan, the Plan Proponents shall be authorized and empowered to make

modifications to the Plan Documents, including Exhibits to the Plan and documents forming part of the evidentiary record at the Confirmation Hearing, consistent with the terms of such documents in their reasonable business judgment as may be necessary.

**II. CLAIMS BAR DATES AND OTHER CLAIMS MATTERS.**

**A. GENERAL BAR DATE FOR ADMINISTRATIVE EXPENSE CLAIMS.**

10. Except as otherwise provided in Section 2.1 of the Plan and II.B of this Confirmation Order below, unless previously filed, requests for payment of Administrative Expense Claims must be filed with the Bankruptcy Court and served on Reorganized Hopeman no later than the first Business Day that is thirty (30) calendar days after the Effective Date. Holders of Administrative Expense Claims that are required to file and serve a request for payment of such Administrative Expense Claims and that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred from asserting such Administrative Expense Claims against Hopeman, Reorganized Hopeman, or its property and such Administrative Expense Claims shall be deemed disallowed in their entirety and discharged as of the Effective Date. Objections to such requests must be filed and served on the requesting party on or before the thirtieth (30th) calendar day after the Administrative Expense Claim Bar Date, as the same may be modified or extended from time to time by order of the Bankruptcy Court.

**B. BAR DATES FOR CERTAIN ADMINISTRATIVE EXPENSE CLAIMS.**

**1. Professional Compensation.**

11. Professionals or other Entities asserting a Professional Fee Claim for services rendered before the Effective Date must file with the Bankruptcy Court and serve on counsel to Reorganized Hopeman and such other Entities who are designated by the Bankruptcy Rules, this Confirmation Order, or other order of the Bankruptcy Court a final fee application no later than

forty-five (45) days after the Effective Date. A Professional may include any outstanding, non-filed monthly or interim request for payment of a Professional Fee Claim in its final fee application. To the extent necessary, this Confirmation Order shall amend and supersede any previously entered order of the Bankruptcy Court regarding the payment of Professional Fee Claims. Any pending, interim requests for a Professional Fee Claim shall be resolved in the ordinary course or, if sooner, in connection with the particular Professional's final fee application.

**2. Ordinary Course Liabilities.**

12. Holders of Administrative Expense Claims based on liabilities incurred by Hopeman in the ordinary course of its business shall not be required to file or serve any request for payment of such Administrative Expense Claims. Such Administrative Expense Claims shall be satisfied pursuant to Section 2.1 of the Plan.

**C. BAR DATE FOR REJECTION DAMAGES CLAIMS.**

13. Notwithstanding anything in the Bankruptcy Court's *Order (I) Establishing Bar Dates for Submitting Proofs of Non-Asbestos Claim; (II) Approving Procedures for Submitting Proofs of Non-Asbestos Claim; (III) Approving Notice Thereof; (IV) Approving a Tailored Proof of Non-Asbestos Claim Form; and (V) Granting Related Relief* (Hopeman Bankr., ECF No. 193 (the "Bar Date Order")) to the contrary, if the rejection of an Executory Contract pursuant to Section 6.1 of the Plan gives rise to a Claim by the other non-Debtor party or parties to such contract, such Claim shall be forever barred and shall not be enforceable against Hopeman and Reorganized Hopeman, its successors or its property unless a Proof of Claim is filed with the Bankruptcy Court and served upon counsel for Hopeman or Reorganized Hopeman, as applicable, on or before thirty (30) days after entry of the Confirmation Order; or (b) if such

Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by Hopeman to reject such Executory Contract, thirty (30) days after entry of such order.

## III. APPROVAL OF EXECUTORY CONTRACT PROVISIONS AND RELATED PROCEDURES.

14. The Executory Contract provisions of Article VI of the Plan are hereby approved. This Confirmation Order shall constitute an order of the Court approving the assumptions and rejections set forth in Sections 6.1 and 6.2 of the Plan, pursuant to section 365 of the Bankruptcy Code, and such assumptions and rejections shall be effective as of the Effective Date.

## IV. MATTERS RELATING TO IMPLEMENTATION OF THE PLAN.

### A. ACTIONS IN FURTHERANCE OF THE PLAN.

15. Hopeman, Reorganized Hopeman, and any officers thereof (the "Responsible Officers"), are authorized to, without further actions by this Court or the Bankruptcy Court: (i) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, and the transactions contemplated thereby or hereby, including those transactions identified in Article VIII of the Plan; and (ii) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases and agreements necessary to implement, effectuate and consummate the Plan, including those contracts, instruments, releases and agreements identified in Article VIII of the Plan and the Plan Supplement.

16. To the extent that, under applicable non-bankruptcy law, any of the foregoing actions would otherwise require the consent or approval of the stockholders or directors of Hopeman or Reorganized Hopeman, this Confirmation Order shall, pursuant to section 1142 of the Bankruptcy Code and any applicable non-bankruptcy law, constitute such consent or

approval, and such actions are deemed to have been taken by unanimous action of the stockholders or directors of Hopeman or Reorganized Hopeman.

17. The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority Hopeman, Reorganized Hopeman, or any Responsible Officer have to take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, or the transactions contemplated thereby or hereby, subject to provisions in the Plan that require Hopeman or Reorganized Hopeman to seek approval from other parties. In addition to the authority to execute and deliver, adopt or amend, as the case may be, the contracts, instruments, releases and other agreements specifically approved in this Confirmation Order, Hopeman or Reorganized Hopeman is authorized and empowered, without further action by this Court or the Bankruptcy Court or Hopeman or Reorganized Hopeman's stockholders or directors, to take any and all such actions as any of its Responsible Officers may determine are necessary or appropriate to implement, effectuate and consummate the Plan, this Confirmation Order, or the transactions contemplated thereby or hereby, subject to any applicable provisions in the Plan that require Hopeman or Reorganized Hopeman to seek approval from other Parties.

**B. CREATION OF ASBESTOS TRUST.**

18. On the Effective Date, the Asbestos Trust shall be created in accordance with the Plan Documents, the Asbestos Trust Documents, and section 524(g) of the Bankruptcy Code. Subject to the provisions of the Plan, and in consideration of the transfer of the Asbestos Trust Assets to the Asbestos Trust, the Asbestos Trust shall assume all liabilities and responsibility for all Channeled Asbestos Claims, and, among other things, to: (1) direct the processing, liquidation, and payment of all compensable Channeled Asbestos Claims in accordance with this

Case 3:26-cv-00018-DJN Document 20 Filed 08/18/26 Page 15 of 37 PageID# 7924

Plan, the Asbestos Trust Documents, and the Confirmation Order; (2) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Channeled Asbestos Claims; and (3) qualify at all times as a qualified settlement fund. The Asbestos Trust shall use the Asbestos Trust's assets and income, as permitted by this Confirmation Order, the Plan, and the Asbestos Trust Documents, including, without limitation, to resolve Channeled Asbestos Claims in accordance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures in such a way that holders of Channeled Asbestos Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and shall otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code. On the Effective Date, all right, title, and interest in and to the Asbestos Trust Assets, and any proceeds thereof, will be transferred to, and indefeasibly vested in, the Asbestos Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances, and other interests of any Entity, without any further action of the Bankruptcy Court or any Entity, but subject to Sections 8.3 and 8.5 of the Plan. The Asbestos Trust and the Trustees of the Asbestos Trust are authorized and empowered to receive the property to be transferred to the Asbestos Trust pursuant to Section 8.3 of the Plan.

19. Pursuant to any applicable non-bankruptcy law and section 1142 of the Bankruptcy Code, without further action by this Court or the Bankruptcy Court or the stockholders or directors of Hopeman or Reorganized Hopeman, the Responsible Officers are authorized and directed to execute, deliver and perform their obligations under the Asbestos Trust Agreement and to execute, deliver, file and record all such other contracts, instruments, agreements and documents and take all such other actions as the Responsible Officers of Hopeman or Reorganized Hopeman may determine are necessary, appropriate or desirable in

connection therewith. The Asbestos Trust Agreement, as in effect on the Effective Date, shall be substantially in the form of Exhibit A to the Plan. The Asbestos Trust Distribution Procedures shall be substantially in the form of Exhibit B to the Plan.

### C. TRANSFERS OF PROPERTY TO, AND ASSUMPTION OF CERTAIN LIABILITIES BY, THE ASBESTOS TRUST.

#### 1. Transfer of Books and Records to the Asbestos Personal Injury Trust.

20. As set forth in Section 8.3(l) of the Plan, on the Effective Date, Hopeman shall transfer to Reorganized Hopeman all of Hopeman's books and records, including electronic records and the books and records presently stored in Hopeman's warehouse in Waynesboro, Virginia, and in storage at, or near, the offices of Hopeman's prepetition claims administrator Special Claim Services, Inc. Notwithstanding anything to the contrary herein, holders of Asbestos Personal Injury Claims and other parties may pursue and obtain information stored in Hopeman's books and records (including electronic records) through discovery to the full extent permitted by applicable law. For the avoidance of doubt, privileges belonging to Hopeman on the Petition Date, and/or prior to the occurrence of the Effective Date, in such books and records shall belong to Reorganized Hopeman as of the Effective Date. The Asbestos Trust's access to such books and records shall be only for purposes of evaluating and processing Uninsured Asbestos Claims in accordance with Section 8.3 and Section 8.16 of the Plan, the Asbestos Trust Agreement, and Asbestos Trust Distribution Procedures, and such access shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records.

#### 2. Funding the Asbestos Trust.

21. On the Effective Date, Hopeman or Reorganized Hopeman shall make the Asbestos Trust Contribution in accordance with Sections 8.2 and 8.3 of the Plan, except that the contribution of the Excess Net Reserve Funds may occur after the Effective Date but, in any

event, shall be deemed to have occurred as of the Effective Date in accordance with Section 8.2 of the Plan.

### 3. Transfer of the Asbestos Insurance Rights

22. On the Effective Date, by virtue of confirmation, without further notice, action, or deed, and subject to Section 6.2 of the Plan, the Asbestos Insurance Rights shall be automatically transferred to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to sections 1123(a)(5) and 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Asbestos Insurance Rights against any Entity, subject to the provisions of Section 8.13 and Section 8.15 of the Plan, and the Proceeds of the recoveries of any such Asbestos Insurance Rights shall be the property of, and shall be deposited in, the Asbestos Trust. The Asbestos Insurance Rights shall be indefeasibly vested in the Asbestos Trust subject to applicable terms and conditions but otherwise free and clear of all Claims, Demands, Equity Interests, Encumbrances, and other interests of any Entity.

### 4. Authority of the Asbestos Trust

23. As of the Effective Date, without any further action of the Bankruptcy Court or any Entity, except as otherwise expressly set forth in the Plan including, without limitation, the rights reserved to HII under Section 8.15 of the Plan, the Asbestos Trust shall be empowered to initiate, prosecute, enforce, sue on, defend, settle, compromise, and resolve (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, related to or arising from any asset, liability, or responsibility of the Asbestos Trust, including any actions arising from or related to the Asbestos Insurance Rights, in any court of competent jurisdiction consistent with applicable law.

**5. Assumption of Certain Liability and Responsibility by the Asbestos Trust.**

24. On the Effective Date, in consideration for the property transferred to the Asbestos Trust, and except as provided in Sections 8.12, 8.13, and 8.15 of the Plan, all Channeled Asbestos Claims shall be transferred and channeled to, and assumed by, the Asbestos Trust pursuant to the Asbestos Permanent Channeling Injunction, and shall be resolved, liquidated, and (if eligible for payment) paid in accordance with the Asbestos Trust Agreement, the Asbestos Trust Distribution Procedures, and any other Asbestos Trust Document. The Asbestos Trust shall have no liability for any Claims other than Channeled Asbestos Claims and Asbestos Trust Expenses, and no Claims other than Channeled Asbestos Claims and Asbestos Trust Expenses shall be transferred and channeled to, or assumed by, the Asbestos Trust. Notwithstanding the Asbestos Trust's assumption of liability and responsibility for Channeled Asbestos Claims, such assumption shall not itself operate or be construed as a release, accord and satisfaction, mutual rescission, or novation of Hopeman's obligations on account of such Claims for purposes of any Asbestos Insurance Rights solely to the extent of actions or suits against Reorganized Hopeman directly in accordance with Section 8.12 of the Plan (subject, however, to the discharge of any "personal liability" of Hopeman as that term is used in section 524(a) of the Bankruptcy Code and as provided in Article X of the Plan).

**6. Transfer of Rights and Defenses Related to Channeled Asbestos Claims**

25. On the Effective Date, all claims, defenses, rights and Causes of Action of Hopeman arising from or related to Channeled Asbestos Claims shall be transferred and assigned to the Asbestos Trust. In accordance with section 1123(b) of the Bankruptcy Code, the Asbestos Trust shall retain and may enforce such claims, defenses, rights, and Causes of Action relating to Channeled Asbestos Claims in any court of competent jurisdiction against any Entity other than a

Protected Party, and shall retain and may enforce all defenses and counterclaims to all Asbestos Claims or Demands asserted against the Asbestos Trust, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code. The Asbestos Trust shall be deemed to be the appointed representative of Hopeman and Reorganized Hopeman, and may pursue, litigate, compromise and settle any rights, claims or Causes of Action transferred to it, as appropriate.

**7. Institution and Maintenance of Legal and Other Proceedings**

26. From and after the Effective Date, the Asbestos Trust shall be empowered and entitled, in its sole and absolute discretion and at its own expense, to pursue, compromise, or settle all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust that is not released pursuant to the Plan.

**8. Payments and Distributions from the Asbestos Trust.**

27. The sole and exclusive source of payment or recovery of a Channeled Asbestos Claimant on account of his Channeled Asbestos Claim shall be the Asbestos Insurance Coverage applicable to such Channeled Asbestos Claim, as provided in Section 8.12, Section 8.13, and Section 8.15 of the Plan, unless the Channeled Asbestos Claim (a) is an Uninsured Asbestos Claim, or (b) becomes an Uninsured Asbestos Claim before the Channeled Asbestos Claimant receives payment in full of any judgment obtained against Reorganized Hopeman or the Non-Settling Asbestos Insurer, or settlement reached with a Non-Settling Asbestos Insurer, in accordance with Sections 8.12, 8.13, or 8.15 of the Plan. A Channeled Asbestos Claim shall become an Uninsured Asbestos Claim when (i) the Asbestos Trust has settled, in accordance with an Asbestos Insurance Settlement, all rights to the Asbestos Insurance Coverage applicable to the Channeled Asbestos Claim, or (ii) any Asbestos Insurance Coverage that otherwise may be applicable to such Channeled Asbestos Claim becomes unavailable due to exhaustion of the

relevant Asbestos Insurance Coverage or due to a Final Order ruling on a coverage issue or defense, in which event such Channeled Asbestos Claimant may seek payment or distribution on account of his Channeled Asbestos Claim from the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures. Any treatment of a Channeled Asbestos Claim that is partially an Insured Asbestos Claim and partially an Uninsured Asbestos Claim shall be set forth in the Asbestos Trust Distribution Procedures. Notwithstanding any provision in this Plan or any other Plan Document to the contrary, a Channeled Asbestos Claimant shall not be entitled to receive a payment or distribution on account of his Channeled Asbestos Claim from the Asbestos Trust unless and until his Channeled Asbestos Claim is eligible for payment or distribution from the Asbestos Trust under the Asbestos Trust Distribution Procedures.

**9. Indemnification by the Asbestos Trust.**

28. The Asbestos Trust shall, pursuant to the terms of the Asbestos Trust Agreement, indemnify and hold harmless the Protected Parties for any liability or alleged liability arising out of, or resulting from, or attributable to, a Channeled Asbestos Claim, including fines and penalties resulting from the Asbestos Trust's failure to comply with Section 8.14 of the Plan or the Asbestos Trust Agreement. Indemnification claims arising under Section 8.3(o) of the Plan or this paragraph 28 will not be subject to the Asbestos Trust Distribution Procedures.

**D. ACTIONS TO OBTAIN BENEFITS OF ASBESTOS INSURANCE COVERAGE**

**1. Actions Against Reorganized Hopeman or Wayne.**

29. Except as otherwise permitted under Section 8.16 of the Plan, on and after the Effective Date, a Channeled Asbestos Claimant shall have the right to initiate, commence, continue, or prosecute an action against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust), and, where permitted by applicable nonbankruptcy law, any Non-

Settling Asbestos Insurer for Wayne, in a court of competent jurisdiction to obtain the benefit of Asbestos Insurance Coverage.

30. If a Channeled Asbestos Claimant commences such an action on account of its Channeled Asbestos Claim, the complaint shall name Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or any Non-Settling Asbestos Insurer for Wayne as a defendant and shall be deemed by operation of law to be an action against Reorganized Hopeman or any Non-Settling Asbestos Insurer for Wayne, as applicable. Such an action may be filed in any court where Hopeman would have been subject to *in personam* jurisdiction with respect to the Channeled Asbestos Claimant's action had it been filed against Hopeman before the Petition Date or any other court of competent jurisdiction. Any action that is initiated, commenced, continued, or prosecuted in accordance with paragraph 29 hereof shall be served on the Asbestos Trust, which shall provide notice of such action, as appropriate, to all Non-Settling Asbestos Insurers. Notwithstanding the foregoing, Reorganized Hopeman, the Asbestos Trust, and Wayne shall have no obligation to answer, appear, or otherwise participate in the action in any respect other than as set forth in this Plan and as may be necessary to comply with applicable Asbestos Insurance Cooperation Obligations.

31. Any liability of Reorganized Hopeman or Wayne to any Entity, including any Channeled Asbestos Claimant or Asbestos Insurer, that is based on, arises from, or is attributable to any action commenced under Section 8.12 of the Plan shall be enforceable only against the Asbestos Insurance Coverage provided by the Non-Settling Asbestos Insurers and not against any other asset, including any other Asbestos Insurance Right, of the Asbestos Trust or Reorganized Hopeman

### 2. Actions Against Non-Settling Asbestos Insurers.

32. Except as otherwise permitted under Section 8.13 or 8.15 of the Plan, the Asbestos Trust shall have the exclusive right to pursue, monetize, settle, or otherwise obtain the benefit of the Asbestos Insurance Rights, including with respect to any unpaid insurance Proceeds applicable to a judgment or settlement obtained or entered into by a Channeled Asbestos Claimant in accordance with Section 8.12 of the Plan.

33. If a Channeled Asbestos Claimant has entered into an enforceable settlement agreement with a Non-Settling Asbestos Insurer pertaining to such claimant's Channeled Asbestos Claim and such Non-Settling Asbestos Insurer has not timely paid or has refused to pay the amount provided in such settlement, such Channeled Asbestos Claimant may commence a breach-of-contract action or other form of collection action against such Non-Settling Asbestos Insurer to recover the settlement payment owed.

34. Any Channeled Asbestos Claimant who (1) has obtained a judgment against Reorganized Hopeman or Wayne in accordance with Section 8.12 of the Plan, or (2) has the right under applicable nonbankruptcy law to name, join, or substitute as a defendant an Asbestos Insurer, may, to obtain the benefits of Asbestos Insurance Coverage, commence a judgment-enforcement action or a direct action against the relevant Non-Settling Asbestos Insurer ("Insurance Policy Action") in accordance with the terms of Section 8.13 of the Plan, subject to the following conditions:

(a) If any Non-Settling Asbestos Insurer against whom an Insurance Policy Action is brought asserts as a defense that it would have a claim against one or more Settled Asbestos Insurers with respect to the Channeled Asbestos Claimant's claim, including any claim for contribution, reimbursement, indemnity or subrogation, or bad faith refusal to settle related to

any Asbestos Insurance Policy, that it could have asserted but for any of the Injunctions ("Contribution Claim"), the liability, if any, of the Non-Settling Asbestos Insurer to the Channeled Asbestos Claimant shall be reduced dollar-for-dollar by the amount, if any, of any Contribution Claim in accordance with Section 8.13 of the Plan.

(b) In determining the amount of any Contribution Claim that operates to reduce the liability of a Non-Settling Asbestos Insurer in any Insurance Policy Action, the Channeled Asbestos Claimant may assert the legal or equitable rights or defenses, if any, of the Settled Asbestos Insurers with respect to such Contribution Claims, and for purposes of Section 8.13(c)(ii) of the Plan, all Settled Asbestos Insurers, in exchange for their status as a Protected Party and for receiving the benefits of the Injunctions, shall be deemed to have transferred or assigned such legal or equitable rights or defenses to Channeled Asbestos Claimants; provided that the Channeled Asbestos Claimant shall not be permitted to argue that any Contribution Claims are not properly asserted against the Channeled Asbestos Claimant or that the Injunctions bar or affect in any way such Contribution Claims in connection with the Channeled Asbestos Claimant's claim against the Non-Settling Asbestos Insurer.

(c) If a court reduces the amount of liability of a Non-Settling Asbestos Insurer in an Insurance Policy Action based on the share attributable to a Settled Asbestos Insurer consistent with Section 8.13 of the Plan, the Channeled Asbestos Claimant whose judgment has been reduced may seek payment from the Asbestos Trust for all or a portion of the amount of the judgment reduction attributable to the Settled Asbestos Insurer's share, but only as permitted by and in accordance with the Asbestos Trust Distribution Procedures.

(d) If the Asbestos Trust enters into an Asbestos Insurance Settlement with an Asbestos Insurer that is a party to a pending Insurance Policy Action, and if such Asbestos

Insurance Settlement is approved by the Bankruptcy Court, the Channeled Asbestos Claimant pursuing such Insurance Policy Action shall (i) be deemed to release any rights transferred to it via the Trust Transfer, without further notice or action by any Entity, and (ii) terminate its Insurance Policy Action with respect to that Asbestos Insurer. The Channeled Asbestos Claimant shall have the right to submit an Uninsured Asbestos Claim to the Asbestos Trust for payment in accordance with, and as permitted by, the Asbestos Trust Distribution Procedures, as set forth in Section 8.16 of the Plan.

(e) The Asbestos Trust may seek to intervene in any Insurance Policy Action at any time.

35. In addition to the rights and remedies set forth in Section 8.13 of the Plan, on and after the Effective Date, Channeled Asbestos Claimants may, only to the extent permitted or provided under applicable nonbankruptcy law, bring such Insurance Policy Actions against a Non-Settling Asbestos Insurer of Hopeman or Wayne with respect to potential liability of any Designated Person, subject to the terms and conditions set forth in Section 8.13(c) of the Plan. For the avoidance of doubt, no Designated Person shall be named as a defendant in any such Insurance Policy Actions.

36. If a Channeled Asbestos Claimant intends to pursue an Extracontractual Claim against a Non-Settling Asbestos Insurer, the Channeled Asbestos Claimant shall send written notice to the Asbestos Trust, requesting the Asbestos Trust's leave to pursue such Extracontractual Claim. Within fourteen (14) calendar days after receiving the Channeled Asbestos Claimant's request, the Asbestos Trust shall respond in writing that it is either granting or denying the Channeled Asbestos Claimant's request.

(a) The Asbestos Trust's notice to the Channeled Asbestos Claimant of its decision to grant the Channeled Asbestos Claimant's request to pursue an Extracontractual Claim shall legally operate as, or shall effect, to the extent permitted or authorized by applicable nonbankruptcy law and without further notice to or action by any Entity, a transfer to the Channeled Asbestos Claimant of the Asbestos Trust's rights to pursue such Extracontractual Claim ("Trust Transfer"). The Channeled Asbestos Claimant shall thereupon have standing and authority to pursue, settle, or resolve such Extracontractual Claim within his or her absolute discretion, subject to the terms set forth in Section 8.13 of the Plan.

(b) The Asbestos Trust may deny a Channeled Asbestos Claimant's request for leave to pursue an Extracontractual Claim if (i) the Asbestos Trust has determined that it is not able or permitted under applicable nonbankruptcy law to transfer or assign the Extracontractual Claim to the requesting Channeled Asbestos Claimant; (ii) the Asbestos Trust intends, within ninety (90) calendar days after receiving the Channeled Asbestos Claimant's request, to commence litigation (or arbitration, to the extent required by the applicable Asbestos Insurance Policy or Asbestos CIP Agreement) against the relevant Non-Settling Asbestos Insurer with respect to the applicable Channeled Asbestos Claimant's claim; or (iii) the Asbestos Trust has already commenced such litigation or arbitration, which is pending or has been resolved. Such litigation commenced by the Asbestos Trust may include, or pertain to, multiple other Channeled Asbestos Claims or seek a declaration of rights generally with respect to the Non-Settling Asbestos Insurers' obligations in connection with Channeled Asbestos Claims.

**3. Special Provision Pertaining to HII**

37. Notwithstanding any provision of the Plan or any other Plan Document to the contrary, on and after the Effective Date, HII may, (a) to the extent it is the holder of one or more

Asbestos Indirect Claims, and (b) only to the extent permitted or provided under applicable nonbankruptcy law, file claims, crossclaims, or third-party demands in a court of competent jurisdiction (including in any state court lawsuits) against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne, or pursue direct actions against any Non-Settling Asbestos Insurer of Hopeman or Wayne, including to bring an action against a Non-Settling Asbestos Insurer of Hopeman or Wayne with respect to the potential liability of any Designated Person. For the avoidance of doubt, such Designated Persons will not be named as defendants in any such actions. Reorganized Hopeman, the Asbestos Trust, and Wayne shall have no obligation to answer, reply, appear, or otherwise participate in any action in which HII has filed a claim, crossclaim, third-party demand, or in any such direct action, other than as necessary to maintain coverage under the Asbestos Insurance Policies. Any judgment that may be obtained in connection with such a claim, crossclaim, third-party demand, or direct action cannot be enforced against the assets of Reorganized Hopeman or the Asbestos Trust, other than from the Asbestos Insurance Coverage. To the extent Hopeman's Asbestos Insurance Rights become subject to Asbestos Insurance Settlements and such Asbestos Insurance Rights are liquidated by the Trust, HII may submit Asbestos Indirect Claims to the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures. For the avoidance of doubt, the foregoing in no way limits HII's ability to seek payment or any other form of relief that may be made available according to the provisions contained within the Asbestos Trust Distribution Procedures, this Plan, or any other Plan Document. For the further avoidance of doubt, HII need not execute an Asbestos Personal Injury Claimant Release to obtain the benefits of Section 8.15 of the Plan. Notwithstanding any provision of the Asbestos Trust Distribution Procedures, the Plan or any other Plan Document to the contrary, the rights contained within Section 8.15 of the

Plan may not be impaired, impeded, abridged, or otherwise modified at any time (whether before or after entry of the Confirmation Order) without the prior written consent of HII; *provided, however*, that the foregoing shall not be construed to vest HII with consent or veto rights as to a proposed Asbestos Insurance Settlement described in Section 8.17 of the Plan, or to override, expand, or otherwise modify HII's consultation rights granted under Section 8.17 of the Plan.

**E. RELEASE OF ENCUMBRANCES.**

38. Except as otherwise provided in the Plan or in any of the Plan Documents, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article V of the Plan, all Encumbrances, if any, against the property of Hopeman's Estate shall be fully released and discharged, and all of the right, title and interest of any holder of such Encumbrances, including any rights to any collateral thereunder, shall revert to Reorganized Hopeman and its successors and assigns.

**F. EXEMPTIONS FROM TAXATION.**

39. Pursuant to section 1146(a) of the Bankruptcy Code, the following shall not be subject to any stamp tax or similar tax: (i) the creation of any Encumbrances; (ii) the making or assignment of any lease or sublease; (iii) the execution and implementation of the Asbestos Trust Agreement, including the creation of the Asbestos Trust and any transfers to or by the Asbestos Trust; (iv) any Restructuring Transaction; and (v) the making or delivery of any deed or other instrument of transfer under, in furtherance of or in connection with the Plan, including any merger agreements, agreements of consolidation, restructuring, disposition, liquidation or dissolution, deeds, bills of sale or assignments, applications, certificates or statements executed or filed in connection with any of the foregoing or pursuant to the Plan.

## V. SETTLEMENTS, RELEASES AND EXCULPATION PROVISIONS.

40. The Plan settlement, release, exculpation and injunction provisions as set forth in Article X of the Plan are approved in all respects, are incorporated herein in their entirety, are so ordered and shall be immediately effective on the Effective Date without further action by this Court, the Bankruptcy Court, any of the parties to such provisions or any other party.

## VI. OBJECTIONS TO CONFIRMATION.

41. For the reasons set forth in the Findings and Conclusions, each of the Plan Objections is hereby overruled in its entirety.

## VII. DISCHARGE AND INJUNCTIONS.

### A. DISCHARGE OF HOPEMAN AND REORGANIZED HOPEMAN.

42. Except as specifically provided in the Plan, any of the other Plan Documents, or this Confirmation Order, pursuant to sections 524 and 1141(d)(1)(A) of the Bankruptcy Code, and effective upon the occurrence of the Effective Date, Hopeman and Reorganized Hopeman are discharged from any and all Claims and Demands of any nature whatsoever, including, without limitation, to the fullest extent permitted by law, Channeled Asbestos Claims, and liabilities that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code whether or not: (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any of Hopeman's Schedules; (b) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan. Except as otherwise specifically provided for in the Plan, as of the Effective Date, the rights provided in the Plan to holders of Claims, Demands, and Equity Interests shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims (including, to the fullest extent permitted by

law, Asbestos Claims and Demands) against, Liens on, and Equity Interests in Hopeman, Reorganized Hopeman, and all of their respective assets and properties.

**B. DISCHARGE INJUNCTION.**

43. Except as specifically provided in the Plan (including Section 8.12, Section 8.13, Section 8.15, and Section 8.16 thereof), any of the other Plan Documents, or this Confirmation Order, all Entities who have held, hold, or may hold Claims (including, to the fullest extent permitted by law, Asbestos Claims and Demands) against Hopeman are permanently enjoined, on and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand, other than to enforce any right to a Distribution pursuant to the Plan or any other right provided under this Plan; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Hopeman or against the property or interests in property of Hopeman, with respect to such Claim or Demand; and/or (e) commencing or continuing any action, in any manner, against Hopeman, Reorganized Hopeman, or their respective property that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of Hopeman (including, without limitation, Reorganized Hopeman) and their respective properties and interests in property. The discharge

provided in this provision shall void any judgment obtained against Hopeman at any time, to the extent that such judgment relates to a discharged Claim or Demand.

**C. ASBESTOS PERMANENT CHANNELING INJUNCTION.**

44. Pursuant to sections 105(a) and 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan (including Article VIII thereof), any of the other Plan Documents, and this Confirmation Order, the following injunction is hereby issued and shall take effect upon the occurrence of the Effective Date:

**1. Scope of Injunction.**

45. All Entities that have held or asserted, or hold or assert, or may hold or assert in the future any Channeled Asbestos Claim shall be permanently stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery on account of any such Channeled Asbestos Claim, including:

(a) commencing, conducting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interest in property of any Protected Party;

(b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interest in property of any Protected Party;

(c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interest in property of any Protected Party;

(d) setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interest in property of any Protected Party; and

(e) proceeding in any manner and in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Trust, except in conformity and compliance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

**2. Reservations.**

46. Notwithstanding anything to the contrary above, this Asbestos Permanent Channeling Injunction shall not stay, restrain, bar, or enjoin:

(a) the rights of Entities to the treatment accorded them under Article IV of this Plan, as applicable, including the rights of Channeled Asbestos Claimants to have their Channeled Asbestos Claims resolved in accordance with the Asbestos Trust Distribution Procedures;

(b) the rights of Entities to assert any Channeled Asbestos Claim against the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures, or any claim for payment of an Asbestos Trust Expense against the Asbestos Trust;

(c) the rights of Channeled Asbestos Claimants to assert any and all claims or causes of action against any Entities that are not Protected Parties;

(d) the rights of the Asbestos Trust or, if applicable, Reorganized Hopeman to prosecute a claim or cause of action based on, arising from, or attributable to any of the Asbestos Trust Assets against any Entity that is not a Protected Party;

(e) any action or suit against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne that strictly conforms to the requirements of Section 8.12 of the Plan.

(f) any action, suit, or Insurance Policy Action permitted or authorized under Section 8.13 of the Plan against any Non-Settling Asbestos Insurer; or

(g) any claim, crossclaim, or third-party demand in a court of competent jurisdiction (including in any state court lawsuits) against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne, or any direct action against any Non-Settling Asbestos Insurer of Hopeman or Wayne, in each case that strictly conforms to the requirements of Section 8.15 of the Plan.

**3. Protected Parties Under the Asbestos Permanent Channeling Injunction.**

47. For purposes the Asbestos Permanent Channeling Injunction, "Protected Party" means any of the following parties:

(a) Hopeman;

(b) Reorganized Hopeman;

(c) current and former directors, officers, or employees of Hopeman, or any past or present Affiliate of Hopeman, solely in their respective capacities as such; and

(d) each Settled Asbestos Insurer, solely in its capacity as such.

## D. NO ACTIONS ON ACCOUNT OF RELEASED CLAIMS.

48. Except as provided in the Plan, as of the Effective Date, all Releasing Parties that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, Causes of Action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following against a Released Party, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, Causes of Action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.

# VIII. APPROVAL OF THE ADEQUACY OF THE DISCLOSURE STATEMENT

49. The Disclosure Statement complies with all aspects of section 1125, because it contains information that is reasonably practicable to permit a hypothetical creditor to make an informed judgment about the Plan.

50. Article VIII of the Disclosure Statement also describes in detail the entities subject to the injunction under the Plan and the acts that they are enjoined from pursuing. Further, the language describing the injunctions and acts enjoined is described in specific and conspicuous language in the Disclosure Statement, making it clear to anyone who reads it.

51. Accordingly, the Disclosure Statement contains adequate information as required by section 1125 of the Bankruptcy Code and is approved on a final basis.

## IX. DISSOLUTION OF THE COMMITTEE, AND APPOINTMENT OF POST-EFFECTIVE DATE FUTURE CLAIMANTS' REPRESENTATIVE

52. Effective on the later of (i) the occurrence of the Effective Date or (ii) the completion of all matters described in Section 9.1(c) of the Plan, the Committee shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released and discharged from any further authority, duties, obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code. On the Effective Date, the Asbestos Trust Advisory Committee shall succeed to the attorney-client privilege and any other privilege held by the Committee and shall enjoy the work product protections that were applicable or available to the Committee before its dissolution.

53. The court-appointed Future Claimants' Representative Marla R. Eskin (or any court-appointed alternative or successor) is identified in Section 1.69 of the Plan to continue to serve, and is hereby appointed to serve, as the Future Claimants' Representative on and after the Effective Date (the "Post-Effective Date Future Claimants' Representative") in accordance with the Asbestos Trust Agreement. Except as otherwise provided in Section 9.1 of the Plan, the Post-Effective Date Future Claimants' Representative shall have the functions, duties, and rights provided in, and shall serve in accordance with, the Asbestos Trust Agreement.

54. Unless and until the Committee is dissolved in accordance with Section 9.1(a) of the Plan, and the Future Claimants' Representative is discharged from her office in accordance with Section 9.1(b) of the Plan, the Committee and the Future Claimants' Representative shall have post-Effective Date standing and capacity (i) to complete matters or proceedings, if any, including litigation, appeals, or negotiations, that are pending as of the Effective Date and not resolved in accordance with the Plan; (ii) to grant or withhold, in their sole discretion, any consent contemplated or required under the Plan; (iii) to object to or defend any Administrative

Expense Claims; (iv) to oppose any appeals of or from the Confirmation Order; and (v) to prepare and prosecute applications for allowance or payment of Professional Fee Claims of their respective Professionals. Subject to the terms of Section 2.2 of the Plan, the Committee's Professionals, and the Future Claimants' Representative and her Professionals, shall be authorized to seek allowance or payment of reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred, in connection with any matter described in Section 9.1(c) of the Plan or this paragraph 54.

## X. RETENTION OF JURISDICTION.

### A. RETENTION OF JURISDICTION BY THE BANKRUPTCY COURT.

55. Notwithstanding the entry of this Confirmation Order and the occurrence of the Effective Date, pursuant to Article XII of the Plan, the Bankruptcy Court and, to the extent the Bankruptcy Court lacks authority to enter a final judgment in accordance with the Article III of the United States Constitution or, otherwise, lacks subject-matter jurisdiction to address an issue, this Court, shall retain, to the fullest extent permitted by law, exclusive jurisdiction over all matters arising out of or related to the Chapter 11 Case, the Plan, including jurisdiction over the matters set forth in Section 12.1 of the Plan, and the implementation, interpretation, or enforcement of this Confirmation Order.

### B. JURISDICTION RELATING TO RESOLUTION OF CLAIMS UNDER THE ASBESTOS TRUST DISTRIBUTION PROCEDURES.

56. Notwithstanding anything to the contrary in Article XII of the Plan, the resolution of Channeled Asbestos Claims and the forum in which such resolution will be determined shall be governed by and in accordance with the Asbestos Trust Distribution Procedures.

C. **OTHER PROCEEDINGS.**

57. Notwithstanding any term or provision herein to the contrary, nothing in the Plan Documents shall detract from or contravene any jurisdictional or other provisions, including Sections 8.12, 8.13, and 8.15 of the Plan, that permit or require legal actions or proceedings to be brought in a court that is not the Bankruptcy Court or this Court. Notwithstanding anything in Section 12.1 of the Plan to the contrary, the Asbestos Trust may initiate, prosecute, defend, and resolve all legal actions and other proceedings related to or arising from any asset, liability, or responsibility of the Asbestos Trust, including any Causes of Action arising from or related to the Asbestos Insurance Rights and Channeled Asbestos Claims, outside of the Bankruptcy Court and in any court of competent jurisdiction, in accordance with Section 8.3 of the Plan. In addition, notwithstanding anything in Section 12.1 of the Plan to the contrary, Channeled Asbestos Claimants may bring Extracontractual Claims in accordance with Section 8.13(e) of the Plan outside of the Bankruptcy Court and in any court of competent jurisdiction. The Asbestos Trust shall not be entitled to assert that its right in and/or claims against the Asbestos Insurance Policies are unaffected by any breach of the Asbestos Insurance Cooperation Obligations.

**XI. NOTICE OF ENTRY OF CONFIRMATION ORDER.**

58. Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c), Reorganized Hopeman is directed to serve, within twenty (20) business days after the occurrence of the Effective Date, a notice of the entry of this Confirmation Order, which shall include notice of the Bar Dates established by the Plan and this Confirmation Order and notice of the Effective Date, substantially in the form attached hereto as Exhibit B and incorporated herein by reference (the "Confirmation Notice"), on all parties that received notice of the Confirmation Hearing; provided, however, that, with respect to Channeled Asbestos Claims, Reorganized Hopeman

shall be obligated to serve the Confirmation Notice only on counsel to holders of Channeled Asbestos Claims, to the extent that the holders of such Claims are represented by known counsel, unless such counsel requests otherwise in writing within ten (10) days of service of the Confirmation Notice.

59. As soon as practicable after the entry of this Confirmation Order, Reorganized Hopeman shall make copies of this Confirmation Order and the Confirmation Notice available on the website established by Kurtzman Carson Consultants, LLC d/b/a Verita Global for the Chapter 11 Case, available at https://veritaglobal.net/hopeman.

## XII. ORDER OF THE COURT.

60. The Plan is hereby confirmed in its entirety pursuant to section 1129 of the Bankruptcy Code, and the Asbestos Permanent Channeling Injunction is hereby issued pursuant to section 524(g) of the Bankruptcy Code.

THIS ORDER IS HEREBY DECLARED TO BE IN RECORDABLE FORM AND SHALL BE ACCEPTED BY ANY RECORDING OFFICER FOR FILING AND RECORDING PURPOSES WITHOUT FURTHER OR ADDITIONAL ORDERS, CERTIFICATIONS OR OTHER SUPPORTING DOCUMENTS.

/s/
David J. Novak
United States District Judge

Richmond, Virginia
Dated: August 18, 2026

**HUNTON ANDREWS KURTH LLP**
Joseph P. Rovira (admitted *pro hac vice*)
Catherine A. Rankin (admitted *pro hac vice*)
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Attorneys for Debtor and Debtor in Possession*

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Jeffrey A. Liesemer (VSB No. 35918)
Nathaniel R. Miller (admitted *pro hac vice*)
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000

*Counsel for the Official Committee of Unsecured Creditors*

**MORGAN, LEWIS & BOCKIUS LLP**
Brady Edwards (admitted *pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
Telephone: (713) 890-5000

W. Brad Nes (admitted *pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000

Jeffrey S. Raskin (admitted *pro hac vice*)
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

David Cox (admitted *pro hac vice*)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-7315

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| **HOPEMAN BROTHERS, INC.,** | : | **Case No. 24-32428 (KLP)** |
| **Debtor.** | : | |

**THIRD MODIFIED AMENDED PLAN OF REORGANIZATION OF**
**HOPEMAN BROTHERS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

Dated: August 17, 2026

# INTRODUCTION

Hopeman and the Committee, as the Plan Proponents, now jointly propose the following chapter 11 plan of reorganization for Hopeman Brothers, Inc., in accordance with section 1121(a) of title 11 of the United States Code. Capitalized terms used in this plan of reorganization and not otherwise defined shall have the meanings ascribed to them in Article 1.A hereof.

**This Plan provides, among other things, for the issuance of the Asbestos Permanent Channeling Injunction under sections 105(a) and 524(g) of the Bankruptcy Code that will, among other things, result in the channeling of certain asbestos-related liabilities of Hopeman (excluding liabilities for worker compensation claims) to a newly created Asbestos Trust, as more fully described herein. The terms, conditions, and Entities subject to the Asbestos Permanent Channeling Injunction are set forth in Section 10.3 of this Plan. Except as otherwise permitted under the terms of this Plan, the Asbestos Permanent Channeling Injunction will prohibit any acts to collect, recover, or offset any asbestos-related liabilities of Hopeman against Hopeman, Reorganized Hopeman, certain third parties, and various persons or entities related to those parties. Under section 524(g), all distributions paid under this Plan to the holders of Asbestos Claims and Demands will be the responsibility of the Asbestos Trust, and Hopeman and Reorganized Hopeman shall have no further personal liability for such claims.**

**Additionally, under the terms of Section 8.12 of this Plan, holders of Asbestos Claims and Demands may bring actions against Reorganized Hopeman and, to the extent they have obtained a judgment against Reorganized Hopeman or have the right to pursue direct actions under applicable nonbankruptcy law, such holders may bring judgment-enforcement or direct actions against Non-Settling Asbestos Insurers, in accordance with Section 8.13 of this Plan, to obtain the benefits of Asbestos Insurance Coverage. All other claims against Hopeman will receive payments and distributions in accordance with this Plan and the Asbestos Trust Documents.**

**The foregoing description of this Plan is qualified in its entirety by the terms, conditions, and definitions set forth below.**

# TABLE OF CONTENTS

Page

**ARTICLE I DEFINITIONS AND INTERPRETATIONS ... 1**
A. Definitions ... 1
B. Interpretation; Application of Definitions and Rules of Construction ... 14
C. Reference to Hopeman or Reorganized Hopeman ... 14
D. Reference to Monetary Figures ... 14

**ARTICLE II ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS ... 15**
2.1. Administrative Expense Claims ... 15
2.2. Professional Fee Claims ... 16
2.3. Priority Tax Claims ... 16

**ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ... 16**
3.1. Classification ... 16

**ARTICLE IV TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS ... 17**
4.1. Class 1 – Priority Non-Tax Claims ... 17
4.2. Class 2 - Secured Claims ... 17
4.3. Class 3 - General Unsecured Claims ... 17
4.4. Class 4 – Channeled Asbestos Claims ... 18
4.5. Class 5 – Equity Interests ... 18

**ARTICLE V DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER THAN CHANNELED ASBESTOS CLAIMS ... 18**
5.1. Distributions ... 18
5.2. Record Date for Holders of Claims ... 19
5.3. Postpetition Interest on Claims ... 19
5.4. Means of Cash Payment ... 19
5.5. Delivery of Distributions ... 19
5.6. Time Bar to Cash Payments ... 19
5.7. Prepayment of Claims ... 19
5.8. Minimum Distributions; Fractional Cents ... 20
5.9. Setoff and Recoupment ... 20

**ARTICLE VI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ... 20**
6.1. General Treatment ... 20

| | | | |
|---|---|---|---|
| | 6.2. | Asbestos Insurance Agreements | 20 |
| | 6.3. | Bar to Rejection Damages | 21 |
| **ARTICLE VII** | **PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN CHANNELED ASBESTOS CLAIMS AND PROFESSIONAL FEE CLAIMS** | | **22** |
| | 7.1. | Disputed Claims | 22 |
| | 7.2. | Objection to Claims | 22 |
| | 7.3. | Payments and Distributions with Respect to Disputed Claims | 22 |
| **ARTICLE VIII** | **MEANS FOR IMPLEMENTATION OF THE PLAN** | | **22** |
| | 8.1. | Generally | 22 |
| | 8.2. | Transactions on the Effective Date | 22 |
| | 8.3. | The Asbestos Trust | 23 |
| | 8.4. | Amended Certificate of Incorporation and By-Laws | 27 |
| | 8.5. | Net Reserve Funds | 27 |
| | 8.6. | Reorganized Hopeman Common Stock | 27 |
| | 8.7. | Corporate Governance of Reorganized Hopeman | 27 |
| | 8.8. | Operations of Hopeman Between Confirmation and the Effective Date | 27 |
| | 8.9. | Corporate Action | 28 |
| | 8.10. | Restructuring Transactions | 28 |
| | 8.11. | Continued Corporate Existence | 28 |
| | 8.12. | Actions Against Reorganized Hopeman or Wayne to Obtain Benefits of Asbestos Insurance Coverage | 28 |
| | 8.13. | Actions Against Non-Settling Asbestos Insurers to Obtain Benefits of Asbestos Insurance Coverage | 29 |
| | 8.14. | No Actions Against Released Parties | 31 |
| | 8.15. | Special Provision Pertaining to HII | 31 |
| | 8.16. | Payments or Distributions from the Asbestos Trust | 32 |
| | 8.17. | Settlements with Non-Settling Asbestos Insurers After the Effective Date | 32 |
| | 8.18. | Insurance Neutrality | 33 |
| | 8.19. | Effectuating Documents; Further Transactions | 33 |
| **ARTICLE IX** | **EFFECT OF CONFIRMATION** | | **34** |
| | 9.1. | Dissolution of Committee; Discharge of the Future Claimants' Representative | 34 |
| | 9.2. | Vesting of Assets | 34 |

9.3. Preservation of Certain Causes of Action, Rights to Settle Claims and Compromise Controversies, and Defenses....35

9.4. Terms of Injunction and Automatic Stay....35

9.5. No Liability for Certain Tax Claims....35

9.6. No Successor Liability....36

**ARTICLE X DISCHARGE, INJUNCTIONS, EXCULPATION, RELEASES, AND SETTLEMENT....36**

10.1. Discharge of Hopeman and Reorganized Hopeman....36

10.2. Hopeman Discharge Injunction....36

10.3. Asbestos Permanent Channeling Injunction....37

(a) Scope of Injunction....37

(b) Reservations....38

10.4. Exculpation....38

10.5. Releases by Hopeman and Estate....39

10.6. Release of Hopeman's Directors and Officers by Releasing Parties....39

10.7. Release of Avoidance Actions and Estate Causes of Action Against Vendor Released Parties....39

10.8. No Actions on Account of Released Claims....40

10.9. Compromise and Settlement of Claims and Interests and Approval of Certain Settling Insurers Agreement....40

10.10. Disallowed Claims....40

**ARTICLE XI CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN....40**

11.1. Conditions Precedent to Confirmation of the Plan....41

11.2. Conditions Precedent to the Effective Date....46

11.3. Waiver of Conditions Precedent....47

11.4. Failure to Achieve the Effective Date....47

**ARTICLE XII RETAINED JURISDICTION OF BANKRUPTCY COURT....47**

12.1. Retention of Jurisdiction....47

12.2. Other Proceedings....50

12.3. Modification of Plan....50

12.4. Consent to Jurisdiction....51

**ARTICLE XIII MISCELLANEOUS PROVISIONS....51**

13.1. Governing Law....51

13.2. Notices....51

13.3. Plan Supplement....52

13.4. Inconsistencies ....................................................................52
13.5. Tax Reporting and Compliance ....................................................................52
13.6. Payment of Statutory Fees ....................................................................52
13.7. Exemption from Transfer Taxes ....................................................................52
13.8. Recordable Order ....................................................................53
13.9. Binding Effect ....................................................................53
13.10. Severability ....................................................................53
13.11. Further Authorizations ....................................................................53
13.12. General Statements....................................................................53
13.13. Entire Agreement ....................................................................53

# EXHIBITS TO PLAN

| | |
|---|---|
| Exhibit A | Asbestos Trust Agreement |
| Exhibit B | Asbestos Trust Distribution Procedures |
| Exhibit C | Amended By-Laws of Reorganized Hopeman |
| Exhibit D | Amended Certificate of Incorporation |
| Exhibit E | Asbestos Personal Injury Claimant Release |
| Exhibit F | Restructuring Transaction |
| Exhibit G | List of Vendor Released Parties |
| Exhibit H | Asbestos Insurance Policies |
| Exhibit I | Reorganized Hopeman Projections |
| Exhibit J | Schedule of Non-Exclusive Causes of Action |

# ARTICLE I

## DEFINITIONS AND INTERPRETATIONS

A. **Definitions**. The following terms provided in this Article I apply to the Plan and shall have the respective meanings specified below:

**1.1. Administrative Expense Claim** means a Claim for any cost or expense of administration of the Estate under sections 503(b), 507(a)(1), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) any actual and necessary cost and expense of preserving the Estate or operating Hopeman's business incurred after the Petition Date and through the Effective Date; (b) any indebtedness or obligations incurred or assumed by Hopeman after the Petition Date and through the Effective Date; (c) any Allowed compensation for Professional services rendered, and Allowed reimbursement of expenses incurred, by a Professional retained by order of the Bankruptcy Court or otherwise Allowed pursuant to section 503(b) of the Bankruptcy Code; and (d) all fees due and payable pursuant to section 1930 of title 28 of the United States Code.

**1.2. Administrative Expense Claim Bar Date** means the first Business Day that is thirty (30) calendar days after the Effective Date, which will be the deadline by which parties seeking payment of Administrative Expense Claims (other than Professional Fee Claims) must file a motion seeking Allowance of such claim.

**1.3. Allowed** means, with respect to any Claim (other than a Channeled Asbestos Claim) or Interest, such Claim or Interest or portion thereof against or in Hopeman: (a) that has been listed by Hopeman in the Schedules as liquidated in amount and not disputed or contingent and for which no contrary Proof of Claim has been filed; (b) as to which the deadline for objecting or seeking estimation has passed, and no objection or request for estimation has been filed, or Hopeman otherwise has assented to the validity thereof; (c) as to which any objection or request for estimation that has been filed has been settled, waived, withdrawn, overruled, or denied by a Final Order; or (d) that is allowed pursuant to the terms of (i) a Final Order, (ii) an agreement by and between the holder of such Claim or Interest and Hopeman, or (iii) the Plan.

**1.4. Allowed Amount** means, with respect to any Claim (other than Channeled Asbestos Claims), the dollar amount of such Claim as Allowed. Unless otherwise provided in the Plan or a Final Order of the Bankruptcy Court or the District Court, the Allowed Amount of an Allowed Claim shall not include interest or penalties accruing on such Allowed Claim from and after the Petition Date.

**1.5. Amended By-Laws** means the amended and restated by-laws of Reorganized Hopeman, which shall be substantially in the form attached as Exhibit C as may be modified by, *inter alia*, a revised version filed in the Plan Supplement.

**1.6. Amended Certificate of Incorporation** means the amended and restated certificate of incorporation of Reorganized Hopeman, which shall be substantially in the form attached as Exhibit D hereto as may be modified by, *inter alia*, a revised version filed in the Plan Supplement.

**1.7. Asbestos CIP Agreement** means an agreement between Hopeman and an Asbestos Insurer that (a) is based on, arises from, or is attributable to an Asbestos Insurance Policy and (b), among other things, establishes a framework or formula for the Asbestos Insurer's payment of indemnity, liability, or defense costs to Hopeman with respect to Asbestos Personal Injury Claims. For the avoidance of doubt, "Asbestos CIP Agreement" includes (i) the Century 2009 Agreement, and (ii) the Wellington Agreement, but (iii) does not include any Designated Insurance Agreement.

**1.8. Asbestos Claim** means an Asbestos Personal Injury Claim or an Asbestos Indirect Claim.

**1.9. Asbestos Indirect Claim** means any Claim, now existing or hereafter arising, that is held or asserted by an Entity that is not an Asbestos Insurer against Hopeman, or for which Hopeman is liable, for contribution, reimbursement, subrogation, or indemnification, or any other indirect or derivative recovery, on account of or with respect to any Asbestos Personal Injury Claim. Notwithstanding the foregoing, any indemnity claims of Released Parties asserted under Section 8.14 hereof shall not be deemed to be or treated as an Asbestos Indirect Claim or an Asbestos Claim.

**1.10. Asbestos Insurance Cooperation Obligations** means, collectively, the assistance and cooperation, inspection and audit, and notice of occurrence provisions set forth in the Asbestos Insurance Policies, Asbestos CIP Agreements, and any other provisions purporting to require the cooperation of the insured party.

**1.11. Asbestos Insurance Coverage** means all rights, title, privileges, interests, claims, demands, benefits, or entitlements to proceeds, payments, indemnity, or reimbursement under any Asbestos Insurance Policy relating to any Channeled Asbestos Claim.

**1.12. Asbestos Insurance Policies** means the insurance policies identified on Exhibit H of the Plan and any other insurance policy of Hopeman, whether known or unknown, that provides or potentially provides coverage for any Channeled Asbestos Claim.

**1.13. Asbestos Insurance Rights** means any and all of Hopeman's rights, title, privileges, interests, claims, demands, or entitlements in or to any insurance coverage, defense, indemnity, proceeds, payments, escrowed funds, initial or supplemental dividends, scheme payments, supplemental scheme payments, state guaranty fund payments, causes of action, and choses in action under, for, or related to (i) the Asbestos Insurance Settlements, (ii) the Asbestos Insurance Policies, or (iii) the Asbestos CIP Agreements, whether now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including:

(a) any and all rights of Hopeman to pursue or receive payment, reimbursement, or proceeds under any Asbestos Insurance Policy or any Asbestos CIP Agreement, whether for indemnity, liability, defense costs, or otherwise;

(b) the remaining balance of any proceeds of any and all payments received by Hopeman on account of an Asbestos Insurance Policy or Asbestos CIP Agreement at any time on, before, or after the Effective Date, together with all interest earned on such proceeds;

(c) any and all rights of Hopeman to pursue or receive payments from any insolvent Asbestos Insurer, whether in receivership, liquidation, rehabilitation, runoff, or scheme of arrangement, or any other form of proceeding, or from any insolvent Asbestos Insurer's estate, and the remaining balance of any proceeds of all payments received by Hopeman from any such Asbestos Insurer or such insolvent insurer's estate, at any time on, before, or after the Effective Date, together with all interest earned on such proceeds;

(d) any and all rights of Hopeman to pursue or receive payments with respect to Asbestos Personal Injury Claims from any insurance guaranty association;

(e) any and all rights of Hopeman to pursue or receive payment to any exception to a workers' compensation exclusion in any Asbestos Insurance Policy; *provided, however*, that Asbestos Insurance Rights shall not include any rights or obligations under any insurance policy, settlement agreement, or coverage in-place agreement to which any Asbestos Insurer is a party to the extent, but only to the extent, that such rights or obligations pertain solely to coverage for Worker Compensation Claims; and

(f) any and all Extracontractual Claims, and any and all rights of Hopeman to pursue or receive payments or recoveries on account thereof.

**1.14. Asbestos Insurance Settlement** means (a) the Certain Settling Insurers Agreement; (b), with the exception of the Certain Settling Insurers Agreement, each agreement that, prior to the Effective Date, has been entered into by an Asbestos Insurer and Hopeman with consent of the Committee and approved by Final Order of the Bankruptcy Court; or (c) any agreement that satisfies the requirements of clauses (a) through (c) of Section 8.17.

**1.15. Asbestos Insurer** means any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has any actual or potential liabilities, duties or obligations under or with respect to any Asbestos Insurance Policy.

**1.16. Asbestos Permanent Channeling Injunction** means the injunction provided for in Section 10.3 hereof.

**1.17. Asbestos Personal Injury Claim** means any Claim or allegation or portion thereof against, or any debt, liability, or obligation of, Hopeman, whether now existing or hereafter arising, whether in the nature of or sounding in tort, or under contract, warranty, or any other theory of law, equity, or admiralty for, arising out of, resulting from, or attributable to, directly or indirectly, death, bodily injury, sickness, disease, or any other actual or alleged personal injury, physical, emotional, or otherwise, to persons, caused or allegedly caused, directly or indirectly, by the presence of, or exposure to, asbestos, including asbestos-containing products or materials engineered, designed, marketed, manufactured, fabricated, constructed, sold, supplied, produced, installed, maintained, serviced, specified, selected, repaired, removed, replaced, released, distributed, or in any other way used by Hopeman or any other Entity for whose products or operations Hopeman has liability or is alleged to have liability, but only to the extent arising, directly or indirectly, from acts, omissions, business, or operations of Hopeman (including the acts, omissions, business, or operations of any other Entity for whose products or operations Hopeman has liability, but only to the extent of Hopeman's liability for such acts, omissions, business, or

operations), including all related claims, debts, obligations, or liabilities (such as any claim or demand for compensatory damages; loss of consortium; medical monitoring; wrongful death; survivorship; proximate, consequential, general, special, or punitive damages). As used herein, the term "Asbestos Personal Injury Claim" shall not include any Worker Compensation Claim.

**1.18. Asbestos Personal Injury Claimant Release** means a general release by a holder of an Asbestos Personal Injury Claim in substantially the form attached as Exhibit E hereto.

**1.19. Asbestos Trust** means the Asbestos Trust established pursuant to section 524(g) of the Bankruptcy Code and in accordance with the Plan, the Confirmation Order and the Asbestos Trust Agreement, which trust shall constitute a "qualified settlement fund" under section 468B of the Internal Revenue Code and shall be a Delaware statutory trust.

**1.20. Asbestos Trust Advisory Committee** means the Asbestos Trust advisory committee established pursuant to the terms of the Plan and the Asbestos Trust Agreement and identified in the Asbestos Trust Agreement.

**1.21. Asbestos Trust Agreement** means the agreement, to be dated as of the Effective Date, by and among Reorganized Hopeman, the Future Claimants' Representative, the Asbestos Trustee, the Asbestos Trust Advisory Committee, and the Delaware Trustee, governing the creation and the terms of the Asbestos Trust, which shall be substantially in the form attached as Exhibit A hereto.

**1.22. Asbestos Trust Assets** means, collectively: (a) the Asbestos Trust Contribution; (b) the Asbestos Insurance Rights; (c) all other assets, rights (including Causes of Action), and benefits assigned, transferred or conveyed to the Asbestos Trust in connection with the Plan or any Plan Documents; and (d) all proceeds of the foregoing.

**1.23. Asbestos Trust Contribution** means a contribution or contributions by or on behalf of Hopeman or Reorganized Hopeman to the Asbestos Trust of (a) all Cash held by Hopeman (provided, however, that any Cash, up to an amount to be disclosed in the Plan Supplement held by Hopeman as of the Effective Date shall be set aside by Hopeman or Reorganized Hopeman, as applicable, in a segregated account as the Net Reserve Funds in accordance with Section 8.5 of the Plan), (b) the Excess Net Reserve Funds, (c) all of Hopeman's or Reorganized Hopeman's, as applicable, rights or Proceeds payable under any and all agreements with Settled Asbestos Insurers (including any Proceeds held in or deposited into any qualified settlement fund pursuant to, or in connection with, an agreement with Settled Asbestos Insurers); and (d) all of Hopeman's or Reorganized Hopeman's, as applicable, Asbestos Insurance Rights.

**1.24. Asbestos Trust Distribution Procedures** means the trust distribution procedures for the Asbestos Trust, which shall be substantially in the form attached as Exhibit B hereto, and such additional procedures as may subsequently be adopted by the Asbestos Trust, which provide for the resolution, liquidation, and satisfaction of Channeled Asbestos Claims.

**1.25. Asbestos Trust Documents** means, collectively: (a) the Asbestos Trust Agreement; (b) the Asbestos Trust Distribution Procedures; and (c) any other agreements, instruments, and documents governing the establishment and administration of the Asbestos Trust, which shall be materially consistent with the terms of the Plan, the Asbestos Trust Agreement, and

the Asbestos Trust Distribution Procedures, as the same may be amended or modified from time to time, in accordance with the terms thereof.

**1.26. Asbestos Trust Expenses** means any of the liabilities, costs, or expenses incurred by or on behalf of the Asbestos Trust (other than liabilities to holders of Asbestos Personal Injury Claims in respect of such Claims), in carrying out the terms of the Asbestos Trust Agreement.

**1.27. Asbestos Trustees** means the individuals set forth in the Asbestos Trust Agreement and appointed pursuant to the Confirmation Order to serve as either the "Administrative Trustee" or the "Litigation Trustee" for the Asbestos Trust (as those quoted terms are defined in the Asbestos Trust Agreement) in accordance with the terms of the Plan and the Asbestos Trust Agreement, and any successor trustee thereto appointed in accordance with the Asbestos Trust Agreement.

**1.28. Avoidance Action(s)** means any avoidance or recovery action under any of sections 502(d), 542, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, or under similar state or federal statutes and common law, whether or not litigation has been commenced with respect to such Cause of Action as of the Effective Date.

**1.29. Bankruptcy Code** means title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments, modifications and replacements of the foregoing, as the same may exist on any relevant date to the extent applicable to the Chapter 11 Case.

**1.30. Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division, or such other court as may have jurisdiction over the Chapter 11 Case or any proceeding within, or appeal of an order entered in, the Chapter 11 Case including, to the extent of a withdrawal of reference under 28 U.S.C. § 157 or the requirement for final approval, the District Court.

**1.31. Bankruptcy Rules** means, collectively: (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Case or any proceedings therein; and (c) the local rules of the Bankruptcy Court, all as amended from time to time and applicable to the Chapter 11 Case.

**1.32. Business Day** means any day other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**1.33. Cash** means legal tender of the United States of America and equivalents thereof.

**1.34. Causes of Action** is intended to be read as broadly as possible and includes, but is not limited to, any claims, causes of action (including Avoidance Actions and the claims and causes of action described in Exhibit J hereto), demands, actions, suits, obligations, liabilities, crossclaims, counterclaims, defenses, offsets, or set offs of any kind or character whatsoever, in each case whether known or unknown, contingent or noncontingent, matured or unmatured, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, under statute, in contract, in tort, in law, or in equity, or pursuant to any other

theory of law, federal or state, whether asserted or assertable directly or derivatively in law or equity or otherwise by way of claim, counterclaim, crossclaim, third party action, action for indemnity, contribution, or otherwise.

**1.35. Certain Settling Insurers Agreement** means the Settlement Agreement and Release, dated as of July 10, 2024, by and among Hopeman, Continental Casualty Company, Fidelity & Casualty Company, Lexington Insurance Company, Granite State Insurance Company, the Insurance Company of the State of Pennsylvania, National Union fire Insurance Company of Pittsburgh, PA, and General Reinsurance Corporation.

**1.36. Channeled Asbestos Claimant** means the holder of a Channeled Asbestos Claim.

**1.37. Channeled Asbestos Claims** means, collectively, the Asbestos Claims and Demands.

**1.38. Chapter 11 Case** means Hopeman's case under chapter 11 of the Bankruptcy Code, captioned *In re Hopeman Brothers, Inc.*, Case No. 24-32428 (KLP) pending in the Bankruptcy Court.

**1.39. Claim** means a claim, as defined in section 101(5) of the Bankruptcy Code against Hopeman.

**1.40. Claims and Balloting Agent** means the claims, noticing and balloting agent in the Chapter 11 Case, Kurtzman Carson Consultants, LLC dba Verita Consulting.

**1.41. Class** means a category of Claims or Interests established under section 3.1 of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.42. Century 2009 Agreement** means that certain Settlement Agreement, dated December 18, 2009, between Hopeman and Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America.

**1.43. Committee** means the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee for the Eastern District of Virginia in this Chapter 11 Case on July 22, 2024.

**1.44. Confirmation Date** means the date on which the Confirmation Order is entered on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021 or on the docket of the District Court.

**1.45. Confirmation Hearing** means the hearing(s) to be held by the Bankruptcy Court or the District Court pursuant to section 1128 of the Bankruptcy Code to consider confirmation of the Plan, as such hearing(s) may be adjourned or continued from time to time.

**1.46. Confirmation Order** means (a) the order of the District Court confirming the Plan under section 1129 of the Bankruptcy Code or (b) collectively, the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code and the order of the District Court

affirming such order, which in either case shall contain the Asbestos Permanent Channeling Injunction.

**1.47. Contribution Claim** has the meaning ascribed to that term in Section 8.13 of this Plan.

**1.48. Debtor in Possession** means Hopeman as debtor in possession in the Chapter 11 Case pursuant to section 1101(1) of the Bankruptcy Code.

**1.49. Delaware Trustee** means the Entity appointed in accordance with section 8.3(c), herein, to serve as the "Delaware Trustee" in accordance with the terms of the Plan and the Asbestos Trust Agreement.

**1.50. Demand** means a "demand," as defined in section 524(g)(5) of the Bankruptcy Code, against Hopeman.

**1.51. Designated Insurance Agreement** means any prepetition settlement agreement or any prepetition coverage-in-place agreement (including any related indemnity obligations thereunder) between Hopeman and one or more Asbestos Insurers (a) that does not currently provide rights in favor of Hopeman to continuing coverage or to payment of insurance proceeds or (b) as to, or on account of, which the Debtor did not receive any payment of insurance proceeds within the period of one year immediately preceding the Petition Date. For the avoidance of doubt, the term "Designated Insurance Agreement" (i) includes the Travelers 2005 Agreement, but (ii) does not include an Asbestos CIP Agreement.

**1.52. Designated Person** means each of the following former directors and officers of Hopeman or Wayne: Albert Arendt Hopeman, Jr., Bertram C. Hopeman, Charles Johnson, and Kenneth Wood.

**1.53. Disallowed** means, when used with respect to a Claim against Hopeman, other than an Asbestos Personal Injury Claim, a Claim that is not Allowed and (a) has been disallowed by a Final Order, (b) is listed in the Schedules as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, (c) is not listed in the Schedules and as to which no Proof of Claim or request for payment of an Administrative Expense Claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (d) has been withdrawn, in whole or in part (but solely to the extent of such withdrawal), by the holder thereof.

**1.54. Disclosure Statement** means the written disclosure statement that relates to the Plan, including the exhibits and schedules thereto, as approved by the Bankruptcy Court after the Petition Date as containing adequate information pursuant to section 1125 of the Bankruptcy Code and Rule 3017 of the Bankruptcy Rules, as such disclosure statement may be amended, modified, or supplemented from time to time.

**1.55. Disputed Claim** means a Claim against Hopeman or any portion thereof, other than a Channeled Asbestos Claim, that is neither Allowed nor Disallowed or is contingent, disputed, or unliquidated.

**1.56. Distribution** means any: (a) Cash; (b) property; or (c) interest in property to be paid or distributed hereunder to the holders of Allowed Claims, not including Channeled Asbestos Claims.

**1.57. Distribution Record Date** means the record date for determining an entitlement to receive Distributions under the Plan on account of Allowed Claims, other than Channeled Asbestos Claims, which date shall be the Confirmation Date.

**1.58. District Court** means the United States District Court for the Eastern District of Virginia.

**1.59. Effective Date** means the first Business Day upon which each condition set forth in section 11.2 has been satisfied or waived.

**1.60. Encumbrance** means, with respect to any property (whether real or personal, or tangible or intangible), any mortgage, Lien, pledge, charge, security interest, assignment, or encumbrance of any kind or nature in respect of such property (including any conditional sale or other title retention agreement, any security agreement, and the filing of, or agreement to give, any financing statement under the Uniform Commercial Code or comparable law of any jurisdiction) to secure payment of a debt or performance of an obligation.

**1.61. Entity** means any Person or organization created by law, including, without limitation, any individual, company, corporation, limited liability company, partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, or government or any political subdivision thereof.

**1.62. Equity Interest** means any right, title and ownership interest in Hopeman.

**1.63. Estate** means the estate created under section 541 of the Bankruptcy Code in the Chapter 11 Case.

**1.64. Excess Net Reserve Funds** means any Net Reserve Funds remaining after the satisfaction in full of (a) all Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims and Allowed General Unsecured Claims (including the payment of any interest on any such Claims that may be allowed under the Plan or required to be paid by the Bankruptcy Code), (b) any fees and expenses of Hopeman, Reorganized Hopeman, the Committee, the Future Claimants' Representative that are payable by Hopeman or Reorganized Hopeman, as applicable, pursuant to Section 9.1 of the Plan, (c) any fees payable pursuant to section 1930 of title 28 of the United States Code (whether those fees pursuant to section 1930 of title 28 are payable before or after the Effective Date), (d) any other amounts that the Plan provides are to be paid from the Net Reserve Funds, and (e) such amounts as Reorganized Hopeman determines, in the reasonable exercise of its discretion, are or will be sufficient to fully satisfy (as and when due) all franchise taxes and other expenditures that are necessary to maintain its corporate existence in good standing under the laws of the state of its formation or that otherwise are necessary for Reorganized Hopeman to conduct the business for which Section 8.11 of the Plan provides.

**1.65. Exculpated Parties** means, collectively, (a) Hopeman, (b) the Committee, solely in its capacity as such, (c) the Future Claimants' Representative, solely in her capacity as such, and (d) Professionals of any of the foregoing Entities, solely in their capacity as such. An Entity shall be an "Exculpated Party" only to the extent that it is a fiduciary that has performed duties in connection with the Chapter 11 Case.

**1.66. Executory Contract** means any unexpired lease or executory contract of Hopeman that is subject to treatment under section 365 of the Bankruptcy Code.

**1.67. Extracontractual Claim** means any claim against an Asbestos Insurer for "bad faith," extracontractual, or tort liability that is based on, arises from, or is attributable to an Asbestos Insurance Policy or Asbestos CIP Agreement.

**1.68. Final Order** means a judgment or an order, as the case may be, as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari or other proceedings for reargument or rehearing shall then be pending; provided, however, that if an appeal, writ of certiorari, reargument or rehearing thereof has been filed or sought: (a)(i) such judgment or order shall have been affirmed by the highest court to which such judgment or order was appealed; or (ii) certiorari shall have been denied or reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for reargument or rehearing shall have expired; or (b) such appeal, writ of certiorari, or request for reargument or rehearing shall have been dismissed with prejudice by the filing or seeking party.

**1.69. Future Claimants' Representative** means Marla Rosoff Eskin (or any court-appointed alternative or successor) in her capacity as the court-appointed legal representative for all holders of Demands pursuant to section 524(g) of the Bankruptcy Code, and any successor to such individual who is appointed to serve in such capacity in accordance with the Asbestos Trust Agreement.

**1.70. General Unsecured Claim** means a Claim against Hopeman that is not secured by a valid and enforceable Lien against property of Hopeman and that is not a Secured Claim, an Administrative Expense Claim, a Priority Claim, a Priority Tax Claim, or Channeled Asbestos Claim.

**1.71. General Unsecured Recovery Pool** means Cash in the amount of $200,000 to be paid from the Net Reserve Funds.

**1.72. HII** means Huntington Ingalls Industries, Inc. and Huntington Ingalls Incorporated (and Huntington Ingalls Incorporated's corporate predecessors, including, without limitation, Avondale Industries or Avondale Shipyards).

**1.73. Hopeman** means (a) Hopeman Brothers, Inc., a Virginia corporation, and its predecessors; and (b) the debtor and Debtor in Possession in the Chapter 11 Case.

**1.74. Impaired** means, when used with respect to a Claim or an Equity Interest, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.75. Injunctions** means the Asbestos Permanent Channeling Injunction and any injunction or stay granted by, or provided under, a Final Order approving an Asbestos Insurance Settlement.

**1.76. Insurance Policy Action** has the meaning ascribed to that term in Section 8.13 of this Plan.

**1.77. Insured Asbestos Claim** means a Channeled Asbestos Claim that is not an Uninsured Asbestos Claim.

**1.78. Lien** means any charge against or interest in property to secure payment of a debt or performance of an obligation.

**1.79. Net Reserve Funds** means the lesser of (i) Cash in the amount to be disclosed in the Plan Supplement or (ii) the amount of Cash held by Hopeman as of the Effective Date, to be set aside by Hopeman on the Effective Date for the purpose of paying or making the Distributions contemplated by the Plan with respect to (a) Allowed Administrative Expense Claims, Allowed Priority Tax Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed General Unsecured Claims (including the payment of any interest on any such Claims that may be allowed under the Plan or required to be paid by the Bankruptcy Code), (b) any fees and expenses of Hopeman, Reorganized Hopeman, the Committee and the Future Claimants' Representative that are payable by Hopeman or Reorganized Hopeman, as applicable, pursuant to the Plan, (c) any fees payable pursuant to section 1930 of title 28 of the United States Code (whether those fees pursuant to section 1930 of title 28 are payable before or after the Effective Date, (d) any other amounts that the Plan provides are to be paid from the Net Reserve Funds, and (e) such amounts as Reorganized Hopeman determines, in the reasonable exercise of its discretion, are or will be sufficient to fully satisfy (as and when due) all franchise taxes and other expenditures that are necessary to maintain its corporate existence in good standing under the laws of the state of its formation or that otherwise are necessary for Reorganized Hopeman to conduct its business after the Effective Date.

**1.80. Non-Asbestos Claim** means any Claim against Hopeman that is not an Asbestos Personal Injury Claim.

**1.81. Non-Asbestos Insurer** means any Entity, including any insurance company, broker, or guaranty association, that has issued, or that has any actual or potential liabilities, duties or obligations under or with respect to any Non-Asbestos Insurance Policy.

**1.82. Non-Asbestos Insurance Policy** means any insurance policy that provides coverage to Hopeman that is not an Asbestos Insurance Policy.

**1.83. Non-Settling Asbestos Insurer** means an Asbestos Insurer that is not a Settled Asbestos Insurer. For the avoidance of doubt, notwithstanding any provision herein to the contrary, the term "Non-Settling Asbestos Insurer" shall include Liberty Mutual Insurance Company.

**1.84. Person** means person as defined in section 101(41) of the Bankruptcy Code.

**1.85. Petition Date** means June 30, 2024, the date on which the petition was filed by Hopeman pursuant to section 301 of the Bankruptcy Code to commence this Chapter 11 Case.

**1.86. Plan** means this plan of reorganization of Hopeman under chapter 11 of the Bankruptcy Code, including any supplements, schedules and exhibits hereto, either in its present form or as the same may be amended, modified or supplemented from time to time in accordance with the terms hereof.

**1.87. Plan Documents** means, collectively, (a) the Plan and all exhibits thereto, (b) the Disclosure Statement and all exhibits thereto, (c) the Plan Supplement, and (d) any other document necessary to implement the Plan.

**1.88. Plan Proponents** means Hopeman and the Committee.

**1.89. Plan Supplement** means the supplement to the Plan to be filed with the Bankruptcy Court no later than five (5) Business Days prior to the deadline for the filing and service of objections to the Plan or such later date as the Bankruptcy Court may approve, all of which are incorporated herein by reference.

**1.90. Prepetition Non-Asbestos Claims Bar Dates** means (a) November 4, 2024, which the Bankruptcy Court fixed as the deadline to file a Proof of Claim for any Claim arising before the Petition Date other than an Asbestos Personal Injury Claim and a Claim held by a Governmental Unit, and (b) December 27, 2024, which the Bankruptcy Court fixed as the deadline for Governmental Units to file a Proof of Claim for any Claim arising before the Petition Date other than an Asbestos Personal Injury Claim.

**1.91. Priority Non-Tax Claim** means any Claim entitled to priority in right of payment pursuant to section 507(a) of the Bankruptcy Code that is not an Administrative Expense Claim or a Priority Tax Claim.

**1.92. Priority Tax Claim** means any Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

**1.93. Proceeds** means all cash, interest, profits, dividends, proceeds, products, and rents earned, accrued, collected, derived, received, or recovered on account of the liquidation, sale, transfer, enforcement, or other disposition of property, including all "proceeds" as defined under section 9-102(64) of the Uniform Commercial Code, and all proceeds on proceeds.

**1.94. Pro Rata** means the proportion that the face amount of a Claim in a particular Class or Classes bears to the aggregate face amount of all Claims (including Disputed Claims but excluding Disallowed Claims) in such Class or Classes, unless the Plan provides otherwise.

**1.95. Professional** means any person retained or to be compensated pursuant to section 327, 328, 330, 363, 503(b), or 1103 of the Bankruptcy Code.

**1.96. Professional Fee Claim** means any Claim of a (a) Professional for allowance of compensation and/or reimbursement of costs and expenses, and (b) member of the Committee for

Case 3:26-cv-00416-DJN Document 20 Filed 08/13/26 Page 13 of 61 PageID# 7331

reimbursement of costs and expenses, in each case incurred in the Chapter 11 Case on or before the Effective Date.

**1.97. Proof of Claim** means any proof of claim or interest filed with the Bankruptcy Court or the Claims and Balloting Agent pursuant to section 501 of the Bankruptcy Code and Rule 3001 or 3002 of the Bankruptcy Rules that asserts a Claim against or Interest in Hopeman.

**1.98. Protected Party** shall mean each of the following persons or entities (collectively referred to herein as "**Protected Parties**"):

(a) Hopeman or Reorganized Hopeman;

(b) current and former directors, officers, or employees of Hopeman, or any past or present Affiliate of Hopeman, solely in their respective capacities as such; or

(c) any Settled Asbestos Insurer, solely in its capacity as such.

**1.99. Released Parties** means current and former directors, officers, or employees of Hopeman, or any past or present Affiliate of Hopeman, except Wayne, solely in their respective capacities as such.

**1.100. Releasing Party** means collectively: (a) all holders of Asbestos Claims and (b) all holders of Non-Asbestos Claims or Equity Interests who affirmatively opt in to the releases provided by the Plan by checking the box on the applicable form indicating that they opt in to grant the releases provided in the Plan in accordance with the procedures set forth in the Solicitation Procedures Order.

**1.101. Reorganized Hopeman** means Hopeman on and after the Effective Date.

**1.102. Reorganized Hopeman Common Stock** means all of the issued and outstanding shares of common stock of Reorganized Hopeman to be deemed authorized and issued under Section 8.6.

**1.103. Representative** means, with respect to any specified Entity, any current or former officer, director, employee, agent, attorney, accountant, financial advisor, expert, consultant, or other representative of any specified Entity.

**1.104. Restructuring Transactions** means the acquisition by Hopeman or Reorganized Hopeman of the low-cost, income-generating business or interest in such business, which acquisition cost will be $500,000 or less, described in Exhibit F.

**1.105. Schedules** means the schedules of assets and liabilities and the statements of financial affairs of Hopeman as filed with the Bankruptcy Court by Hopeman after the Petition Date in accordance with section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statements may be amended or supplemented from time to time.

**1.106. Secured Claim** means a Claim that is: (a) secured by a valid, duly perfected, non-avoidable security interest in the interest of Hopeman in property, to the extent of the value, as of the Effective Date or such other date as is established by the Bankruptcy Court, of such claimholder's interest in Hopeman's interest in such property, as determined by a Final Order of the Bankruptcy Court pursuant to section 506(a) of the Bankruptcy Code or as otherwise agreed in writing by Hopeman and the claimholder; or (b) secured by the amount of any valid, non-avoidable rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

**1.107. Settled Asbestos Insurer** means any Asbestos Insurer that is a party to an Asbestos Insurance Settlement.

**1.108. Solicitation Procedures Order** means the order of the Bankruptcy Court approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code, approving the combined hearing of the Plan and Disclosure Statement, and approving the method of solicitation of votes on the Plan. Hopeman anticipates filing a motion, contemporaneously with the filing of this Plan, seeking approval of the Solicitation Procedures Order.

**1.109. Travelers** means, collectively, The Travelers Indemnity Company, Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Insurance Company, and St. Paul Fire and Marine Insurance Company.

**1.110. Travelers 2005 Agreement** means that certain Agreement among Hopeman Brothers, Inc., the Travelers Indemnity Company, Travelers Casualty and Surety Company, and St. Paul Fire and Marine Insurance Company, dated July 22, 2005.

**1.111. Travelers 2005 Agreement Asbestos Insurance Policies** means, collectively, the following Asbestos Insurance Policies issued by Travelers: (i) The Travelers Indemnity Company Policy No. CUP 2669174, and (ii) The Aetna Casualty and Surety Company Policy No. 01 XN 541 WCA.

**1.112. Trust Transfer** has the meaning ascribed to that term in Section 8.13.

**1.113. Unimpaired** means, when used with respect to a Claim or an Equity Interest, any Claim or Equity Interest that is not Impaired.

**1.114. Uninsured Asbestos Claim** means a Channeled Asbestos Claim (a) with a date of first exposure to asbestos or asbestos-containing products or things falling after January 1, 1985, or (b) for which no coverage under any Asbestos Insurance Policy is available due to settlement (including an Asbestos Insurance Settlement), exhaustion, or a final and non-appealable ruling on a coverage issue or defense.

**1.115. United States Trustee** means the United States Trustee appointed under section 581 of title 28 of the United States Code to serve in the Eastern District of Virginia.

**1.116. United States Trustee Fees** means the fees payable to the United States Trustee in accordance with 28 U.S.C. § 1930.

**1.117. Vendor Released Parties** means those Entities listed on Exhibit G hereto, each of which is a vendor, including professionals, that provided services to Hopeman prior to the Petition Date.

**1.118. Wayne** means Wayne Manufacturing Corporation, a dissolved company, and its predecessors.

**1.119. Wellington Agreement** means that certain Agreement Concerning Asbestos-Related Claims, dated June 19, 1985, including any schedules, exhibits, and appendices thereto, as the same may be amended, modified, or supplemented from time to time.

**1.120. Worker Compensation Claim** means any Claim (a) for the benefits under a government-mandated workers' compensation system, which a past, present, or future employee of Hopeman or any predecessor of Hopeman is receiving, or may in the future have a right to receive, or (b) for reimbursement, contribution, subrogation, or indemnity brought by any insurer or Governmental Unit as a result of payments made to or for the benefit of such employees under such a system and the fees and expenses incurred under any insurance policies or laws or regulations covering such employee claims.

## B. Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all Article, schedule or exhibit references in the Plan are to the respective Article of or schedule or exhibit to the Plan or the Plan Supplement, as the same may be amended or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular Article, Section, subsection, paragraph, or clause. The word "will" is to be construed as having the same meaning and effect as the word "shall," and vice-versa. With respect to a distribution under the Plan, "on" a date means on or as soon as reasonably practical thereafter. A capitalized term used but not defined herein shall have the meaning ascribed to that term in the Bankruptcy Code. Pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter genders. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan, except that, in addition to section 102(7), the plural includes the singular. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Any immaterial effectuating provisions may be interpreted by the Plan Proponents in a manner that is consistent with the overall purpose and intent of the Plan, all without further notice or order of the Bankruptcy Court.

## C. Reference to Hopeman or Reorganized Hopeman.

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to Hopeman or to Reorganized Hopeman shall mean Hopeman and Reorganized Hopeman, as applicable, to the extent the context requires.

## D. Reference to Monetary Figures.

All references in the Plan to dollar amounts or other monetary figures refer to the currency of the United States of America, unless otherwise expressly provided.

## ARTICLE II

## ADMINISTRATIVE EXPENSE AND PRIORITY TAX CLAIMS

**2.1. Administrative Expense Claims**.

(a) Filing Administrative Expense Claims. The holder of an Administrative Expense Claim, other than (a) a Professional Fee Claim covered by Section 2.2, (b) a liability incurred and payable in the ordinary course of business by Hopeman after the Petition Date that has been paid by Hopeman, or (c) an Administrative Expense Claim that has been Allowed and/or paid in full on or before the Effective Date, must file and serve on Reorganized Hopeman a request for payment of such Administrative Expense Claim pursuant to section 503(a) of the Bankruptcy Code so that it is received no later than the Administrative Expense Claim Bar Date. Holders required to file and serve but who fail to file and serve a request for payment of Administrative Expense Claims by the Administrative Expense Claim Bar Date shall be forever barred from asserting such Administrative Expense Claims against Hopeman, Reorganized Hopeman, and their property, and such Administrative Expense Claims shall be deemed waived and released as of the Effective Date. Notwithstanding the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no Governmental Unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

(b) Allowance of Administrative Expense Claims. An Administrative Expense Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1(a), shall become an Allowed Administrative Expense Claim if no objection to such request is filed with the Bankruptcy Court and served on Reorganized Hopeman and the requesting party on or before the thirtieth (30th) calendar day after the Administrative Expense Claim Bar Date, as the same may be modified or extended from time to time by order of the Bankruptcy Court. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by a Final Order or as such Claim is settled, compromised, or otherwise resolved pursuant to Article VII.

(c) Payment of Allowed Administrative Expense Claims. Except to the extent that an Administrative Expense Claim already has been paid during the Chapter 11 Case or the holder of an Allowed Administrative Expense Claim agrees to less favorable treatment, and except as provided for Professional Fee Claims in Section 2.2, each holder of an Allowed Administrative Expense Claim against Hopeman shall receive, in full and complete settlement, release, and discharge of such Claim, Cash, to be paid from the Net Reserve Funds, equal to the unpaid amount of such Allowed Administrative Expense Claim on the latest of (i) the Effective Date or as soon thereafter as reasonably practicable; (ii) the first Business Day that is at least thirty (30) calendar days after the date on which such Administrative Expense Claim becomes Allowed; and (iii) such other date as may be agreed to by such holder and Reorganized Hopeman or as otherwise ordered by the Bankruptcy Court; *provided*, *however*, that Allowed Administrative Expense Claims (other than a Professional Fee Claim covered by Section 2.2) representing liabilities incurred in the ordinary course of business by Hopeman, as Debtor in Possession, may be paid by Hopeman, as applicable, in the ordinary course of business, consistent with past practice and in accordance with

Case 3:26-cv-00016-DJN Document 20 Filed 03/18/26 Page 23 of 61 PageID# 7365

the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions.

**2.2. Professional Fee Claims**. Each Professional requesting compensation pursuant to section(s) 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code for services rendered in connection with the Chapter 11 Case before the Effective Date shall (a) file with the Bankruptcy Court, and serve on counsel to Reorganized Hopeman, an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case on or before the date that is forty-five (45) calendar days after the Effective Date, and (b) after notice and a hearing in accordance with the procedures established by the Bankruptcy Code and the Bankruptcy Rules and any prior orders of the Bankruptcy Court in the Chapter 11 Case, be paid by Reorganized Hopeman, in Cash from the Net Reserve Funds, in such amounts as are Allowed by the Bankruptcy Court (i) no later than thirty (30) calendar days after the date upon which the order relating to any such Allowed Claim is entered or (ii) upon such other terms as may be mutually agreed upon between the holder of such an Allowed Claim and Reorganized Hopeman or as otherwise ordered by the Bankruptcy Court.

**2.3. Priority Tax Claims**. Except to the extent that the holder of an Allowed Priority Tax Claim has been paid by Hopeman prior to the Effective Date or agrees to less favorable treatment, each holder of an Allowed Priority Tax Claim shall receive, in full and complete settlement, release, and discharge of such Claim, Cash from the Net Reserve Funds in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, on the latest of (i) the Effective Date, (ii) thirty (30) days after the date such Priority Tax Claim becomes an Allowed Claim, or as soon thereafter as is practicable, and (iii) the date such Allowed Priority Tax Claim becomes due and payable under applicable non-bankruptcy law.

## ARTICLE III

## CLASSIFICATION OF CLAIMS AND INTERESTS

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of classes of Claims against and Equity Interests in Hopeman.

**3.1. Classification**. The categories of Claims and Equity Interests listed below, other than Administrative Expense Claims (including Professional Fee Claims) and Priority Tax Claims, are classified for all purposes, including voting, confirmation, and distribution pursuant to the Plan, as follows:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | Unimpaired | No (presumed to accept) |
| Class 2 | Secured Claims | Unimpaired | No (presumed to accept) |
| Class 3 | General Unsecured Claims | Impaired | Yes |
| Class 4 | Channeled Asbestos Claims | Impaired | Yes |

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 5 | Equity Interests | Impaired | No (deemed to reject) |

## ARTICLE IV

## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

**4.1.** ***Class 1 – Priority Non-Tax Claims***.

(a) Classification. Class 1 consists of all Priority Non-Tax Claims.

(b) Treatment. Except to the extent that the holder of an Allowed Priority Non-Tax Claim agrees to less favorable treatment, each holder of an Allowed Priority Non-Tax Claim shall receive, in full and complete settlement, release, and discharge of, and in exchange for, such Allowed Priority Non-Tax Claim, Cash to be paid from the Net Reserve Funds in an amount equal to the Allowed Amount of such Claim on the later of (i) the Effective Date, and (ii) the date on which such Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter.

(c) Impairment and Voting. Class 1 is Unimpaired under the Plan. Each holder of a Priority Non-Tax Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, is not entitled to vote to accept or reject the Plan.

**4.2.** ***Class 2 - Secured Claims.***

(a) Classification. Class 2 consists of all Secured Claims.

(b) Treatment. Except to the extent that the holder of an Allowed Secured Claim agrees to less favorable treatment, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Secured Claim shall receive, at the option of Reorganized Hopeman and in full and complete settlement, release, and discharge of, and in exchange for, such Claim (i) payment in full in Cash to be paid from the Net Reserve Funds; (ii) the collateral securing such Allowed Secured Claim; or (iii) other treatment rendering such Claim Unimpaired.

(c) Impairment and Voting. Class 2 is Unimpaired under the Plan. Each holder of a Secured Claim is conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code and, accordingly, is not entitled to vote to accept or reject the Plan.

**4.3.** ***Class 3 - General Unsecured Claims.***

(a) Classification. Class 3 consists of all General Unsecured Claims.

(b) Treatment. Except to the extent that the holder of an Allowed General Unsecured Claim agrees to less favorable treatment, each holder of an Allowed General Unsecured Claim shall receive, in full and complete settlement, release, and discharge of, and in exchange for, such Allowed General Unsecured Claim, Cash in an amount equal to its Pro Rata share of the General Unsecured Recovery Pool on the later of (i) the Effective Date, and (ii) the date on which

such Claim becomes Allowed, or, in each case, as soon as reasonably practicable thereafter. Solely for purposes of calculating Distributions to holders of Allowed General Unsecured Claims, on the Effective Date, all Disputed General Unsecured Claims will be treated as though they are Allowed in the amounts asserted or as estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code, and a reserve will be set aside for such Disputed General Unsecured Claims.

(c) Impairment and Voting. Class 3 is Impaired under the Plan. Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

**4.4.** ***Class 4 – Channeled Asbestos Claims***.

(a) Classification. Class 4 consists of all Channeled Asbestos Claims.

(b) Treatment. As of the Effective Date, liability for all Channeled Asbestos Claims shall automatically, and without further act, deed, or court order, be channeled exclusively to and assumed by the Asbestos Trust in accordance with, and to the extent set forth in, Articles VIII and X hereof, the applicable Plan Documents, and the Confirmation Order. All Channeled Asbestos Claims shall be treated pursuant to the terms of Article VIII, the Asbestos Trust Agreement, and the Asbestos Trust Distribution Procedures. Except as provided in Article VIII, pursuant to section 524(g) of the Bankruptcy Code, the Plan, and the Confirmation Order, Channeled Asbestos Claims shall be subject to the Asbestos Permanent Channeling Injunction.

(c) Impairment and Voting. Class 4 is Impaired under the Plan. Each holder of an Asbestos Claim is entitled to vote to accept or reject the Plan.

**4.5.** ***Class 5 – Equity Interests.***

(a) Classification. Class 5 consists of all Equity Interests.

(b) Treatment. On the Effective Date, the Equity Interests in Hopeman shall be cancelled, annulled, and extinguished.

(c) Impairment and Voting. Class 5 is Impaired under the Plan. Holders of Interests are deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code and, accordingly, are not entitled to vote to accept or reject the Plan.

## ARTICLE V

## DISTRIBUTIONS UNDER THE PLAN ON ACCOUNT OF CLAIMS OTHER THAN CHANNELED ASBESTOS CLAIMS

**5.1.** **Distributions**. Other than with respect to payments to be made on account of Channeled Asbestos Claims and Asbestos Trust Expenses from the Asbestos Trust, Reorganized Hopeman shall make all Distributions required to be made under the Plan as provided under this Article V. All distributions to be made by the Asbestos Trust shall be made in accordance with the terms of Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

**5.2. Record Date for Holders of Claims**. Except as otherwise provided in a Final Order, the transferees of Claims that are transferred pursuant to Rule 3001 of the Bankruptcy Rules on or prior to the Distribution Record Date shall be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date.

**5.3. Postpetition Interest on Claims**. Except as otherwise provided for in this Plan (including Section 4.2), the Plan Documents, or the Confirmation Order, or any contract, instrument, release, settlement, or other agreement entered into in connection with the Plan, or unless required by applicable bankruptcy law, interest accruing on or after the Petition Date on account of any Claim shall not be paid.

**5.4. Means of Cash Payment**. At the option of Hopeman or Reorganized Hopeman, as applicable, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in any applicable agreement.

**5.5. Delivery of Distributions**. All Distributions to any holder of an Allowed Claim shall be made at the address of such holder as set forth on (i) the Schedules filed with the Bankruptcy Court, (ii) a proof of claim filed by or on behalf of such holder in the Chapter 11 Case, if the address is different from the Schedules, or (iii) if neither (i) or (ii) applies, the books and records of Hopeman, unless Hopeman or Reorganized Hopeman has been notified in writing of a change of address.

If any holder's Distribution is returned as undeliverable, then no further Distributions to such holder shall be made unless and until Reorganized Hopeman is notified of such holder's then-current address, at which time all missed Distributions shall be made to such holder without interest. A Cash Distribution that is not claimed by the expiration of six (6) months from the date that such Distribution was made – along with any further Distributions withheld under this Section 5.5 – shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and shall be returned to the Net Reserve Funds, and the Claim of any holder to such Distributions or any further Distributions shall be discharged and forever barred. Nothing contained in the Plan shall require Hopeman or Reorganized Hopeman to attempt to locate any holder of an Allowed Claim.

**5.6. Time Bar to Cash Payments**. Checks issued by Reorganized Hopeman in respect of Distributions on Allowed Claims shall be null and void if not presented for payment within ninety (90) days after the date of issuance thereof. Requests for reissuance of any check shall be made in writing to Reorganized Hopeman by the holder of the Allowed Claim to whom such check originally was issued on or before thirty (30) days after the expiration of the ninety (90) day period following the date of issuance of such check. All funds held on account of a check voided in accordance with this Section 5.6 shall be returned to the Net Reserve Funds, and the Claim of any holder to such Distributions shall be discharged and forever barred.

**5.7. Prepayment of Claims**. Except as otherwise provided in the Plan, the other Plan Documents, or the Confirmation Order, Reorganized Hopeman shall have the right to prepay, without penalty, all or any portion of an Allowed Claim at any time; provided, that any such

prepayment shall not violate or otherwise prejudice the relative priorities among the Classes of Claims.

**5.8. Minimum Distributions; Fractional Cents**. Notwithstanding any other provision in the Plan to the contrary, no Distribution will be made to any holder of a General Unsecured Claim for which the Allowed Amount is less than $50.00, and no payment of fractional cents will be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made will reflect a rounding of such fraction to the nearest whole penny (up or down), with fractions of more than half a penny being rounded up and fractions of half a penny or less being rounded down.

**5.9. Setoff and Recoupment**. Hopeman or Reorganized Hopeman (or the Asbestos Trust to the extent it pertains to a Channeled Asbestos Claim) may, but shall not be required to, set off or recoup against any Claim (for purposes of determining the Allowed Amount of such Claim on which Distribution shall be made), any claims of any nature whatsoever that Hopeman or Reorganized Hopeman may have against the holder of such Claim, and the failure to do so shall not constitute a waiver or release by Hopeman or Reorganized Hopeman of any such Claims that Hopeman may have against the holder of such Claim.

## ARTICLE VI

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1. General Treatment**. As of the Effective Date and except as otherwise provided in the Plan (including with respect to Section 6.2 and Section 8.3) or in any contract, instrument, release or other agreement or document entered into in connection with the Plan, all Executory Contracts to which Hopeman is a party are hereby rejected, except for any Executory Contract that (a) has previously been rejected pursuant to a Final Order of the Bankruptcy Court, (b) is the subject of a separate rejection motion filed by Hopeman under section 365 of the Bankruptcy Code before the Confirmation Date, (c) is an Asbestos Insurance Policy or Asbestos CIP Agreement, or (d) is a Non-Asbestos Insurance Policy. The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of the contracts and leases rejected hereby.

**6.2. Asbestos Insurance Agreements**. The Plan Proponents do not believe that any of the Asbestos Insurance Policies or the Asbestos CIP Agreements constitute an Executory Contract. Nevertheless, for the avoidance of doubt, except as expressly provided in Section 8.18 and Section 11.1(g) herein, none of the Asbestos Insurance Policies or the Asbestos CIP Agreements is being rejected, altered, or otherwise modified pursuant to this Plan, the other Plan Documents, or the Confirmation Order, or any findings of fact or conclusions of law with respect to confirmation of the Plan and all parties' respective rights, duties, defenses, obligations, and liabilities thereunder are hereby preserved, except as such rights, duties, defenses, obligations, and liabilities may be affected by Section 8.18 or Section 11.1(g) or to the extent of an Asbestos Insurance Policy or Asbestos CIP Agreement that is the subject of and only to the extent contemplated by and provided for in an Asbestos Insurance Settlement and only to the extent approved by an order of the Bankruptcy Court or the District Court.

To the extent any of the Asbestos Insurance Policies or Asbestos CIP Agreements is an Executory Contract, then, notwithstanding anything contained in the Plan to the contrary, the Plan will constitute a motion to assume any such Asbestos Insurance Policy or Asbestos CIP Agreement; *provided, however*, notwithstanding anything to the contrary herein, or in the Plan Documents or the Confirmation Order, solely to the extent the Travelers 2005 Agreement constitutes an Executory Contract, the Plan shall constitute a motion to reject the Travelers 2005 Agreement and the Travelers 2005 Agreement shall be rejected effective as of the Effective Date. Subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of: (i) such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption is in the best interest of Hopeman and its Estate; and (ii) solely to the extent the Travelers 2005 Agreement constitutes an Executory Contract, approval of such rejection pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that such rejection is in the best interest of Hopeman and its Estate. Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of Hopeman existing as of the Confirmation Date with respect to each such Asbestos Insurance Policy or Asbestos CIP Agreement.

Furthermore, for purposes of clarity: (i) the Plan Proponents do not believe that Hopeman has, nor do the Plan Proponents assert that Hopeman is entitled to any, rights or coverage in or under: (a) any Asbestos Insurance Policies issued by Liberty Mutual Insurance Company, or (b) under the Travelers 2005 Agreement Asbestos Insurance Policies; and (ii) while the Plan Proponents also do not believe that any such agreements constitute Executory Contracts, Hopeman is not assuming any Designated Insurance Agreement.

In addition, nothing in this Plan, any Plan Supplement, or any other document related to or made as an exhibit to the Plan is intended to or shall limit the right of any Asbestos Insurer or Non-Asbestos Insurer to assert any insurance coverage defense available under the applicable Asbestos Insurance Policy to any Channeled Asbestos Claim, or the applicable Non-Asbestos Insurance Policy to any non-Channeled Asbestos Claim, as appropriate, asserted against Hopeman or administered by the Asbestos Trust.

**6.3. Bar to Rejection Damages**. In the event that the rejection of an Executory Contract by Hopeman or Reorganized Hopeman pursuant to the Plan results in damages to the nondebtor party or parties to such Executory Contract, a claim for such damages shall be forever barred and shall not be enforceable against Hopeman, Reorganized Hopeman or any of their respective properties or interests in property, and the nondebtor party or parties to such Executory Contract shall be barred from receiving any Distribution under the Plan on account of such Claim, unless a Proof of Claim with respect to such damages is filed with the Bankruptcy Court and served upon counsel for Hopeman or Reorganized Hopeman, as applicable, on or before (a) if such Executory Contract is rejected pursuant to Section 6.1 above, thirty (30) days after entry of the Confirmation Order; or (b) if such Executory Contract is rejected pursuant to a Final Order of the Bankruptcy Court granting a motion filed by Hopeman to reject such Executory Contract, thirty (30) days after entry of such order. The notice of the Effective Date to be delivered pursuant to Bankruptcy Rules 2002 and 3020(c) shall set forth the bar date for filing rejection damages claims under Section 6.2 of the Plan and constitute notice thereof.

Case 3:24-cv-00016-DJN Document 20-8 Filed 03/18/26 Page 16 of 61 PageID# 7371

## ARTICLE VII

## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS OTHER THAN CHANNELED ASBESTOS CLAIMS AND PROFESSIONAL FEE CLAIMS

**7.1. Disputed Claims**. All Disputed Claims against Hopeman, other than Channeled Asbestos Claims and Professional Fee Claims, shall be subject to the provisions of this Article VII.

**7.2. Objection to Claims**. Except as otherwise provided in this Plan (including Section 4.2 and Section 4.3), Hopeman or Reorganized Hopeman, as the case may be, shall be entitled to file objections to Claims that have been brought in the Bankruptcy Court or should properly have been brought in the Bankruptcy Court but were brought in other forums (other than Channeled Asbestos Claims), on or before the date that is one hundred and twenty (120) days after the Effective Date (unless such day is not a Business Day, in which case such deadline shall be the next Business Day thereafter), as the same may be extended from time to time by the Bankruptcy Court. In addition, Hopeman or Reorganized Hopeman, as the case may be, may before the expiration of such period request that the Bankruptcy Court estimate any contingent or unliquidated Claim (not including any Channeled Asbestos Claim) for any reason pursuant to section 502(c) of the Bankruptcy Code, regardless of whether Hopeman previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate such Claim at any time, including during the pendency of litigation concerning any objection to any Claim or of any appeal relating thereto. Hopeman and Reorganized Hopeman shall be authorized to settle, compromise, withdraw or litigate to judgment such objections without further approval of the Bankruptcy Court.

**7.3. Payments and Distributions with Respect to Disputed Claims**. Notwithstanding any other provision hereof, no payments or Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Final Order and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THE PLAN

**8.1. Generally**. On and after the Confirmation Date, the Plan Proponents shall be empowered and authorized to take or cause to be taken, prior to the Effective Date, all actions necessary to enable them to implement the provisions of the Plan, including the creation of the Asbestos Trust and the preparations for the transfer of the Asbestos Trust Assets to the Asbestos Trust. On and after the Effective Date, Reorganized Hopeman shall be governed pursuant to the Amended Certificate of Incorporation and Amended By-Laws.

**8.2. Transactions on the Effective Date**.

(a) The following shall be deemed for all purposes to have occurred simultaneously on the Effective Date:

(i) the establishment of the Asbestos Trust;

(ii) the making of the Asbestos Trust Contribution, notwithstanding that contribution of the Excess Net Reserve Funds may occur after the Effective Date; and

(iii) the vesting in the Asbestos Trust of the Asbestos Trust Assets, as more fully described in, and subject to the conditions set forth in, Section 8.3 below.

(b) Also on the Effective Date, but after the occurrence of the events in each of Section 8.2(a)(i) through (a)(iii) hereof, the following events shall be deemed for all purposes to have occurred simultaneously:

(i) the effectiveness of the Amended Certificate of Incorporation and Amended By-Laws of Reorganized Hopeman;

(ii) the appointment of the individual(s) who will act as the officers and as the director of Reorganized Hopeman, as identified in a notice to be filed jointly by the Committee and the Future Claimants' Representative no later than two (2) days prior to the deadline established to accept or reject the Plan; and

(iii) any Distributions required to be made on the Effective Date (or as soon thereafter as is reasonably practicable).

(c) Unless the Plan or the Confirmation Order provide otherwise, actions required to be taken on the Effective Date or as soon thereafter as is reasonably practicable shall be deemed to have been made on the Effective Date.

**8.3. The Asbestos Trust**

(a) Creation of the Asbestos Trust. On the Effective Date, the Asbestos Trust shall be created in accordance with the Plan Documents, the Asbestos Trust Documents, and section 524(g) of the Bankruptcy Code. Subject to the provisions of the Plan, and in consideration of the transfer of the Asbestos Trust Assets to the Asbestos Trust, the Asbestos Trust shall assume all liabilities and responsibility for all Channeled Asbestos Claims, and, among other things, to: (1) direct the processing, liquidation, and payment of all compensable Channeled Asbestos Claims in accordance with this Plan, the Asbestos Trust Documents, and the Confirmation Order; (2) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Channeled Asbestos Claims; and (3) qualify at all times as a qualified settlement fund. The Asbestos Trust shall use the Asbestos Trust's assets and income to resolve Channeled Asbestos Claims in accordance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures in such a way that holders of Channeled Asbestos Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims, and shall otherwise comply in all respects with the requirements of a trust set forth in section 524(g)(2)(B) of the Bankruptcy Code. On the Effective Date, all right, title, and interest in and to the Asbestos Trust Assets, and any proceeds thereof, will be transferred to, and indefeasibly vested in, the Asbestos Trust, free and clear of all Claims, Demands, Equity Interests, Encumbrances, and other

Case 3:24-32428 ... Document ... Filed ... Page ... PageID# 7373

interests of any Entity, without any further action of the Bankruptcy Court or any Entity, but subject to Section 8.5 hereof and the remaining provisions of this Section 8.3.

(b) Transfer of the Asbestos Insurance Rights. On the Effective Date, by virtue of Confirmation, without further notice, action, or deed, and subject to Section 6.2 hereof, the Asbestos Insurance Rights shall be automatically transferred to, and indefeasibly vested in, the Asbestos Trust, and the Asbestos Trust shall thereby become the estate representative pursuant to sections 1123(a)(5) and 1123(b)(3)(B) of the Bankruptcy Code, with the exclusive right to enforce any and all of the Asbestos Insurance Rights against any Entity, subject to the provisions of Section 8.13 and Section 8.15 hereof, and the Proceeds of the recoveries of any such Asbestos Insurance Rights shall be the property of, and shall be deposited in, the Asbestos Trust. The Asbestos Insurance Rights shall be indefeasibly vested in the Asbestos Trust subject to applicable terms and conditions but otherwise free and clear of all Claims, Demands, Equity Interests, Encumbrances, and other interests of any Entity.

(c) Authority of the Asbestos Trust. As of the Effective Date, without any further action of the Bankruptcy Court or any Entity, except as otherwise expressly set forth in the Plan including, without limitation, the rights reserved to HII under Section 8.15, the Asbestos Trust shall be empowered to initiate, prosecute, enforce, sue on, defend, settle, compromise, and resolve (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits and proceedings, whether in law or in equity, whether known or unknown, related to or arising from any asset, liability, or responsibility of the Asbestos Trust, including any actions arising from or related to the Asbestos Insurance Rights, in any court of competent jurisdiction consistent with applicable law.

(d) Appointment of Asbestos Trustees. On the Confirmation Date, the Bankruptcy Court shall appoint an individual designated by the Committee and the Future Claimants' Representative to serve as the initial Asbestos Trustees. The designated individual will be identified in the Asbestos Trust Agreement and appointed pursuant to the Confirmation Order. Such appointment shall be effective as of the Effective Date. The individual to serve as the initial Asbestos Trustees will be identified in the Plan Supplement. All subsequent Asbestos Trustees shall be appointed in accordance with the terms of the Asbestos Trust Agreement. For purposes of performing the duties and fulfilling the obligations under the Asbestos Trust Agreement and the Plan, the Asbestos Trustees shall be deemed to be a party in interest within the meaning of section 1109(b) of the Bankruptcy Code.

(e) Appointment of Delaware Trustee. First State Trust Company has been selected by agreement of the Committee and the Future Claimants' Representative to serve as the initial Delaware Trustee and will be identified in the Asbestos Trust Agreement and appointed pursuant to the Confirmation Order. All subsequent Delaware Trustees shall be appointed in accordance with the terms of the Asbestos Trust Agreement.

(f) Appointment of Post-Effective Date Future Claimants' Representative. On the Effective Date, the individual to be identified in the Plan Supplement shall be appointed, pursuant to this Plan, the Confirmation Order, and the Asbestos Trust Agreement, to serve as the Future Claimants' Representative on and after the Effective Date. Such Future Claimants' Representative shall have the functions, duties, and rights provided in, and shall serve in

accordance with, the Asbestos Trust Agreement. In addition to the foregoing, such Future Claimants' Representative also may, at her option, participate in any: (1) appeal of the Confirmation Order; (2) hearing on a Professional Fee Claim; and (3) adversary proceeding pending on the Effective Date to which the Future Claimants' Representative was a party. Successor Future Claimants' Representatives will be appointed as provided in the Asbestos Trust Agreement.

(g) Appointment of Asbestos Trust Advisory Committee. Not later than ten (10) calendar days prior to the Confirmation Hearing, the Committee shall nominate six (6) individuals to serve as the initial members of the Asbestos Trust Advisory Committee. The Confirmation Order shall constitute an order of the Bankruptcy Court appointing the initial members of the Asbestos Trust Advisory Committee. The Asbestos Trust Advisory Committee shall have the functions, duties, and rights provided in, and shall serve in accordance with, the Asbestos Trust Agreement. Successor members of the Asbestos Trust Advisory Committee will be appointed as provided in the Asbestos Trust Agreement.

(h) Transfer of Claims and Demands to the Asbestos Trust. ***On the Effective Date, in consideration for the property transferred to the Asbestos Trust, and except as provided in Section 8.12, Section 8.13, and Section 8.15 hereof, all Channeled Asbestos Claims shall be transferred and channeled to, and assumed by, the Asbestos Trust pursuant to the Asbestos Permanent Channeling Injunction, and shall be resolved, liquidated, and (if eligible for payment) paid in accordance with the Asbestos Trust Agreement, the Asbestos Trust Distribution Procedures, and any other Asbestos Trust Document***. The Asbestos Trust shall have no liability for any Claims other than Channeled Asbestos Claims and Asbestos Trust Expenses, and no Claims other than Channeled Asbestos Claims and Asbestos Trust Expenses shall be transferred and channeled to, or assumed by, the Asbestos Trust. Notwithstanding the Asbestos Trust's assumption of liability and responsibility for Channeled Asbestos Claims, such assumption shall not itself operate or be construed as a release, accord and satisfaction, mutual rescission, or novation of Hopeman's obligations on account of such Claims for purposes of any Asbestos Insurance Rights solely to the extent of actions or suits against Reorganized Hopeman directly in accordance with Section 8.12 hereof (subject, however, to the discharge of any "personal liability" of Hopeman as that term is used in section 524(a) of the Bankruptcy Code and as provided in Article X hereof).

(i) Transfer of Rights and Defenses Related to Channeled Asbestos Claims. On the Effective Date, all claims, defenses, rights and Causes of Action of Hopeman arising from or related to Channeled Asbestos Claims shall be transferred and assigned to the Asbestos Trust. In accordance with section 1123(b) of the Bankruptcy Code, the Asbestos Trust shall retain and may enforce such claims, defenses, rights, and Causes of Action relating to Channeled Asbestos Claims in any court of competent jurisdiction against any Entity other than a Protected Party, and shall retain and may enforce all defenses and counterclaims to all Asbestos Claims or Demands asserted against the Asbestos Trust, including setoff, recoupment, and any rights under section 502(d) of the Bankruptcy Code. The Asbestos Trust shall be deemed to be the appointed representative of Hopeman and Reorganized Hopeman, and may, pursue, litigate, compromise, and settle any rights, claims, or Causes of Action transferred to it, as appropriate.

(j) Release. As a condition to making any payment to a Channeled Asbestos Claimant, the Asbestos Trust shall obtain from that holder a release in the form of the Asbestos Personal Injury Claimant Release.

(k) Consideration for Asbestos Permanent Channeling Injunction. The assignment, transfer, and conveyance of the Asbestos Trust Assets to the Asbestos Trust on the Effective Date supports the imposition of the Asbestos Permanent Channeling Injunction in favor of all Protected Parties as of the Effective Date.

(l) Books and Records. On the Effective Date, Hopeman shall transfer to Reorganized Hopeman all of Hopeman's books and records (including electronic records) necessary for the Asbestos Trust to investigate and resolve Channeled Asbestos Claims in accordance with Section 8.3 and Section 8.16 of this Plan, the Asbestos Trust Agreement and Asbestos Trust Distribution Procedures, including the books and records presently stored in Hopeman's warehouse in Waynesboro, Virginia, and in or in storage near the offices of Hopeman's prepetition claims administrator Special Claim Services, Inc. Notwithstanding anything to the contrary herein, holders of Asbestos Personal Injury Claims may pursue and obtain information stored in Hopeman's books and records (including electronic records) through discovery to the full extent permitted by applicable law. For the avoidance of doubt, privileges belonging to Hopeman on the Petition Date in such books and records shall belong to the Reorganized Hopeman as of the Effective Date, and the Asbestos Trust's access to such books and records, which is allowed only for the purpose of evaluating or processing Uninsured Asbestos Claims, shall not result in the destruction or waiver of any applicable privileges pertaining to such books and records.

(m) Institution and Maintenance of Legal and Other Proceedings. From and after the Effective Date, the Asbestos Trust shall be empowered and entitled, in its sole and absolute discretion and at its own expense, to pursue, compromise, or settle all legal actions and other proceedings related to any asset, liability, or responsibility of the Asbestos Trust that is not released pursuant to the Plan.

(n) Asbestos Trust Expenses. The Asbestos Trust shall pay all Asbestos Trust Expenses from the Asbestos Trust Assets. The Plan Proponents, Hopeman's Estate, Reorganized Hopeman, the Protected Parties, and any of them, shall not have any obligation to pay any Asbestos Trust Expenses or any other liabilities of the Asbestos Trust. The Asbestos Trust shall promptly pay all Asbestos Trust Expenses incurred by Reorganized Hopeman for any liabilities, costs, or expenses as a result of taking any action on behalf of, and at the direction of, the Asbestos Trust.

(o) Indemnification. The Asbestos Trust shall, pursuant to the terms of the Asbestos Trust Agreement, indemnify and hold harmless the Protected Parties for any liability or alleged liability arising out of, or resulting from, or attributable to, a Channeled Asbestos Claim, including fines and penalties resulting from the Asbestos Trust's failure to comply with Section 8.14 of the Plan or the Asbestos Trust Agreement. Indemnification claims arising under this Section 8.3(o) will not be subject to the Asbestos Trust Distribution Procedures.

(p) Investment Policy. Pursuant to the Asbestos Trust Agreement, all monies held in the Asbestos Trust shall be invested, subject to the investment limitations and provisions

enumerated in the Asbestos Trust Agreement and shall not be limited to the types of investments described in section 345 of the Bankruptcy Code.

(q) Excess Asbestos Trust Assets. To the extent there are any Asbestos Trust Assets remaining at such time as the Asbestos Trust is dissolved, such excess Asbestos Trust Assets shall be transferred to a charity or charities in which the Asbestos Trustees have no financial interest or other connection, for such charitable purposes as the Asbestos Trustees, in their reasonable discretion, shall determine, provided that, if practicable, the charity or charities to which such excess Asbestos Trust Assets are transferred shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos-related disorders.

(r) Dissolution of Asbestos Trust. Upon dissolution of the Asbestos Trust: (1) the Asbestos Trustees, members of the Asbestos Trust Advisory Committee and the Future Claimants' Representative shall be released and discharged from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Chapter 11 Case; and (2) the Asbestos Trust Advisory Committee shall be dissolved.

**8.4. Amended Certificate of Incorporation and By-Laws**. The Amended Certificate of Incorporation and Amended By-Laws shall contain such provisions as are necessary to satisfy the provisions of the Plan and, to the extent necessary, to prohibit the issuance of nonvoting equity securities as required by section 1123(a)(6) of the Bankruptcy Code. Notwithstanding the foregoing, the Amended Certificate of Incorporation and Amended By-Laws may be amended after the Effective Date as permitted by applicable law.

**8.5. Net Reserve Funds**. No later than the Effective Date, Hopeman or Reorganized Hopeman, as applicable, shall either establish a bank account or utilize an existing bank account of Hopeman for the purpose of holding only the Net Reserve Funds. Hopeman, Reorganized Hopeman, or their respective designees, as applicable, shall make any and all disbursements from the Net Reserve Funds that are provided in the Plan. The Net Reserve Funds shall be used for the sole purpose of paying or making Distributions in accordance with the Plan. Any Excess Net Reserve Funds shall be contributed by Reorganized Hopeman to the Asbestos Trust, and that contribution shall be part of the Asbestos Trust Contribution.

**8.6. Reorganized Hopeman Common Stock**. On the Effective Date, all the existing Equity Interests in Hopeman shall be cancelled, annulled, and extinguished, and 100% of the Reorganized Hopeman Common Stock shall be authorized and issued to the Asbestos Trust.

**8.7. Corporate Governance of Reorganized Hopeman**. On the Effective Date, (a) the current officers and directors of Hopeman shall be deemed to resign from their respective positions by operation of the Plan, and (b) the individual(s) identified in a notice to be filed jointly by the Committee and the Future Claimants' Representative no later than two (2) days prior to the deadline established to accept or reject the Plan shall be appointed to serve as the officers and as the director of Reorganized Hopeman.

**8.8. Operations of Hopeman Between Confirmation and the Effective Date**. Hopeman shall continue to operate as a debtor and Debtor-in-Possession during the period from the Confirmation Date through and until the Effective Date. After the Effective Date, Reorganized

Hopeman shall conduct the business for which Section 8.11 of the Plan provides, including fully satisfying (as and when due) all franchise taxes and other expenditures that are necessary to maintain its corporate existence in good standing under the laws of the state of its formation or that otherwise are necessary for Reorganized Hopeman to conduct the business for which Section 8.11 provides.

**8.9. Corporate Action**. All matters provided for under the Plan involving the corporate structure of Hopeman or Reorganized Hopeman, or any corporate action to be taken by, or required of Hopeman or Reorganized Hopeman, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects (and, if taken prior to the Effective Date, shall be deemed ratified in all respects on the Effective Date), without any requirement for further action by the stockholders or directors of any such entities.

**8.10. Restructuring Transactions**. On or after the Confirmation Date, Hopeman or Reorganized Hopeman may take such actions as it determines to be necessary or appropriate to effectuate, implement, and consummate the Restructuring Transactions set forth on Exhibit F.

**8.11. Continued Corporate Existence**. Except as otherwise provided herein (and subject to the Restructuring Transactions), Hopeman will, as a reorganized debtor, continue to exist after the Effective Date as a separate corporate or other legal Entity, with all powers of a corporation or other legal Entity under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution or otherwise) under applicable state law. On and after the Effective Date, Reorganized Hopeman may operate its business and may use, acquire, and dispose of property and compromise or settle any Claims without supervision or approval of the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or Confirmation Order.

**8.12. Actions Against Reorganized Hopeman or Wayne to Obtain Benefits of Asbestos Insurance Coverage**.

(a) Except as otherwise permitted under Section 8.16, on and after the Effective Date, a Channeled Asbestos Claimant shall have the right to initiate, commence, continue, or prosecute an action against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust), and, where permitted by applicable nonbankruptcy law, any Non-Settling Asbestos Insurer for Wayne, in a court of competent jurisdiction to obtain the benefit of Asbestos Insurance Coverage.

(b) If a Channeled Asbestos Claimant commences such an action on account of its Channeled Asbestos Claim, the complaint shall name Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or any Non-Settling Asbestos Insurer for Wayne as a defendant and shall be deemed by operation of law to be an action against Reorganized Hopeman or any Non-Settling Asbestos Insurer for Wayne, as applicable. Such an action may be filed in any court where Hopeman would have been subject to *in personam* jurisdiction with respect to the Channeled Asbestos Claimant's action had it been filed against Hopeman before the Petition Date or any other court of competent jurisdiction. Any such action shall be served on the Asbestos Trust, which shall provide notice of such action, as appropriate, to all Non-Settling Asbestos

Insurers. Notwithstanding the foregoing, Reorganized Hopeman, the Asbestos Trust, and Wayne shall have no obligation to answer, appear, or otherwise participate in the action in any respect other than as set forth in this Plan and as may be necessary to comply with applicable Asbestos Insurance Cooperation Obligations.

(c) Any liability of Reorganized Hopeman or Wayne to any Entity, including any Channeled Asbestos Claimant or Asbestos Insurer, that is based on, arises from, or is attributable to any action commenced under this Section 8.12 shall be enforceable only against the Asbestos Insurance Coverage provided by the Non-Settling Asbestos Insurers and not against any other asset, including any other Asbestos Insurance Right, of the Asbestos Trust or Reorganized Hopeman.

**8.13. Actions Against Non-Settling Asbestos Insurers to Obtain Benefits of Asbestos Insurance Coverage**.

(a) Except as otherwise permitted under this Section 8.13 or in Section 8.15, the Asbestos Trust shall have the exclusive right to pursue, monetize, settle, or otherwise obtain the benefit of the Asbestos Insurance Rights, including with respect to any unpaid insurance Proceeds applicable to a judgment or settlement obtained or entered into by a Channeled Asbestos Claimant in accordance with Section 8.12 hereof.

(b) If a Channeled Asbestos Claimant has entered into an enforceable settlement agreement with a Non-Settling Asbestos Insurer pertaining to his Channeled Asbestos Claim and such Non-Settling Asbestos Insurer has not timely paid or has refused to pay the amount provided in such settlement, such Channeled Asbestos Claimant may commence a breach-of-contract action or other form of collection action against such Non-Settling Asbestos Insurer to recover the settlement payment owed.

(c) Any Channeled Asbestos Claimant who (1) has obtained a judgment against Reorganized Hopeman or Wayne in accordance with Section 8.12 hereof, or (2) has the right under applicable nonbankruptcy law to name, join, or substitute as a defendant an Asbestos Insurer, may, to obtain the benefits of Asbestos Insurance Coverage, commence a judgment-enforcement action or a direct action against the relevant Non-Settling Asbestos Insurer ("**Insurance Policy Action**") in accordance with the terms of this Section 8.13, subject to the following conditions:

(i) If any Non-Settling Asbestos Insurer against whom an Insurance Policy Action is brought asserts as a defense that it would have a claim against one or more Settled Asbestos Insurers with respect to the Channeled Asbestos Claimant's claim, including any claim for contribution, reimbursement, indemnity or subrogation, or bad faith refusal to settle related to any Asbestos Insurance Policy, that it could have asserted but for any of the Injunctions ("**Contribution Claim**"), the liability, if any, of the Non-Settling Asbestos Insurer to the Channeled Asbestos Claimant shall be reduced dollar-for-dollar by the amount, if any, of any Contribution Claim in accordance with this Section 8.13.

(ii) In determining the amount of any Contribution Claim that operates to reduce the liability of a Non-Settling Asbestos Insurer in any Insurance Policy Action, the Channeled Asbestos Claimant may assert the legal or equitable rights or defenses, if any, of the

Settled Asbestos Insurers with respect to such Contribution Claims, and for purposes of this Section 8.13(c)(ii), all Settled Asbestos Insurers, in exchange for their status as a Protected Party and for receiving the benefits of the Injunctions, shall be deemed to have transferred or assigned such legal or equitable rights or defenses to Channeled Asbestos Claimants; *provided* that the Channeled Asbestos Claimant shall not be permitted to argue that any Contribution Claims are not properly asserted against the Channeled Asbestos Claimant or that the Injunctions bar or affect in any way such Contribution Claims in connection with the Channeled Asbestos Claimant's claim against the Non-Settling Asbestos Insurer.

(iii) If a court reduces the amount of liability of a Non-Settling Asbestos Insurer in an Insurance Policy Action based on the share attributable to a Settled Asbestos Insurer consistent with this Section 8.13, the Channeled Asbestos Claimant whose judgment has been reduced may seek payment from the Asbestos Trust for all or a portion of the amount of the judgment reduction attributable to the Settled Asbestos Insurer's share, but only as permitted by and in accordance with the Asbestos Trust Distribution Procedures.

(iv) If the Asbestos Trust enters into an Asbestos Insurance Settlement with an Asbestos Insurer that is a party to a pending Insurance Policy Action, and if such Asbestos Insurance Settlement is approved by the Bankruptcy Court, the Channeled Asbestos Claimant pursuing such Insurance Policy Action shall (I) be deemed to release any rights transferred to it via the Trust Transfer, without further notice or action by any Entity, and (II) terminate its Insurance Policy Action with respect to that Asbestos Insurer. The Channeled Asbestos Claimant shall have the right to submit an Uninsured Asbestos Claim to the Asbestos Trust for payment in accordance with, and as permitted by, the Asbestos Trust Distribution Procedures, as set forth in Section 8.16 hereof.

(v) The Asbestos Trust may seek to intervene in any Insurance Policy Action at any time.

(d) In addition to the rights and remedies set forth in this Section 8.13, on and after the Effective Date, Channeled Asbestos Claimants may, only to the extent permitted or provided under applicable nonbankruptcy law, bring such Insurance Policy Actions against a Non-Settling Asbestos Insurer of Hopeman or Wayne with respect to potential liability of any Designated Person, subject to the terms and conditions set forth in Section 8.13(c). For the avoidance of doubt, no Designated Person shall be named as a defendant in any such Insurance Policy Actions.

(e) If a Channeled Asbestos Claimant intends to pursue an Extracontractual Claim against a Non-Settling Asbestos Insurer, the Channeled Asbestos Claimant shall send written notice to the Asbestos Trust, requesting the Asbestos Trust's leave to pursue such Extracontractual Claim. Within fourteen (14) calendar days after receiving the Channeled Asbestos Claimant's request, the Asbestos Trust shall respond in writing that it is either granting or denying the Channeled Asbestos Claimant's request.

(i) The Asbestos Trust's notice to the Channeled Asbestos Claimant of its decision to grant the Channeled Asbestos Claimant's request to pursue an Extracontractual Claim shall legally operate as, or shall effect, to the extent

permitted or authorized by applicable nonbankruptcy law and without further notice or action by any Entity, a transfer to the Channeled Asbestos Claimant of the Asbestos Trust's rights to pursue such Extracontractual Claim ("**Trust Transfer**"). The Channeled Asbestos Claimant shall thereupon have standing and authority to pursue, settle, or resolve such Extracontractual Claim within his or her absolute discretion, subject to the terms set forth in this Section 8.13.

(ii) The Asbestos Trust may deny a Channeled Asbestos Claimant's request for leave to pursue an Extracontractual Claim if (I) the Asbestos Trust has determined that it is not able or permitted under applicable nonbankruptcy law to transfer or assign the Extracontractual Claim to the requesting Channeled Asbestos Claimant; (II) the Asbestos Trust intends, within ninety (90) calendar days after receiving the Channeled Asbestos Claimant's request, to commence litigation (or arbitration, to the extent required by the applicable Asbestos Insurance Policy or Asbestos CIP Agreement) against the relevant Non-Settling Asbestos Insurer with respect to the Channeled Asbestos Claimant's claim; or (III) the Asbestos Trust has already commenced such litigation or arbitration, which is pending or has been resolved. Such litigation commenced by the Asbestos Trust may include, or pertain to, multiple other Channeled Asbestos Claims or seek a declaration of rights generally with respect to the Non-Settling Asbestos Insurers' obligations in connection with Channeled Asbestos Claims.

**8.14. No Actions Against Released Parties**. In any action pursued in accordance with Section 8.12 or Section 8.13 hereof, Channeled Asbestos Claimants shall not name any Released Party as a defendant, or promptly shall dismiss from such action any Released Party previously named as a defendant. The Asbestos Trust shall indemnify any Released Party to the extent such Released Party is named as a defendant in such an action, and the Trust shall take all steps reasonably necessary to have any Released Party named in such an action dismissed from such action, including seeking relief from the Bankruptcy Court to enforce the terms of the Plan.

**8.15. Special Provision Pertaining to HII**. Notwithstanding any provision of this Plan or any other Plan Document to the contrary, on and after the Effective Date, HII may, (a) to the extent it is the holder of one or more Asbestos Indirect Claims and (b) only to the extent permitted or provided under applicable nonbankruptcy law, file claims, crossclaims, or third-party demands in a court of competent jurisdiction (including in any state court lawsuits) against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne, or pursue direct actions against any Non-Settling Asbestos Insurer of Hopeman or Wayne, including to bring an action against a Non-Settling Asbestos Insurer of Hopeman or Wayne with respect to the potential liability of any Designated Person. For the avoidance of doubt, such Designated Persons will not be named as defendants in any such actions. Reorganized Hopeman, the Asbestos Trust, and Wayne shall have no obligation to answer, reply, appear, or otherwise participate in any action in which HII has filed a claim, crossclaim, third-party demand, or in any such direct action, other than as necessary to maintain coverage under the Asbestos Insurance Policies. Any judgment that may be obtained in connection with such a claim, crossclaim, third-party demand, or direct action cannot be enforced against the assets of Reorganized Hopeman or the Asbestos Trust, other than from the Asbestos Insurance Coverage. To the extent Hopeman's Asbestos Insurance Rights become subject to Asbestos Insurance Settlements and such Asbestos Insurance Rights are

liquidated by the Trust, HII may submit Asbestos Indirect Claims to the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures. For the avoidance of doubt, the foregoing in no way limits HII's ability to seek payment or any other form of relief that may be made available according to the provisions contained within the Asbestos Trust Distribution Procedures, this Plan, or any other Plan Document. For the further avoidance of doubt, HII need not execute an Asbestos Personal Injury Claimant Release to obtain the benefits of this Section 8.15. Notwithstanding any provision of the Asbestos Trust Distribution Procedures, this Plan or any other Plan Document to the contrary, the rights contained within this Section 8.15 may not be impaired, impeded, abridged, or otherwise modified at any time (whether before or after entry of the Confirmation Order) without the prior written consent of Huntington Ingalls Industries, Inc.; *provided, however*, that the foregoing shall not be construed to vest HII with consent or veto rights as to a proposed Asbestos Insurance Settlement described in Section 8.17, or to override, expand, or otherwise modify Huntington Ingalls Industries, Inc.'s consultation rights granted under Section 8.17.

**8.16. Payments or Distributions from the Asbestos Trust**. ***The sole and exclusive source of payment or recovery of a Channeled Asbestos Claimant on account of his Channeled Asbestos Claim shall be the Asbestos Insurance Coverage applicable to such Channeled Asbestos Claim, as provided in Section 8.12, Section 8.13, and Section 8.15 above, unless the Channeled Asbestos Claim (a) is an Uninsured Asbestos Claim, or (b) becomes an Uninsured Asbestos Claim before the Channeled Asbestos Claimant receives payment in full of any judgment obtained against Reorganized Hopeman or the Non-Settling Asbestos Insurer, or settlement reached with a Non-Settling Asbestos Insurer, in accordance with Section 8.12, Section 8.13, or Section 8.15 above***. A Channeled Asbestos Claim shall become an Uninsured Asbestos Claim when (i) the Asbestos Trust has settled, in accordance with an Asbestos Insurance Settlement, all rights to the Asbestos Insurance Coverage applicable to the Channeled Asbestos Claim, or (ii) any Asbestos Insurance Coverage that otherwise may be applicable to such Channeled Asbestos Claim becomes unavailable due to exhaustion of the relevant Asbestos Insurance Coverage or due to a Final Order ruling on a coverage issue or defense, in which event such Channeled Asbestos Claimant may seek payment or distribution on account of his Channeled Asbestos Claim from the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures. Any treatment of a Channeled Asbestos Claim that is partially an Insured Asbestos Claim and partially an Uninsured Asbestos Claim shall be set forth in the Asbestos Trust Distribution Procedures. Notwithstanding any provision in this Plan or any other Plan Document to the contrary, a Channeled Asbestos Claimant shall not be entitled to receive a payment or distribution on account of his Channeled Asbestos Claim from the Asbestos Trust unless and until his Channeled Asbestos Claim is eligible for payment or distribution from the Asbestos Trust under the Asbestos Trust Distribution Procedures.

**8.17. Settlements with Non-Settling Asbestos Insurers After the Effective Date**. The Asbestos Trust shall have authority to enter into an Asbestos Insurance Settlement with any Asbestos Insurer on or after the Effective Date, but such Asbestos Insurance Settlement shall not be valid or enforceable unless and until (a) the Asbestos Trust Advisory Committee and the Future Claimants' Representative have consented to such Asbestos Insurance Settlement and determined in writing that such Asbestos Insurance Settlement is fair, reasonable, and sufficiently comprehensive to warrant that such Asbestos Insurer receive the protections of a Settled Asbestos Insurer under the Asbestos Permanent Channeling Injunction, any other applicable Plan Injunction,

and section 524(g) of the Bankruptcy Code; (b) the Asbestos Trust has consulted with Huntington Ingalls Industries, Inc. about the terms of such Asbestos Insurance Settlement prior to its submission to the Bankruptcy Court for approval, as provided herein; and (c) the Bankruptcy Court approves such Asbestos Insurance Settlement after notice to all parties directly affected (including, for the avoidance of doubt, all Non-Settling Asbestos Insurers) by such Asbestos Insurance Settlement and a hearing is held. To the extent necessary, the Asbestos Trust shall be allowed to seek to reopen the Chapter 11 Case to obtain the Bankruptcy Court's approval of any such settlement for good cause shown in accordance with section 350(b) of the Bankruptcy Code.

**8.18. Insurance Neutrality**. Nothing in the Plan, the other Plan Documents, the Confirmation Order, any finding of fact or conclusion of law with respect to confirmation of the Plan, or any order or opinion entered on appeal from the Confirmation Order (i) shall preclude any Non-Settling Asbestos Insurer from asserting in any proceeding any and all claims, defenses, rights, or causes of action that it has or may have under or in connection with any of its Asbestos Insurance Policies or any of its Asbestos CIP Agreements; or (ii) shall be deemed to waive any claims, defenses, rights, or causes of action that any Non-Settling Asbestos Insurer has or may have under the provisions terms, conditions, defenses, or exclusions contained in its Asbestos Insurance Policies and its Asbestos CIP Agreements, including any and all such claims, defenses, rights, or causes of action based upon or arising out of the Channeled Asbestos Claims that are liquidated, resolved, discharged, channeled, or paid in connection with the Plan; *provided*, *however*, that the transfer of rights in and under the Asbestos Insurance Rights to the Asbestos Trust is valid and enforceable and transfers such rights under the Asbestos Insurance Rights as Hopeman or Reorganized Hopeman may have. Notwithstanding anything in this Section 8.18 to the contrary, nothing in this Section 8.18 shall affect or limit, or be construed as affecting or limiting, (1) the binding effect of the Plan and the Confirmation Order on Hopeman, Reorganized Hopeman, the Asbestos Trust, or the beneficiaries of the Asbestos Trust or (2) the protection afforded to any Settled Asbestos Insurer by the Asbestos Permanent Channeling Injunction. Except as otherwise provided in this Section 8.18, including, without limitation, the foregoing regarding the transfer of the Asbestos Insurance Rights to the Asbestos Trust, the Asbestos Insurance Rights held by the Asbestos Trust and any claims made against the Asbestos Insurance Policies on account of such rights will be subject to any coverage defenses a Non-Settling Asbestos Insurer may raise as a result of Reorganized Hopeman's failure, if any, to comply with the Asbestos Insurance Cooperation Obligations. For the avoidance of doubt, notwithstanding that the Asbestos Insurance Cooperation Obligations will remain with Reorganized Hopeman while the Asbestos Insurance Rights will be transferred to the Asbestos Trust, the Asbestos Trust's rights in and claims against the Asbestos Insurance Policies or Asbestos CIP Agreements shall be subject to any coverage defenses that any Non-Settling Asbestos Insurer may have as a result of Reorganized Hopeman's failure, if any, to perform the Asbestos Insurance Cooperation Obligations.

**8.19. Effectuating Documents; Further Transactions**. Any officer, member or manager of or director of Hopeman or Reorganized Hopeman, as applicable, shall be, and hereby is, authorized to execute, deliver, file, and record such contracts, instruments, releases, indentures, certificates, and other agreements or documents, and take such other actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Secretary or other appropriate officer of Hopeman is hereby authorized to certify or attest to any of the foregoing, if necessary.

Hopeman and Reorganized Hopeman, and all other parties, including all holders of Claims entitled to receive Distributions under the Plan, shall execute any and all documents and instruments that must be executed under or in connection with the Plan in order to implement the terms of the Plan or to effectuate the Distributions under the Plan, *provided* that such documents and instruments are reasonably acceptable to such party or parties.

## ARTICLE IX

## EFFECT OF CONFIRMATION

**9.1. Dissolution of Committee; Discharge of the Future Claimants' Representative**.

(a) Effective on the later of (i) the occurrence of the Effective Date or (ii) the completion of all matters described in Section 9.1(c) hereof, the Committee shall be dissolved automatically, whereupon its members, Professionals, and agents shall be released and discharged from any further authority, duties, obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code. On the Effective Date, the Asbestos Trust Advisory Committee shall succeed to the attorney-client privilege and any other privilege held by the Committee and shall enjoy the work product protections that were applicable or available to the Committee before its dissolution.

(b) Effective on the later of (i) the occurrence of the Effective Date or (ii) the completion of all matters described in Section 9.1(c) hereof, the Future Claimants' Representative shall be discharged from her duties in such capacity, whereupon the Future Claimants' Representative and her Professionals and agents shall be released and discharged from any further authority, duties, obligations and responsibilities in the Chapter 11 Case and under the Bankruptcy Code. Except as otherwise provided in this Section 9.1, on and after the Effective Date, the rights, duties, and responsibilities of the Future Claimants' Representative shall be as set forth in the Asbestos Trust Agreement.

(c) Unless and until the Committee is dissolved in accordance with Section 9.1(a) hereof, and the Future Claimants' Representative is discharged from her office in accordance with Section 9.1(b) hereof, the Committee and the Future Claimants' Representative shall have post-Effective Date standing and capacity (i) to complete matters or proceedings, if any, including litigation, appeals, or negotiations, that are pending as of the Effective Date and not resolved in accordance with the Plan; (ii) to grant or withhold, in their sole discretion, any consent contemplated or required under the Plan; (iii) to object to or defend any Administrative Expense Claims; (iv) to oppose any appeals of or from the Confirmation Order; and (v) to prepare and prosecute applications for allowance or payment of Professional Fee Claims of their respective Professionals. Subject to the terms of Section 2.2 hereof, the Committee's Professionals, and the Future Claimants' Representative and her Professionals, shall be authorized to seek allowance or payment of reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred, in connection with any matter described in this Section 9.1(c).

**9.2. Vesting of Assets**. Pursuant to section 1141(b) of the Bankruptcy Code, except as otherwise provided in the Plan, the Plan Documents or the Confirmation Order, the property of the Estate of Hopeman (except for the Asbestos Trust Contribution and any other property of

Hopeman distributed pursuant to the Plan) shall vest in Reorganized Hopeman on the Effective Date free and clear of any and all Liens, Claims, Encumbrances and other interests of any Entity. From and after the Effective Date, Reorganized Hopeman may operate its business and may use, acquire, and dispose of property free of any restrictions imposed under or by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court.

**9.3. Preservation of Certain Causes of Action, Rights to Settle Claims and Compromise Controversies, and Defenses**. With the exception of those claims and rights transferred to the Asbestos Trust, including Causes of Action, pursuant to Section 8.3 of this Plan or released pursuant to Article X of this Plan, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized Hopeman, as successor in interest to Hopeman and its Estate, shall retain and may initiate, prosecute, enforce, sue on, settle, compromise, or resolve (or decline to do any of the foregoing), all claims, rights, causes of action, suits and proceedings, whether in law or in equity, whether known or unknown, accruing to, or that are property of, Hopeman and its Estate, pursuant to the Bankruptcy Code or any statute or legal theory, including any rights to, claims, or causes of action for, recovery under any policies of insurance issued to or on behalf of Hopeman other than the Asbestos Insurance Rights, in any court of competent jurisdiction consistent with applicable law.

**9.4. Terms of Injunction and Automatic Stay**. With the exception of the stay provided in the Bankruptcy Court's *Third Interim Order Extending the Automatic Stay to Asbestos-Related Actions Against Non-Debtor Defendants* [Docket No. 622] that will (unless extended) expire on the earlier of June 30, 2025, or the Effective Date, all of the injunctions and/or stays in existence immediately prior to the Confirmation Date provided for in or in connection with the Chapter 11 Case, whether pursuant to section 105, 362, or any other provision of the Bankruptcy Code, the Bankruptcy Rules or other applicable law, shall remain in full force and effect until the injunctions set forth in the Plan become effective pursuant to a Final Order, and shall continue to remain in full force and effect thereafter as and to the extent provided by the Plan, the Confirmation Order, or by their own terms. For the avoidance of doubt, upon effectiveness of the injunctions set forth in the Plan, the automatic stay imposed by section 362 of the Bankruptcy Code shall be terminated. In addition, on and after the Confirmation Date, Reorganized Hopeman may seek such further orders as it may deem necessary or appropriate to preserve the status quo during the time between the Confirmation Date and the Effective Date.

Each of the injunctions contained in the Plan or the Confirmation Order shall become effective on the Effective Date and shall continue in effect thereafter unless otherwise provided in this Plan or the Confirmation Order.

**9.5. No Liability for Certain Tax Claims**. Unless a taxing authority has properly asserted a Claim against Hopeman on or before the Prepetition Non-Asbestos Claims Bar Dates, no Claim of that taxing authority shall be Allowed against Hopeman or Reorganized Hopeman for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of Hopeman or any other Entity to have paid tax or to have filed any tax return (including, but not limited to, any income tax return or franchise tax return) in or for any prior year or arising out of an audit of any return for a period before the Petition Date.

**9.6.** **No Successor Liability**. Except as otherwise expressly provided in the Plan, Hopeman, Reorganized Hopeman, the other Protected Parties, and the Asbestos Trust do not, nor shall they be deemed to, assume, agree to perform, pay, or indemnify creditors for any liabilities or obligations of Hopeman relating to or arising out of the operations of, or assets of, Hopeman whether arising prior to or resulting from actions, events, or circumstances occurring or existing at any time prior to the Confirmation Date. None of Reorganized Hopeman, the other Protected Parties, or the Asbestos Trust is, or shall be, a successor to Hopeman by reason of any theory of law or equity, and none shall have any successor or transferee liability of any kind or character, except that Reorganized Hopeman and the Asbestos Trust shall assume the obligations specified expressly in the Plan and the Confirmation Order.

## ARTICLE X

## DISCHARGE, INJUNCTIONS, EXCULPATION, RELEASES, AND SETTLEMENT

**10.1. <u>Discharge of Hopeman and Reorganized Hopeman</u>. Except as specifically provided in the Plan, any of the other Plan Documents, or the Confirmation Order, pursuant to sections 524 and 1141(d)(1)(A) of the Bankruptcy Code, confirmation of the Plan shall discharge Hopeman and Reorganized Hopeman on the Effective Date from any and all Claims and Demands of any nature whatsoever, including, without limitation, all Claims, including, to the fullest extent permitted by law, Channeled Asbestos Claims, and liabilities that arose before the Confirmation Date and all debts of the kind specified in sections 502(g), 502(h) and 502(i) of the Bankruptcy Code whether or not: (a) a Proof of Claim based on such Claim was filed under section 501 of the Bankruptcy Code, or such Claim was listed on any of Hopeman's Schedules; (b) such Claim is or was allowed under section 502 of the Bankruptcy Code; or (c) the holder of such Claim has voted on or accepted the Plan. Except as otherwise specifically provided for in the Plan, as of the Effective Date, the rights provided in the Plan to holders of Claims, Demands and Equity Interests shall be in exchange for and in complete satisfaction, settlement and discharge of all Claims (including, to the fullest extent permitted by law, Asbestos Claims and Demands) against, Liens on, and Equity Interests in Hopeman, Reorganized Hopeman, and all of their respective assets and properties.**

**10.2. <u>Hopeman Discharge Injunction</u>. Except as specifically provided in the Plan (including <u>Section 8.12</u>, <u>Section 8.13</u>, <u>Section 8.15</u>, and <u>Section 8.16</u> hereof), any of the other Plan Documents, or the Confirmation Order, all Entities who have held, hold, or may hold Claims (including, to the fullest extent permitted by law, Asbestos Claims and Demands) against Hopeman are permanently enjoined, on and after the Effective Date, from: (a) commencing or continuing in any manner any action or other proceeding of any kind against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand, other than to enforce any right to a Distribution pursuant to the Plan or any other right provided under this Plan; (b) enforcing, attaching, collecting, or recovering by any manner or means of any judgment, award, decree, or order against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand; (c) creating, perfecting, or enforcing any Encumbrance of any kind against Hopeman, Reorganized Hopeman, or their respective property with respect to such Claim or Demand; (d) asserting any right of setoff, subrogation, or recoupment of any kind against any**

**obligation due to Hopeman or against the property or interests in property of Hopeman, with respect to such Claim or Demand; and/or (e) commencing or continuing any action, in any manner, against Hopeman, Reorganized Hopeman, or their respective property that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. The foregoing injunction shall extend to the successors of Hopeman (including, without limitation, Reorganized Hopeman) and their respective properties and interests in property. The discharge provided in this provision shall void any judgment obtained against Hopeman at any time, to the extent that such judgment relates to a discharged Claim or Demand.**

**10.3. Asbestos Permanent Channeling Injunction. Pursuant to sections 105(a) and 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan (including Article VIII hereof), any of the other Plan Documents, and the Confirmation Order, the Confirmation Order shall provide for the issuance of the following injunction to take effect upon the occurrence of the Effective Date:**

(a) ***Scope of Injunction*. All Entities that have held or asserted, or hold or assert, or may hold or assert in the future any Channeled Asbestos Claim shall be permanently stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery on account of any such Channeled Asbestos Claim, including:**

(i) **commencing, conducting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interest in property of any Protected Party;**

(ii) **enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interest in property of any Protected Party;**

(iii) **creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interest in property of any Protected Party;**

(iv) **setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interest in property of any Protected Party; and**

(v) **proceeding in any manner and in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Trust, except in conformity and compliance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.**

(b) ***Reservations*.** **Notwithstanding anything to the contrary above, this Asbestos Permanent Channeling Injunction shall not stay, restrain, bar, or enjoin:**

(i) **the rights of Entities to the treatment accorded them under Article IV of this Plan, as applicable, including the rights of Channeled Asbestos Claimants to have their Channeled Asbestos Claims resolved in accordance with the Asbestos Trust Distribution Procedures;**

(ii) **the rights of Entities to assert any Channeled Asbestos Claim against the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures, or any claim for payment of an Asbestos Trust Expense against the Asbestos Trust;**

(iii) **the rights of Channeled Asbestos Claimants to assert any and all claims or causes of action against any Entities that are not Protected Parties;**

(iv) **the rights of the Asbestos Trust or, if applicable, Reorganized Hopeman to prosecute a claim or cause of action based on, arising from, or attributable to any of the Asbestos Trust Assets against any Entity that is not a Protected Party;**

(v) **any action or suit against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne that strictly conforms to the requirements of Section 8.12 hereof.**

(vi) **any action, suit, or Insurance Policy Action permitted or authorized under Section 8.13 hereof against any Non-Settling Asbestos Insurer; or**

(vii) **any claim, crossclaim, or third-party demand in a court of competent jurisdiction (including in any state court lawsuits) against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne, or any direct action against any Non-Settling Asbestos Insurer of Hopeman or Wayne, in each case that strictly conforms to the requirements of Section 8.15 hereof.**

**10.4. Exculpation. From and after the Petition Date through the Effective Date, and with the exception of claims related to any act or omission that is determined in a Final Order to have constituted gross negligence, knowing and intentional fraud, or willful misconduct, none of the Exculpated Parties shall have or incur any liability to any Entity for any act or omission in connection with, related to, or arising out of: (a) the Chapter 11 Case; (b) negotiation, formulation and preparation of the Plan and the other Plan Documents, and any of the terms and/or settlements and compromises reflected in the Plan and the other Plan Documents; (c) pursuit of confirmation of the Plan; (d) consummation of the Plan, or administration of the Plan or the property to be distributed under the Plan or the Asbestos Trust Distribution Procedures; or (e) the releases and injunctions contained in the Plan. Without limiting the generality of the foregoing, the Exculpated Parties shall be entitled to and granted the protections and benefits of section 1125(e) of the Bankruptcy Code.**

**10.5. <u>Releases by Hopeman and Estate</u>. Except as otherwise expressly provided in the Plan or Confirmation Order, on the Effective Date, for good and valuable consideration, the adequacy of which is confirmed, Hopeman, Reorganized Hopeman, and any Entity seeking to exercise the rights of the Estate, in each case individually and collectively, including any successor to Hopeman or any Estate representative appointed or selected pursuant to the applicable provisions of the Bankruptcy Code, shall, and shall be deemed to, completely and forever release, waive and discharge unconditionally each of the Released Parties, solely in their capacities as such, from any and all claims, obligations, suits, judgments, remedies, damages, Demands, debts, rights, Causes of Action and liabilities that are (or that, at any time on or prior to the Effective Date, were) property of the Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, foreseen or unforeseen, matured or unmatured, now existing or hereafter arising, in law, equity or otherwise, whether direct, indirect, or derivative, based upon, attributable to, or arising out of, in whole or in part, any act or omission, transaction, or occurrence taking place on or prior to the Effective Date (including prior to the Petition Date); *provided*, *however*, that nothing contained in this <u>Section 10.5</u> is intended to operate as a release of liability based upon gross negligence or willful misconduct as determined by a Final Order.**

**10.6. <u>Mutual Releases by Releasing Parties in Addition to Protections Under the Asbestos Permanent Channeling Injunction</u>. Except as provided in <u>Section 8.13(c</u>) and <u>Section 8.15</u> of the Plan and in addition to the protections afforded to the Released Parties as Protected Parties under the Asbestos Permanent Channeling Injunction, and in consideration for the obligations of Hopeman and Reorganized Hopeman under the Plan, each Releasing Party and the Asbestos Trust shall waive and release any and all Causes of Action that such holder did commence or could have commenced against any such Released Party that is based upon, attributable to, or arising from any acts or omissions of Released Party occurring prior to the Effective Date in any way attributable to Hopeman, Reorganized Hopeman, the Chapter 11 Case, or the Plan; provided, however, that, notwithstanding the foregoing, no release of the Released Parties shall diminish, reduce, or eliminate the duties of any Asbestos Insurer under any Asbestos Insurance Policy or any Asbestos CIP Agreement.**

**In exchange for holders of Non-Asbestos Claims or Equity Interests opting in to grant the release provided in this section 10.6 of the Plan, each Released Party shall waive and release any and all Causes of Action that such Released Party did commence or could have commenced against any such holders of Non-Asbestos Claims or Equity Interests that opted-in that is based upon, attributable to, or arising from any acts or omissions of Releasing Parties occurring prior to the Effective Date in any way attributable to Hopeman, Reorganized Hopeman, the Chapter 11 Case, or the Plan.**

**10.7. <u>Release of Avoidance Actions and Estate Causes of Action Against Vendor Released Parties</u>. As of the Effective Date, each of Hopeman, Reorganized Hopeman and the Asbestos Trust hereby fully, finally, and forever releases, relinquishes, and discharges all Avoidance Actions and all other Claims and Causes of Action that it holds against any Vendor Released Parties.**

**10.8. <u>No Actions on Account of Released Claims</u>. Except as provided in the Plan, as of the Effective Date, all Releasing Parties that have held, currently hold or may hold any claims, commitments, obligations, suits, judgments, damages, demands, debts, Causes of Action or liabilities that are released pursuant to the Plan shall be permanently enjoined from taking any of the following against a Released Party, or any of its property, on account of such released claims, commitments, obligations, suits, judgments, damages, demands, debts, Causes of Action or liabilities: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting or enforcing any Encumbrance; (iv) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to any Released Party; and (v) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan.**

**10.9. Compromise and Settlement of Claims and Interests and Approval of Certain Settling Insurers Agreement**. Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration of the Distributions and other benefits provided under the Plan, the provisions of the Plan shall, on the Effective Date, constitute a compromise and settlement of all claims and controversies relating to the rights that a holder of a Claim or Interest may have against Hopeman with respect to any Claim, Interest, or Distribution on account thereof, as well as all potential Causes of Action against Hopeman. To the extent necessary, the entry of the Confirmation Order shall constitute approval of the Certain Settling Insurers Agreement and the settlement contemplated thereby. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval of such compromises and settlements and the Bankruptcy Court's finding that such compromises and settlements are (i) in the best interest of Hopeman, the Estate, and holders of Claims and Interests; and (ii) fair, equitable, and reasonable. Hopeman or Reorganized Hopeman, as applicable, is authorized to take all actions necessary or appropriate to consummate the transactions and settlements contemplated thereby, including by the Certain Settling Insurers Settlement.

**10.10. Disallowed Claims**. On and after the Effective Date, Hopeman and the Estate shall be fully and finally discharged from any liability or obligation on a Disallowed Claim, and any order creating a Disallowed Claim that is not a Final Order as of the Effective Date solely because of an Entity's right to move for reconsideration of such order pursuant to section 502 of the Bankruptcy Code or Bankruptcy Rule 3008 shall nevertheless become and be deemed to be a Final Order on the Effective Date. The Confirmation Order, except as otherwise provided therein or herein, shall constitute an order: (a) disallowing all Claims (other than Channeled Asbestos Claims) to the extent such Claims are not allowable under any provision of section 502 of the Bankruptcy Code, including, but not limited to, time-barred Claims, and Claims for unmatured interest, and (b) disallowing or subordinating, as the case may be, any Claims, or portions of Claims, for penalties or non-compensatory damages.

## ARTICLE XI

## CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE PLAN

**11.1. Conditions Precedent to Confirmation of the Plan**. The following are conditions precedent to confirmation of the Plan that (i) are designed, among other things, to ensure that the injunctions, releases, and discharges set forth in Article X shall be effective, binding, and enforceable, and (ii) must be satisfied, unless waived in accordance with Section 11.3 below:

(a) the Plan and each of the other Plan Documents shall be in form and substance acceptable in all respects to each of the Plan Proponents;

(b) the Bankruptcy Court shall have entered an order, acceptable in form and substance to each of the Plan Proponents, approving the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code;

(c) at least two-thirds (2/3) in amount and seventy-five percent (75%) in number of holders of Asbestos Personal Injury Claims actually voting on the Plan shall have voted in favor of the Plan;

(d) the Confirmation Order shall be in form and substance acceptable to each of the Plan Proponents and shall have been entered by (i) the Bankruptcy Court and the District Court acting jointly, (ii) the District Court, or (iii) the Bankruptcy Court and affirmed by the District Court;

(e) (i) the Plan, each of the other Plan Documents, and the Confirmation Order shall be in form and substance acceptable to Huntington Ingalls Industries, Inc. only to the extent that the Plan, each of the other Plan Documents, and the Confirmation Order may affect and/or alter HII's rights under the terms set forth in Section 8.15 of this Plan (such acceptance not to be unreasonably withheld), and (ii) the Plan Proponents shall have consulted with Huntington Ingalls Industries, Inc. regarding the final forms of the Plan, each of the other Plan Documents, and the Confirmation Order in all other respects;

(f) the Confirmation Order shall, among other things:

(i) issue the Asbestos Permanent Channeling Injunction in accordance with the Plan and section 524(g) of the Bankruptcy Code

(ii) provide that the Confirmation Order supersedes any Bankruptcy Court orders issued prior to the Confirmation Date that may be inconsistent with the Confirmation Order;

(iii) provide that, except with respect to obligations specifically preserved in the Plan, Hopeman is discharged effective on the Effective Date (in accordance with the Plan and section 1141(d) of the Bankruptcy Code) from any Claims (including, to the fullest extent permitted by law, Asbestos Claims and Demands);

(iv) authorize the implementation of the Plan in accordance with its terms;

(v) provide that, as of the Effective Date, all Equity Interests are cancelled, annulled, and extinguished and that the Reorganized Hopeman Common Stock is issued to, and received by, the Asbestos Trust;

(vi) authorize the making of the Asbestos Trust Contribution, which shall be, on the Effective Date and without further notice, action, or deed, transferred to and indefeasibly vested in the Asbestos Trust free and clear of all Claims and Encumbrances against or on such Asbestos Trust Contribution;

(vii) provide that all transfers of assets of Hopeman contemplated under the Plan shall be free and clear of all Claims and Encumbrances against or on such assets;

(viii) except as otherwise provided in the Plan or Confirmation Order, provide that the assets revesting in Reorganized Hopeman shall be free and clear of all Claims and Encumbrances;

(ix) provide that any transfers effected or entered into, or to be effected or entered into, under the Plan shall be and are exempt under section 1146(a) of the Bankruptcy Code from any state, city, or other municipal transfer taxes, mortgage recording taxes and any other stamp or similar tax;

(x) provide that the transfers of property by Hopeman to Reorganized Hopeman (A) are or will be legal, valid, and effective transfers of property; (B) vest or will vest Reorganized Hopeman with good title to such property; (C) do not and will not constitute avoidable transfers under the Bankruptcy Code or under other applicable bankruptcy or non-bankruptcy law; and (D) do not and will not subject Reorganized Hopeman to any liability by reason of such transfer under the Bankruptcy Code or applicable nonbankruptcy law, including any laws affecting or effecting successor or transferee liability;

(xi) provide that all Executory Contracts assumed or assumed and assigned by Hopeman during the Chapter 11 Case or under the Plan, if any, shall remain in full force and effect for the benefit of Reorganized Hopeman or the assignee thereof, notwithstanding any provision in such contract (including those provisions described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits such assignment or transfer or that enables or requires termination of such contract or lease;

(xii) require that as a condition to receiving any distributions of any kind from the Asbestos Trust, each holder of an Asbestos Personal Injury Claim execute the Asbestos Personal Injury Claimant Release;

(xiii) approve in all respects the other settlements, transactions, and agreements to be effected pursuant to the Plan, including the Asbestos Trust

Agreement, the Asbestos Trust Distribution Procedures, and the other Asbestos Trust Documents, and the releases herein of the Released Parties;

(xiv) authorize the Plan Proponents and the Future Claimants' Representative to take all actions necessary or appropriate to effectuate, implement, and consummate the Plan, including the execution, delivery, and performance of contracts, instruments, releases, and other agreements or documents created in connection with the Plan; and

(xv) incorporate by reference all previously issued orders approving an Asbestos Insurance Settlement and provide that nothing in the Plan or the Confirmation Order is intended to modify or limit such orders.

(g) In addition to the foregoing, the Confirmation Order shall contain the following findings of fact and conclusions of law, among others:

(i) the Plan complies with all applicable provisions of the Bankruptcy Code, including, without limitation, those requiring that the Plan was proposed in good faith and that the Confirmation Order was not procured by fraud;

(ii) the Plan and its acceptance otherwise comply with sections 524(g) and 1126 of the Bankruptcy Code, and confirmation of the Plan is in the best interests of all creditors;

(iii) the Plan does not provide for the liquidation of all or substantially all of the property of Hopeman, and Reorganized Hopeman will continue in business as a reorganized debtor, and confirmation of the Plan is not likely to be followed by the liquidation of Reorganized Hopeman or the need for further financial reorganization;

(iv) the Plan Documents comply with section 524(g) of the Bankruptcy Code and therefore satisfy the prerequisites thereunder for issuing the Asbestos Permanent Channeling Injunction;

(v) as of the Petition Date, Hopeman had been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(vi) the Asbestos Trust, as of the Effective Date, will assume all the liabilities for Hopeman and Reorganized Hopeman for all Channeled Asbestos Claims, except as provided in Section 8.12, Section 8.13, and Section 8.15 of the Plan;

(vii) the Asbestos Trust will be funded by Reorganized Hopeman's contribution of the Asbestos Trust Assets, including the Asbestos Trust Contribution and the Asbestos Insurance Rights;

(viii) the assignment of the Asbestos Insurance Rights is valid and enforceable under sections 524(g), 541, 1123(a)(5)(B), and 1129(a)(1) of the Bankruptcy Code, and the Bankruptcy Code preempts any anti-assignment contractual provisions and applicable state law.

(ix) the Asbestos Trust will on the Effective Date own one hundred percent (100%) of the Reorganized Hopeman Common Stock and all rights to receive dividends or other distributions on account of such stock;

(x) the Asbestos Trust is to use its assets and income to pay eligible Channeled Asbestos Claims and Asbestos Trust Expenses, in accordance with the Asbestos Trust Documents, except as provided in Section 8.12, Section 8.13, and Section 8.15 of the Plan;

(xi) Hopeman is likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Claims that are addressed by the Asbestos Permanent Channeling Injunction, and all such Demands are subject to the Asbestos Permanent Channeling Injunction;

(xii) the actual amounts, numbers, and timing of such Demands cannot be determined;

(xiii) pursuit of such Demands outside the procedures prescribed by the Plan and the Asbestos Trust Distribution Procedures is likely to threaten the Plan's purpose to deal equitably with Asbestos Claims and Demands;

(xiv) the Asbestos Permanent Channeling Injunction is essential to the Plan and Hopeman's reorganization efforts;

(xv) the terms of the Asbestos Permanent Channeling Injunction, including any provisions barring actions against third parties pursuant to section 524(g)(4)(A) of the Bankruptcy Code, are set out in the Plan and Disclosure Statement;

(xvi) the Plan establishes in Class 4 (Channeled Asbestos Claims) a separate class of the claimants whose Claims are to be addressed by the Asbestos Trust;

(xvii) Class 4 (Channeled Asbestos Claims) has voted, by at least seventy-five percent (75%) of the holders of Asbestos Personal Injury Claims and Asbestos Indirect Claims voting on the Plan, in favor of the Plan;

(xviii) Class 4 (Channeled Asbestos Claims) has voted, by at least two-thirds (2/3) of the allowed amount of Class 4 Claims, to accept the Plan;

(xix) the Future Claimants' Representative was appointed as part of the proceedings leading to the issuance of the Asbestos Permanent Channeling Injunction for the purpose of protecting the rights of persons that might

subsequently assert unknown Asbestos Claims and Demands that are addressed in the Asbestos Permanent Channeling Injunction and channeled to the Asbestos Trust;

(xx) each Protected Party is identifiable from the terms of the Asbestos Permanent Channeling Injunction by name or as part of an identifiable group;

(xxi) applying the Asbestos Permanent Channeling Injunction to each Protected Party is fair and equitable with respect to persons that might subsequently assert Demands against each such Protected Party, in light of the benefits provided, or to be provided, to the Asbestos Trust, including the Asbestos Trust Contribution, by or on behalf of any such Protected Party;

(xxii) the Asbestos Trust Contribution constitutes a sufficient basis upon which to provide the Protected Parties with the protections afforded to them under the Plan, the Plan Documents, and the Confirmation Order;

(xxiii) pursuant to courts orders, the Asbestos Trust Distribution Procedures, or otherwise, the Asbestos Trust will operate through mechanisms, such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Asbestos Trust will value, and be in a financial position to pay, eligible Asbestos Claims and Demands that involve similar Claims in substantially the same manner;

(xxiv) the Plan and the other Plan Documents are a fair, equitable, and reasonable resolution of the liabilities of Hopeman for Channeled Asbestos Claims;

(xxv) the Future Claimants' Representative has adequately and completely fulfilled her duties, responsibilities, and obligations as the legal representative for unknown Demand holders in accordance with section 524(g) of the Bankruptcy Code;

(xxvi) adequate and sufficient notice of the Plan and the Confirmation Hearing, as well as all deadlines for objecting to the Plan, was given to (A) all known creditors and holders of Equity Interests, (B) parties that requested notice in accordance with Bankruptcy Rule 2002 (including the Committee and the Future Claimants' Representative), (C) all parties to Executory Contracts, (D) all taxing authorities listed on Hopeman's Schedules, (E) the United States Trustee, and (F) all Asbestos Insurers, in accordance with the solicitation procedures governing such service and in substantial compliance with Bankruptcy Rules 2002(b), 3017, and 3020(b); and such transmittal and service were adequate and sufficient to bind, among other parties, any holder of an Asbestos Claim, and no other or further notice is or shall be required; and

(xxvii) Hopeman's conduct in connection with and throughout the Chapter 11 Case, including its negotiations with the Committee and the Future Claimants'

Representative, Hopeman's commencement of this Chapter 11 Case, and the drafting, negotiation, proposing, confirmation, and consummation of the Plan were done in good faith and consistent with the purposes of the Bankruptcy Code.

**11.2. Conditions Precedent to the Effective Date**. The following are conditions precedent to occurrence of the Effective Date of the Plan that must be satisfied, unless waived in accordance with Section 11.3 below:

(a) all conditions precedent to the Confirmation Date shall have been satisfied or waived and shall continue to be satisfied or waived;

(b) the Confirmation Order shall have been entered and shall have become a Final Order;

(c) the Bankruptcy Court or the District Court, as required, shall have entered or affirmed the Asbestos Permanent Channeling Injunction (which may be included in the Confirmation Order that shall contain terms satisfactory and acceptable to each of the Plan Proponents);

(d) no request for revocation of the Confirmation Order under section 1144 of the Bankruptcy Code shall have been made or, if made, shall be pending;

(e) no fact or circumstance shall exist that would prevent the Asbestos Permanent Channeling Injunction from coming into full force and effect immediately upon the occurrence of the Effective Date;

(f) no fact or circumstance shall be preventing the Asbestos Trust from receiving the Asbestos Trust Contribution upon occurrence of the Effective Date;

(g) all Plan Documents and related agreements or instruments that require execution shall have been executed and delivered, or held in escrow to be released therefrom and promptly delivered to the applicable parties upon the occurrence of the Effective Date;

(h) certificates representing the Reorganized Hopeman Common Stock shall have been executed and delivered, or held in escrow to be released therefrom and promptly delivered to the Asbestos Trust upon the occurrence of the Effective Date;

(i) each of the Plan Documents and agreements or instruments contemplated by the Plan Documents shall be in form and substance acceptable to each of the Plan Proponents in all respects and, upon the occurrence of the Effective Date, shall be fully enforceable in accordance with their terms;

(j) all other actions, documents, and agreements that the Plan Proponents deem necessary to implement those provisions of the Plan to be effectuated on or prior to the Effective Date, in form and substance satisfactory to the Plan Proponents, shall have been effected or executed and delivered; and

(k) all conditions to closing set forth in any of the Plan Documents shall have been fulfilled to the reasonable satisfaction of the Plan Proponents.

**11.3. Waiver of Conditions Precedent**. To the fullest extent practicable and legally permissible, any of the conditions precedent set forth in Section 11.1 or Section 11.2 above may be waived or modified, in whole or in part, by the Plan Proponents, acting jointly; *provided, however*, that the condition precedent set forth in Section 11.1(e) may not be waived or modified, in whole or in part, without the written consent of Huntington Ingalls Industries, Inc. Any such waiver or modification may be effected at any time in a writing executed by, or on behalf of, each of the Plan Proponents and without leave or an order of the Bankruptcy Court or the District Court. If any Plan Proponent desires to waive a condition precedent to facilitate confirmation of the Plan or the occurrence of the Effective Date, the other Plan Proponent (and, if applicable, Huntington Ingalls Industries, Inc.) shall promptly confer with it as to whether or not the suggested waiver should be given, in recognition that time is of the essence.

**11.4. Failure to Achieve the Effective Date**. If each of the conditions to the Effective Date is not met or duly waived in accordance with Section 11.3, then upon joint motion by the Plan Proponents and notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court and/or the District Court, as the case may be. If (a) the Plan Proponents revoke or withdraw the Plan, (b) the Confirmation Order is vacated, (c) the Plan is otherwise not confirmed by a Final Order, or (d) the Plan is confirmed and does not become effective for any other reason, then the rights of all parties in interest in the Chapter 11 Case are and shall be reserved in full. In any such event, the Plan shall become null and void in all respects; any settlement or compromise embodied in the Plan, any assumption or rejection of Executory Contracts effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and nothing contained in the Plan or the Confirmation Order, if previously entered, and no acts taken in preparation for consummation of the Plan, shall: (a) constitute or be deemed to constitute a waiver, release or settlement of any Claims by or against, or any Equity Interests in, Hopeman or any other Entity, (b) prejudice in any manner the rights of Hopeman or any Entity in any further proceedings involving Hopeman; or (c) constitute an admission of any sort by Hopeman or any other Entity.

## ARTICLE XII

## RETAINED JURISDICTION OF BANKRUPTCY COURT

**12.1. Retention of Jurisdiction**. Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court and, to the extent applicable, the District Court, shall, to the fullest extent permitted by law, retain and have exclusive jurisdiction over all matters arising out of and related to the Chapter 11 Case and the Plan, including, among other things, jurisdiction to:

(a) hear and determine any and all objections to and proceedings involving: (i) the allowance, estimation, classification, and subordination of Claims (other than Channeled Asbestos Claims) that have been or properly should have been brought in the Bankruptcy Court; or (ii)Equity Interests;

(b) hear and determine all objections to the termination of the Asbestos Trust;

(c) hear and determine such other matters that may be set forth in or arise in connection with the Plan, the Confirmation Order, the Asbestos Permanent Channeling Injunction, or the Asbestos Trust Agreement;

(d) hear and determine any proceeding that involves the validity, application, construction, enforceability, or modification of the Asbestos Permanent Channeling Injunction;

(e) hear and determine any conflict or other issues that may arise in the Chapter 11 Case, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Chapter 11 Case, and in the administration of the Asbestos Trust;

(f) enter such orders as are necessary to implement and enforce the releases and injunctions described herein, including, if necessary, in connection with application of the protections afforded by section 524 of the Bankruptcy Code and/or the Plan to the Protected Parties;

(g) hear and determine any and all applications for allowance of Professional Fee Claims and any other fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code or the Plan;

(h) enter such orders authorizing non-material modifications to the Plan or any other Plan Document, as may be necessary to comply with section 468B of the Internal Revenue Code;

(i) hear and determine any applications pending on the Effective Date for the assumption, assumption and assignment, or rejection, as the case may be, of Executory Contracts to which Hopeman is a party, and to hear and determine and, if necessary, liquidate any and all Claims arising therefrom;

(j) hear and determine any and all applications, Claims, causes of action, adversary proceedings, and contested or litigated matters that may be pending in the Chapter 11 Case on the Effective Date;

(k) consider any modifications of the Plan, and remedy any defect or omission or reconcile any inconsistency or make any other necessary modifications in or to the Plan, the Asbestos Trust Documents, or any order of the Bankruptcy Court, including the Confirmation Order, as may be necessary to carry out the purposes and intent of the Plan, to the extent authorized by the Bankruptcy Code and the Bankruptcy Rules;

(l) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder and issue orders in aid of confirmation, consummation and execution of the Plan to the extent authorized by section 1142 of the Bankruptcy Code, including, but not limited to, compelling the conveyance of property and other performance contemplated under the Plan and documents executed in connection herewith;

(m) hear and determine all questions and disputes and enter such orders or judgments, including injunctions, as are necessary to (i) enforce the title, rights and powers of

Reorganized Hopeman and the Asbestos Trust, and (ii) enable holders of Claims to pursue their rights against any Entity that may be liable therefor pursuant to applicable law or otherwise;

(n) hear and determine any proposed compromise and settlement of any Claim against or cause of action by or against Hopeman that has been or properly should have been brought in the Bankruptcy Court to the extent requested by Reorganized Hopeman;

(o) hear and determine any timely objections to Administrative Expense Claims asserted or to Proofs of Claim filed, both before and after the Confirmation Date, including any objections to the classification of any Claim, and to allow or disallow any Disputed Claim, in whole or in part;

(p) hear and determine matters concerning state, local and federal taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to Hopeman, Reorganized Hopeman, or the Asbestos Trust arising on or prior to the Effective Date, arising on account of transactions contemplated by the Plan Documents, or relating to the period of administration of the Chapter 11 Case;

(q) hear and determine such other matters as may be set forth in the Confirmation Order or other orders of the Bankruptcy Court, or which may arise in connection with the Plan, the Confirmation Order, or the Effective Date, as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) hear and determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement, or consummation of the Plan or any Entity's obligations hereunder, including performance of Hopeman's duties under the Plan;

(s) hear and determine any motions or applications seeking approval of any Asbestos Insurance Settlement whether filed before, on, or after the Effective Date.

(t) enforce remedies upon any default under the Plan or any of the other Plan Documents;

(u) hear and determine any other matter not inconsistent with the Bankruptcy Code;

(v) hear and determine any claim that in any way challenges or is based on any provision in the Confirmation Order; and

(w) enter a final decree closing the Chapter 11 Case.

If and to the extent that the Bankruptcy Court is not permitted under applicable law to exercise jurisdiction over any of the matters specified above, including the matter described in Section 12.1(d), the reference to the "Bankruptcy Court" in the preamble to this Section 12.1 shall be deemed to be a reference to the "District Court." Notwithstanding anything in this Section 12.1 to the contrary, and except as set forth in Article VIII, the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures shall govern the processing, liquidation, or satisfaction of

Channeled Asbestos Claims and the forum in which Channeled Asbestos Claims shall be determined.

**12.2. Other Proceedings**. Notwithstanding any term or provision herein to the contrary, nothing in the Plan Documents shall detract from or contravene any jurisdictional or other provisions, including Sections 8.12, 8.13, and 8.15 hereof, that permit or require legal actions or proceedings to be brought in a court that is not the Bankruptcy Court or the District Court. Notwithstanding anything in Section 12.1 hereof to the contrary, the Asbestos Trust may initiate, prosecute, defend, and resolve all legal actions and other proceedings related to or arising from any asset, liability, or responsibility of the Asbestos Trust, including any Causes of Action arising from or related to the Asbestos Insurance Rights and Channeled Asbestos Claims, outside of the Bankruptcy Court and in any court of competent jurisdiction, in accordance with Section 8.3. In addition, notwithstanding anything in Section 12.1 hereof to the contrary, Asbestos Claimants may bring Extracontractual Claims in accordance with Section 8.13(e) outside of the Bankruptcy Court and in any court of competent jurisdiction.

**12.3. Modification of Plan**. Any Plan Proponent, with the consent of the other Plan Proponent, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any Exhibits thereto under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date and may include any such amended Exhibits in the Plan, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Plan Proponents shall have complied with section 1125 of the Bankruptcy Code, to the extent necessary. Further, any Plan Proponent, with the consent of the other Plan Proponents, which consent may not be unreasonably withheld, may alter, amend, or modify the Plan or any Exhibits thereto at any time after entry of the Confirmation Order and before the Plan's substantial consummation, provided that: (a) the Plan, as modified, altered, or amended, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and (b) the Bankruptcy Court, after notice and a hearing, confirms the Plan as modified, under section 1129 of the Bankruptcy Code, and finds that the circumstances warrant such modification. A holder of a Claim that has accepted or rejected the Plan shall be deemed to have accepted or rejected, as the case may be, the Plan as modified, unless, within the time fixed by the Bankruptcy Court, if any, such holder changes its previous acceptance or rejection, to the extent such holder is afforded the opportunity to do so under section 1127(d) of the Bankruptcy Code.

On and after the Effective Date, Reorganized Hopeman or the Asbestos Trust, as applicable, may remedy any defects or omissions or reconcile any inconsistencies in the Plan Documents for the purpose of implementing the Plan in such manner as may be necessary to carry out the purposes and intent of the Plan, so long as the interests of the holders of Allowed Claims and other applicable parties-in-interest are not adversely affected thereby.

Notwithstanding anything in this Section 12.3, there shall be no modification to this Plan made at any time (whether before or after entry of the Confirmation Order) that would materially reduce or eliminate any of the protections provided herein to the Protected Parties, Released Parties, or Exculpated Parties. Notwithstanding anything in this Section 12.3, there shall be no modification to this Plan made at any time (whether before or after entry of the Confirmation Order) that would materially reduce or eliminate any of the rights or protections provided under Section 8.15, Section 8.17, Section 10.3(b), Section 11.1(e)(i), or Section 11.3 to HII without the prior written consent of Huntington Ingalls Industries, Inc.

**12.4. Consent to Jurisdiction**. Upon default under the Plan, Hopeman, Reorganized Hopeman, the Asbestos Trust, the Asbestos Trustee, the Asbestos Trust Advisory Committee, and the Future Claimants' Representative, respectively, consent to the jurisdiction of the Bankruptcy Court, and agree that it shall be the preferred forum for all proceedings relating to any such default.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

**13.1. Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), or a Schedule or Exhibit hereto or instrument, agreement or other document executed under the Plan provides otherwise, the rights, duties and obligations arising under the Plan, and the instruments, agreements and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the Commonwealth of Virginia without giving effect to the principles of conflicts of law thereof.

**13.2. Notices**. To be effective, all notices, requests and demands to or upon the Plan Proponents, or, as applicable, upon the Future Claimants' Representative and the Committee, shall be in writing and, unless otherwise expressly provided herein, shall be addressed as follows and mailed by registered or certified mail, return receipt requested, and shall be deemed to have been duly given or made when actually delivered:

<u>If to Hopeman</u>:

Hopeman Brothers, Inc.
6 Auburn Ct., Unit 3
Brookline, Massachusetts 02446
Attention: Christopher Lascell, President

with a copy (which alone will not constitute notice) to:

Hunton Andrews Kurth LLP
600 Travis Street, Suite 4200
Houston, Texas 77002
Attention: Joseph P. Rovira, Esq. (josephrovira@HuntonAK.com)
Catherine A. Rankin, Esq. (crankin@HuntonAK.com)

and

Hunton Andrews Kurth LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Attention: Tyler P. Brown, Esq. (tpbrown@HuntonAK.com)
Henry P. (Toby) Long, III (hlong@HuntonAK.com)

<u>If to the Committee</u>:

Caplin & Drysdale, Chartered
1200 New Hampshire Avenue, NW, 8th Floor
Washington, DC 20036
Attention: Kevin C. Maclay, Esq. (kmaclay@capdale.com)
Todd E. Phillips, Esq. (tphillips@capdale.com)
Jeffrey A. Liesemer, Esq. (jliesemer@capdale.com)
Nathaniel R. Miller, Esq. (nmiller@capdale.com)

If to the Future Claimants' Representative:

Campbell & Levine, LLC
222 Delaware Avenue, Suite 1620
Wilmington, Delaware 19801
Attention: Marla Rosoff Eskin, Esq. (meskin@camlev.com)

**13.3. Plan Supplement**. Any Exhibits, lists, or schedules referred to herein or in the Disclosure Statement but not filed with the Plan shall be contained in the Plan Supplement and filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to the deadline established by the Bankruptcy Court for the filing and service of objections to the Plan.

**13.4. Inconsistencies**. To the extent the Plan is inconsistent with either the Disclosure Statement or the other Plan Documents, the provisions of the Plan shall be controlling. To the extent the Plan is inconsistent with the Confirmation Order, the provisions of the Confirmation Order shall be controlling.

**13.5. Tax Reporting and Compliance**. In connection with the Plan and all instruments issued in connection therewith and Distributions thereon, Hopeman and Reorganized Hopeman shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. No holder of an Allowed Claim against Hopeman shall effectuate any withholding with respect to the cancellation or satisfaction of such Allowed Claim under the Plan. Reorganized Hopeman is hereby authorized to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all taxable periods of Hopeman ending after the Petition Date through and including the Effective Date of the Plan.

**13.6. Payment of Statutory Fees**. All fees due and payable pursuant to section 1930 of Title 28 of the U.S. Code prior to the Effective Date shall be paid by Hopeman on the Effective Date. After the Effective Date, Reorganized Hopeman shall pay any and all such fees from the Net Reserve Funds when due and payable, and shall file with the Bankruptcy Court quarterly reports in a form reasonably acceptable to the United States Trustee. Hopeman and Reorganized Hopeman shall remain obligated to pay quarterly fees to the Office of the United States Trustee until Hopeman's case is converted, dismissed, or closed, whichever occurs first.

**13.7. Exemption from Transfer Taxes**. Pursuant to section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, pledge or other security interest, the making or assignment of any

lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan shall be exempt from all stamp, transfer, or similar taxes, as provided in section 1146(a).

**13.8. Recordable Order**. Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

**13.9. Binding Effect**. The rights, benefits and obligations of any Entity named or referred to in the Plan, or whose actions may be required to effectuate the terms of the Plan, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity (including any trustee appointed for Hopeman under chapters 7 or 11 of the Bankruptcy Code). The Confirmation Order shall provide that the terms and provisions of the Plan and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting the Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan shall continue to be effective in this or any superseding case under the Bankruptcy Code.

**13.10. Severability**. After the Effective Date, any provision of the Plan, the Plan Documents, the Confirmation Order, or any of the Exhibits to the Plan that is determined to be prohibited, unenforceable, or invalid by a court of competent jurisdiction or any other governmental Entity with appropriate jurisdiction may be deemed ineffective as to any jurisdiction in which such provision is prohibited, unenforceable, or invalidated to the extent of such prohibition, unenforceability, or invalidation, without invalidating the effectiveness of the remaining provisions of the Plan, the Plan Documents, the Confirmation Order, and the Exhibits to the Plan or affecting the validity or enforceability of such provision and such remaining provisions in any other jurisdiction.

**13.11. Further Authorizations**. The Plan Proponents, as applicable, and, after the Effective Date, the Asbestos Trust, if and to the extent necessary, may seek such orders, judgments, injunctions, and rulings as each deems necessary to carry out the intentions and purposes of, and to give full effect to the provisions of, the Plan.

**13.12. General Statements**. Statements of a general nature set forth in the Plan shall not be construed to limit or restrict the specific provisions herein.

**13.13. Entire Agreement**. The Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions, negotiations, understandings, and documents. No Entity shall be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter of the Plan Documents other than as expressly provided for in the Plan or the other Plan Documents or as may hereafter be agreed to by the affected parties in writing.

**IN WITNESS WHEREOF**, the undersigned has duly executed the Plan as of the date first above written.

Respectfully submitted,

Richmond, Virginia
Dated: August 17, 2026

**Hopeman Brothers, Inc.**

By: *_/s/ Christopher Lascell_*
Name: Christopher Lascell
Title: President

**The Official Committee of Unsecured Creditors**

By: *_/s/ Lisa Nathanson Busch_*
Name: Lisa Nathanson Busch, as specifically authorized by Committee Co-Chairperson, Darrell Kitchen

**HUNTON ANDREWS KURTH LLP**
Joseph P. Rovira (admitted *pro hac vice*)
Catherine A. Rankin (admitted *pro hac vice*)
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200

**HUNTON ANDREWS KURTH LLP**
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200

*Attorneys for Debtor and Debtor in Possession*

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Jeffrey A. Liesemer (VSB No. 35918)
Nathaniel R. Miller (admitted *pro hac vice*)
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000

*Counsel for the Official*
*Committee of Unsecured Creditors*

**MORGAN, LEWIS & BOCKIUS LLP**
Brady Edwards (admitted *pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
Telephone: (713) 890-5000

W. Brad Nes (admitted *pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000

Jeffrey S. Raskin (admitted *pro hac vice*)
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000

David Cox (admitted *pro hac vice*)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-7315

*Special Insurance Counsel for the Official Committee of Unsecured Creditors*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| **HOPEMAN BROTHERS, INC.,** | : | **Case No. 24-32428 (KLP)** |
| **Debtor.** | : | |

**NOTICE OF (I) ENTRY OF ORDER CONFIRMING AMENDED PLAN OF HOPEMAN BROTHERS, INC. UNDER CHAPTER 11 OF THE BANKRUPTCY CODE AND (II) OCCURRENCE OF THE EFFECTIVE DATE OF THE PLAN**

**PLEASE TAKE NOTICE**

1. **Confirmation of the Plan.** On October 31, 2025, the United States Bankruptcy Court for the Eastern District of Virginia, Richmond Division (the "Bankruptcy Court"), entered its proposed findings of fact and conclusions of law (Docket No. 1267) recommending that the United States District Court for the Eastern District of Virginia, Richmond Division (the "District Court"), issue the proposed order (the "Confirmation Order") confirming the *Amended Plan of Reorganization of Hopeman Brothers, Inc. under Chapter 11 of the Bankruptcy Code*, dated May 21, 2025 [Docket No. 766] (as modified by the *Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code*, dated August 21, 2025 [Docket No. 1141] and *Second Modified Amended Plan of Reorganization of Hopeman Brothers, Inc. Under Chapter 11 of the Bankruptcy Code*, dated September 5, 2025 [Docket No. 1185], and as may be further amended, modified, or supplemented from time to time, the "Plan").[1] On _______________, 2026, the District Court issued the Confirmation Order.

Copies of the Confirmation Order, the Plan and all documents filed in these chapter 11 cases are available free of charge by visiting https://www.veritaglobal.net/hopeman. You may also obtain copies of the pleadings by visiting the Bankruptcy Court's website at https://www.vaeb.uscourts.gov/ in accordance with the procedures and fees set forth therein.

2. **Effective Date.** The Effective Date of the Plan occurred on ____________ and, as a result, the Plan has been substantially consummated.

3. **Administrative Expense Bar Date.** Except as otherwise provided in Section 2.1 of the Plan and except with respect to Professional Fee Claims, requests for payment of Administrative Expense Claims must be filed and served on Reorganized Hopeman on or before the first Business Day that is thirty (30) calendar days after the Effective Date, which is **_________________, 2026**. HOLDERS OF ADMINISTRATIVE EXPENSE CLAIMS THAT ARE REQUIRED TO FILE AND SERVE A REQUEST FOR PAYMENT AND THAT DO NOT TIMELY FILE AND SERVE SUCH A REQUEST SHALL BE FOREVER BARRED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS AGAINST HOPEMAN, REORGANIZED HOPEMAN, OR THEIR RESPECTIVE PROPERTY, AND SUCH ADMINISTRATIVE EXPENSE CLAIMS SHALL BE FOREVER BARRED, ESTOPPED, AND ENJOINED FROM ASSERTING SUCH ADMINISTRATIVE EXPENSE CLAIMS.

4. **Professional Fee Claims**. All final requests for Professional Fee Claims shall be filed no later than forty-five (45) days after the Effective Date, which is **_________________, 2026**.

5. **Rejection Damages Claims.** Unless others provided by an order of the Bankruptcy Court, any proofs of claim based on the rejection of an Executory Contract pursuant to the Plan or otherwise must be filed with the Bankruptcy Court and served upon counsel for Hopeman or Reorganized Hopeman, as applicable, no later than thirty (30) days after the later of the Effective Date, which is **_____________, 2026**.

6. **Asbestos Permanent Channeling Injunction.** Pursuant to sections 105(a) and 524(g) of the Bankruptcy Code, and except as otherwise provided in the Plan (including Article VIII of the

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

Plan), any of the other Plan Documents, and the Confirmation Order, the Plan and Confirmation Order shall provide for the issuance of the following Asbestos Permanent Channeling Injunction effective as of the Effective Date:

(a) Scope of Injunction. All Entities that have held or asserted, or hold or assert, or may hold or assert in the future any Channeled Asbestos Claim shall be permanently stayed, restrained, and enjoined from taking any action for the purpose of directly, indirectly, or derivatively collecting, recovering, or receiving payment, satisfaction, or recovery on account of any such Channeled Asbestos Claim, including:

(i) commencing, conducting, or continuing in any manner, directly, indirectly, or derivatively, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum against or affecting any Protected Party or any property or interest in property of any Protected Party;

(ii) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Protected Party or any property or interest in property of any Protected Party;

(iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Encumbrance against any Protected Party or any property or interest in property of any Protected Party;

(iv) setting off, seeking reimbursement of, contribution from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability owed to any Protected Party or any property or interest in property of any Protected Party; and

(v) proceeding in any manner and in any place with regard to any matter that is within the scope of the matters designated by the Plan to be subject to resolution by the Asbestos Trust, except in conformity and compliance with the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

(b) Reservations. Notwithstanding anything to the contrary above, this Asbestos Permanent Channeling Injunction shall not stay, restrain, bar, or enjoin:

(i) the rights of Entities to the treatment accorded them under Article IV of the Plan, as applicable, including the rights of Channeled Asbestos Claimants to have their Channeled Asbestos Claims resolved in accordance with the Asbestos Trust Distribution Procedures;

(ii) the rights of Entities to the treatment accorded them under Article IV of the Plan, as applicable, including the rights of Channeled Asbestos Claimants

to have their Channeled Asbestos Claims resolved in accordance with the Asbestos Trust Distribution Procedures;

(iii) the rights of Entities to assert any Channeled Asbestos Claim against the Asbestos Trust in accordance with the Asbestos Trust Distribution Procedures, or any claim for payment of an Asbestos Trust Expense against the Asbestos Trust;

(iv) the rights of Channeled Asbestos Claimants to assert any and all claims or causes of action against any Entities that are not Protected Parties;

(v) the rights of the Asbestos Trust or, if applicable, Reorganized Hopeman to prosecute a claim or cause of action based on, arising from, or attributable to any of the Asbestos Trust Assets against any Entity that is not a Protected Party;

(vi) any action or suit against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne that strictly conforms to the requirements of Section 8.12 of the Plan;

(vii) any action, suit, or Claimant Action permitted or authorized under Section 8.13 of the Plan against any Non-Settling Asbestos Insurer; or

(viii) any claim, crossclaim, or third-party demand in a court of competent jurisdiction (including in any state court lawsuits) against Reorganized Hopeman (or, if deemed an indispensable party, the Asbestos Trust) or Wayne, or any direct action against any Non-Settling Asbestos Insurer of Hopeman or Wayne, in each case that strictly conforms to the requirements of Section 8.15 of the Plan.

7. **Binding Effect.** The Plan and the provisions thereof are binding on every holder of a claim or interest against or in the Debtor, regardless of whether the claim or interest of such holder is impaired under the Plan and regardless of whether such holder accepted the Plan.

[Remainder of Page Intentionally Left Blank]

Dated: ___________, 2026
Richmond, Virginia

______________________________________
Tyler P. Brown (VSB No. 28072)
Henry P. (Toby) Long, III (VSB No. 75134)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218
Email: tpbrown@HuntonAK.com
hlong@HuntonAK.com

- and –

Joseph P. Rovira (admitted *pro hac vice*)
Catherine A. Rankin (admitted *pro hac vice*)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Facsimile: (713) 220-4285
Email: josephrovira@HuntonAK.com
crankin@HuntonAK.com

*Counsel for the Debtor and Debtor in Possession*

**CAPLIN & DRYSDALE, CHARTERED**

______
Kevin C. Maclay (admitted *pro hac vice*)
Todd E. Phillips (admitted *pro hac vice*)
Jeffrey A. Liesemer (VSB No. 35918)
Nathaniel R. Miller (admitted *pro hac vice*)
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
Email: kmaclay@capdale.com
tphillips@capdale.com
jliesemer@capdale.com
nmiller@capdale.com

*Counsel to the Official Committee of Unsecured Creditors*

**MORGAN, LEWIS & BOCKIUS LLP**
Brady Edwards (admitted *pro hac vice*)
1000 Louisiana Street, Suite 4000
Houston, TX 77002-5006
Telephone: (713) 890-5000
Facsimile: (713) 890-5001
Email: brady.edwards@morganlewis.com

W. Brad Nes (admitted *pro hac vice*)
1717 Main Street, Suite 3200
Dallas, TX 75201-7347
Telephone: (214) 466-4000
Facsimile: (214) 466-4001
Email: brad.nes@morganlewis.com

Jeffrey S. Raskin (admitted *pro hac vice*)
One Market, Spear Street Tower, 28th Floor
San Francisco, CA 94105-1596
Telephone: (415) 442-1000
Facsimile: (415) 442-1001
Email: jeffrey.raskin@morganlewis.com

David Cox (admitted pro hac vice)
300 South Grand Avenue, 22nd Floor
Los Angeles, CA 90071-3132
Telephone: (213) 612-7315
Facsimile: (213) 612-2501
david.cox@morganlewis.com

*Special Insurance Counsel to the Official Committee of Unsecured Creditors*